D/cm

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA
### Greensboro Division

### No. 1:02CV01022

*FILED*
*JUL 10 2003*
*IN THIS OFFICE*
*Clerk U. S. District Court*
*Greensboro, N. C.*
*By*

| | | |
|---|---|---|
| ICONBAZAAR, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **AOL's Brief in Support of** |
| v. | ) | **Motion to Dismiss** |
| | ) | **First Amended Complaint** |
| AMERICA ONLINE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Defendant America Online, Inc. ("AOL") hereby submits this brief in support of its Motion to Dismiss the First Amended Complaint ("FAC") of ICONBAZAAR, L.L.C. ("IB") pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## Background

IB filed its original complaint on November 26, 2002, and served it on AOL on March 25, 2003. On May 13, 2003, AOL moved to dismiss. On June 25, 2003, IB filed its FAC, followed by an Opposition to AOL's motion to dismiss. The original complaint, AOL's motion to dismiss the original complaint, and IB's opposition thereto have all been superseded or mooted by IB's filing of its FAC. The FAC, like the original complaint before it, alleges copyright infringement, *see* FAC, ¶¶ 17-23, alleges an unfair and deceptive trade practice under North Carolina statutory law, *see id.,*

78204 4

¶¶ 24-28, and alludes to the Lanham Act, *see id.*, ¶ 2 of Prayer, without, however, alleging a violation of the Lanham Act.

In its FAC, IB alleges that it maintains an Internet website through which it licenses certain graphic images, including one particular image referred to as the "dragonfly image." *See* FAC, ¶¶ 5-6. IB alleges that "prior to the institution of this action," it filed a registration application with the Copyright Office for the dragonfly image. *See id.*, ¶ 7. IB alleges that the dragonfly image was created by Christopher Ralph. *See id.*, ¶ 6. IB alleges that in "late 1999" AOL obtained the dragonfly image without IB's knowledge or consent and used it in its Instant Messenger product. *See id.*, ¶¶ 9-10.

The FAC contains no allegation that the dragonfly image has actually been registered with the U.S. Copyright Office, or even that IB fully complied with the requirements for application for registration; the FAC contains no allegation that IB held any enforceable right to the dragonfly image at the time of the alleged infringement assigned through a valid, written agreement; and the FAC contains no description or depiction of the dragonfly image.

## Questions Presented

1a.     Whether this Court has subject matter jurisdiction when an image alleged to have been infringed has not been registered with the U.S. Copyright Office.

1b.     Whether IB has standing to bring this copyright claim when it has not alleged that it held any enforceable rights in the allegedly infringed image at the time of the alleged infringement pursuant to a valid, written agreement.

1c.     Whether a claim has been stated when there is no description or depiction of the allegedly infringed image.

2.      Whether relief under the Lanham Act can be granted when there are no allegations of the elements for any trademark infringement or other claim arising under the Lanham Act and the allusion to the Lanham Act is, at best, duplicative of the copyright claim.

3.      Whether the state law claim for an unfair trade practice is preempted by the federal Copyright Act or should otherwise be dismissed due to lack of an independent basis for federal jurisdiction.

## Argument

The FAC is meritless and must be dismissed. This Court lacks subject matter jurisdiction since the dragonfly image has not been registered with the Copyright Office prior to institution of the lawsuit, and, in any event, the FAC otherwise fails since IB does not allege that it holds any enforceable rights in the image through a valid, written agreement and there is not even a description or depiction of the image in the FAC. The suit may not be maintained as a Lanham Act action since there are no allegations of any of the elements for a trademark infringement claim. Finally, the state unfair trade practice claim is preempted by the Copyright Act, and, even if it were not, this Court should decline to exercise supplemental jurisdiction of the state law claim since subject matter jurisdiction is otherwise lacking.

## I.      The Copyright Claim Must Be Dismissed

### a.      The dragonfly image has not been registered with the Copyright Office, and, thus, this Court lacks subject matter jurisdiction.

IB's FAC does not allege that the dragonfly image has been registered with the Copyright Office. The failure is fatal. "To succeed on a copyright claim, one asserting copyright protection must have *registered* the copyright." *Eastern Publ'g & Adver., Inc. v. Chesapeake Publ'g & Adver., Inc.*, 831 F.2d 488, 490 (4th Cir. 1987) (emphasis added), *vacated on other grounds,* 492 U.S. 913,

109 S. Ct. 3234, 106 L. Ed. 2d 582 (1989). "Copyright *registration* is a *jurisdictional* prerequisite

to bringing an action for infringement under the Copyright Act." *Xoom, Inc. v. Imageline, Inc.*, 323

F.3d 279, 283 (4th Cir. 2003) (emphases added) (citing, *inter alia*, 17 U.S.C. § 411(a)); *see also*

*Techniques, Inc. v. Rohn*, 592 F. Supp. 1195, 1197 (S.D.N.Y. 1984) ("A complaint which fails to

plead compliance with § 411(a) is defective and subject to dismissal."); *cf. Brewer-Giorgio v.*

*Producers Video, Inc.*, 216 F.3d 1281, 1285 (5th Cir. 2000).

Although the FAC, unlike the original complaint, alleges that IB has filed a registration

application with the Copyright Office, *see* FAC, ¶ 7, this cannot cure IB's fatal jurisdictional defect.

The cases are legion that the mere filing of a copyright registration application is insufficient to

confer jurisdiction; the plain language of Section 411(a) of the Copyright Act requires actual

registration prior to filing of the lawsuit. *See* 17 U.S.C. § 411(a) ("no action for infringement of the

copyright in any work shall be instituted until *registration* of the copyright claim *has been made*"

(emphasis added). For example, in *Strategy Source, Inc. v. Lee*, 233 F. Supp. 2d 1, 2-4 (D.D.C.

2002), the court, after analyzing the statutory language and surveying relevant case law, dismissed

plaintiff's complaint because registration had not been completed, even though processing of the

applications was delayed by anthrax concerns. *See also M.G.B. Homes, Inc. v. Ameron Homes, Inc.*,

903 F.2d 1486, 1488 (11th Cir. 1990) ("The registration requirement is a jurisdictional prerequisite

to an infringement suit."); *Kregos v. Associated Press*, 795 F. Supp. 1325, 1331 (S.D.N.Y. 1992)

(stating that "receipt of an actual Certificate of Registration or denial of same is a jurisdictional

requirement" [internal quotation marks and citation omitted] and dismissing copyright claim on

summary judgment even though Copyright Office's processing delays would cause statute of

Case 1:02-cv-01022-NCT   Document 14   Filed 07/10/03   Page 4 of 69

limitations to run because plaintiff "sat on his rights for so long," creating a "self-induced problem"),

*aff'd*, 3 F.3d 656 (2d Cir. 1993), *cert. denied*, 510 U.S. 1112, 114 S. Ct. 1056, 127 L. Ed. 2d 376 (1994).[2]

The position, as expressed by the cases cited above, that the plain language of the Act requires actual registration and not mere application in order for jurisdiction to lie, is further supported by the fact that the proposed Copyright Reform Act of 1993 would have repealed Section 411(a), thereby obliterating the distinction between registration and application and

---

[2] Many other courts have similarly required the possession of a certificate of registration prior to the filing of a lawsuit. *See, e.g., Robinson v. Princeton Review, Inc.*, 41 U.S.P.Q.2d 1008, 1014-16 (S.D.N.Y. 1996) (Exhibit 1 hereto) (analyzing statutory distinction between registration and application and dismissing action where there was "no suggestion that any of the applications had been granted or refused by the Copyright Office," even though applications were attached to complaint); *Westport Historical Soc'y v. Lee*, 43 U.S.P.Q.2d 1858, 1859-60 (D. Kan 1997) (Exhibit 2 hereto) (construing federal jurisdiction narrowly, stating that the "mere fact that an individual has applied for a copyright is insufficient to invoke the court's jurisdiction," and dismissing copyright counterclaim); *Noble v. Town Sports Int'l Inc.*, 46 U.S.P.Q.2d 1382, 1384 (S.D.N.Y. 1998) (Exhibit 3 hereto) ("The issuance of a registration certificate is a prerequisite to the commencement of the infringement action and an application for registration does not suffice." (internal quotation marks and citation omitted)); *National Ass'n of Freelance Photographers v. Associated Press*, 45 U.S.P.Q.2d 1321, 1997 WL 759456, *12 (S.D.N.Y. 1997) (Exhibit 4 hereto) ("[A]n action for copyright infringement cannot be asserted unless a certificate of registration has been *issued*; the mere filing of an application is simply insufficient to support such a claim." (emphasis in original)); *Boyle v. Stephens, Inc.*, 44 U.S.P.Q.2d 1138, 1997 WL 529006, *3 (S.D.N.Y. Aug. 26, 1997) (Exhibit 5 hereto) ("District courts are without subject matter jurisdiction to hear claims for federal copyright infringement unless a plaintiff asserts in his pleadings that he has received an actual certificate of registration or its denial from the Copyright Office."), *aff'd*, 21 Fed. Appx. 76, 2001 WL 1313784 (2d Cir. 2001); *Marshall & Swift v. BS&A Software*, 871 F. Supp. 952, 957-58 (W.D. Mich. 1994) (construing statutory language); *Brush Creek Media, Inc. v. Boujaklian*, 2002 WL 1906620, *2-*4 (N.D. Cal. Aug. 19, 2002) (Exhibit 6 hereto) (analyzing statutory language and case law and concluding that "[u]nder the plain language of the Act, application for copyright registration does not constitute registration"); *Ryan v. Carl Corp.*, 1998 WL 320817 (N.D. Cal. June 15, 1998) (Exhibit 7 hereto) (analyzing statutory language and dismissing copyright claims where applications were still pending).

permitting infringement actions upon application, but that bill did not pass. *See* H.R. 897, 103d

Cong., 1st Sess., § 6 (1993); *Robinson*, 41 U.S.P.Q.2d at 1016 (considering failure to repeal

Section 411(a) in court's interpretation of statutory language).[3] Accordingly, IB's copyright claim

must be dismissed for lack of subject matter jurisdiction.

### b.     The plaintiff has not sufficiently alleged standing.

Even if the dragonfly image had already been registered—which it has not—IB has not

sufficiently alleged its standing to bring this copyright claim. The FAC specifically alleges that

Christopher Ralph "created" the dragonfly image. *See* FAC, ¶¶ 5, 6. Mr. Ralph, therefore, is the

author of the alleged image, and ownership of the copyright vests in him, *see* 17 U.S.C. § 201(a), but

Mr. Ralph is not a party to this lawsuit. The FAC is lacking in the necessary allegation to establish

that IB is a legal or beneficial owner of an exclusive right under the copyright to be entitled to

---

[3] A minority view has been expressed that states that it is sufficient to allege that the specific steps entailed in filing an application for registration have been properly undertaken. This view was expressed in dicta in *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984) (stating in case involving preliminary injunction that jurisdiction for infringement action exists if plaintiff "prove[s] payment of the required fee, deposit of the work in question, and receipt by the Copyright Office of a registration application"). *See also International Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*, 81 F. Supp. 2d 70, 72 & n.19 (D.D.C. 2000) (stating in dicta that "a plaintiff may sue once the Copyright Office receives the plaintiff's application, work, and filing fee" but observing that plaintiff's bare allegation that it had "'filed a copyright registration form'" is insufficient to satisfy the jurisdictional requirement and refusing to consider documents attached to opposition memorandum that purported to prove that plaintiff complied with filing requirements); *Havens v. Time Warner, Inc.*, 896 F. Supp. 141, 143 (S.D.N.Y. 1995) (stating in dicta and relying on *Apple Barrel* for the proposition that a plaintiff need only prove payment of the required fee, deposit of the work, and receipt by the Copyright Office of the application but observing that plaintiff had failed to proffer evidence of these three requirements). As even these minority view cases make clear, IB's FAC is fatally deficient since it fails to allege that IB or Christopher Ralph paid the proper fee, submitted the work in question, and the Copyright Office received the application.

institute this action. *See* 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it."); *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 483-84 (1st Cir.) ("If a plaintiff is not the author of the copyrighted work then he or she must establish a proprietary right through the chain of title in order to support a valid claim to the copyright. Absent this showing, a plaintiff does not have standing to bring an action under the Copyright Act."), *cert. denied*, 474 U.S. 1033, 106 S. Ct. 596, 88 L. Ed. 2d 575 (1985). Although the FAC alleges that Mr. Ralph assigned to IB the exclusive right to use and license the dragonfly image, *see* FAC, ¶ 8, oral transfers are invalid, *see Pamfiloff v. Giant Records, Inc.*, 794 F. Supp. 933, 935 (N.D. Cal. 1992), and there is no allegation that IB's alleged rights to the dragonfly image were acquired by a valid, written instrument of conveyance. This failure is fatal. *See* 17 U.S.C. § 204(a); *Radio Television Espanola S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927-28 (9th Cir. 1999) ("A mere reference to a deal without any information about the deal itself fails to satisfy the simple requirements of § 204(a) [regarding transfer of exclusive rights]."); *Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1160 (S.D.N.Y. 1996) (dismissing copyright claim where "the complaint does not allege a signed writing as required by section 204(a)"). Quite simply, "the Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf." *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991).

In the face of the FAC's allegation that Mr. Ralph is the author of the work at issue and without any allegation that IB was granted an exclusive right in the specific dragonfly image at issue as memorialized in a valid, written instrument of conveyance, IB has no standing to bring this

copyright claim, and it should be dismissed accordingly.

### c. The failure to describe or depict the work in question bars plaintiff's complaint.

In addition to the lack of copyright registration and IB's failure to allege its standing adequately, the copyright claim is defective in yet a third way: "The complaint also should have included a description of the allegedly copyrighted art work[] so that the defendant would have notice of the specific work[] in question." *Burns v. Rockwood Distrib. Co.*, 481 F. Supp. 841, 845 n.3 (N.D. Ill. 1979). Without this description, there is no way for AOL to determine whether any graphic image it may have ever used is substantially similar to the dragonfly image claimed to have been infringed. Even now, IB's website contains eight web pages of dragonfly images (24 distinct dragonfly images, each in two different sizes, and each of the two different sizes against three different backgrounds, for a total of 144 different dragonfly images); moreover, not a single one of these images is labeled "DRGLY02.GIF," which is the image identified in the FAC.[4] A complaint which fails to describe, let alone provide a copy of, the actual image alleged to have been infringed is defective on its face and should be dismissed.

In sum, IB's copyright claim is fatally defective for three independently dispositive reasons and must be dismissed.

## II. No Lanham Act Claim Has Been Stated

IB's FAC contains only two counts, one for copyright infringement and the second for

---

[4] *See* IconBAZAAR, Dragonflies *at* http://www.iconbazaar.com/animals/arthropods/insects/ dragonflies/pg01.html (visited May 1, 2003, and June 30, 2003). For the Court's convenience, copies of IB's dragonfly web pages are attached hereto as Exhibit 8.

violation of state law. However, the FAC does attempt to pray for relief under 15 U.S.C. § 1116. *See* FAC, Prayer at ¶ 2. Out of an abundance of caution, AOL addresses the lack of viability of any Lanham Act claim.

The FAC contains no allegations of any of the elements of any trademark infringement or other claim arising under the Lanham Act; indeed, there is not even an allegation that the dragonfly image was ever used as a mark. The allusion to the Lanham Act is just that, and no more. Even in the light most favorable to IB, any purported Lanham Act claim is, at best, duplicative of IB's copyright claim. This is insufficient to state a claim, and any notion that the FAC pleads a Lanham Act claim must be dismissed. *See, e.g., Armstrong v. Virgin Records, Ltd.,* 91 F. Supp. 2d 628, 633 (S.D.N.Y. 2000) (stating that claims under the Lanham Act that "essentially track those asserted under copyright law" would warrant dismissal under Rule 12(b)(6)); *Weber v. Geffen Records, Inc.,* 63 F. Supp. 2d 458, 463-64 (S.D.N.Y. 1999) (holding that in order for Lanham Act to apply to a copyright-based claim there must be allegation of some "extra element" and that failure to so allege requires dismissal of claim as "duplicative" of copyright claim).

### III. The State Law Claim Is Preempted by the Federal Copyright Act and There Is No Basis for Federal Jurisdiction

As stated above, IB's copyright claim and any Lanham Act claim should be dismissed. In addition, in its FAC, IB asserts that AOL has committed unfair and deceptive trade practices in violation of North Carolina General Statutes § 75-1.1. IB alleges that AOL obtained the dragonfly image and used that image in software released by AOL without the consent of IB. *See* FAC, ¶¶ 9-10. IB further contends that AOL had full knowledge that AOL did not have authorization to

Case 1:02-cv-01022-NCT   Document 14   Filed 07/10/03   Page 9 of 69

use the dragonfly image. *See id.*, ¶ 26. IB, however, makes no allegations of any additional elements that would transform the Section 75-1.1 claim from anything but a restatement of its claim that AOL infringed IB's alleged copyright.

Federal copyright law preempts state law claims of unfair and deceptive trade practices where those state law claims allege simply that the defendant has copied the plaintiff's work. *See, e.g., Old South Home Co. v. Keystone Realty Group, Inc.*, 233 F. Supp. 2d 734, 736 (M.D.N.C. 2002); *Patsy Aiken Designs, Inc. v. Baby Togs, Inc.*, 701 F. Supp. 108, 111-12 (E.D.N.C. 1988); *see* 17 U.S.C. § 301; *see also Nintendo of America, Inc. v. Aeropower Co.*, 34 F.3d 246, 251 (4th Cir. 1994) ("[T]he Copyright Act preempts any legal or equitable right under state law which is 'equivalent' to any of the exclusive rights within the general scope of copyright, so that state law could not in fact make copyright infringement a violation of [Section 75-1.1].").[5]

The elements of a claim under Section 75-1.1 "do not *per se* make the unfair trade practices claim qualitatively different from a copyright infringement claim." *Old South Home*, 233 F. Supp. 2d at 737. Rather, to avoid preemption, a state law claim must include an extra element such as "breach of fiduciary duty, breach of a confidential relationship, [or] palming off the defendant's products as those of the plaintiff's." *Kindergartners Count, Inc. v. DeMoulin*, 171 F. Supp. 2d 1183, 1191 (D. Kan. 2001). Intent or knowledge by the alleged infringer that use is unauthorized are not extra elements sufficient to survive preemption. *See id.*

---

[5] In *Baldine v. Furniture Comfort Corp.*, 956 F. Supp. 580, 587-88 (M.D.N.C. 1996), this Court held that a claim for unfair and deceptive trade practices was not preempted because it was not a restatement of a copyright claim but was rather a claim for fraud. There are no such allegations here.

In its Section 75-1.1 claim, IB alleges only that AOL was unauthorized to use the plaintiff's copyright and that it had knowledge of that fact. IB has failed to allege any extra element that would save its state law claim from preemption. Accordingly, the state law claim is defective on its face, and it should be dismissed outright.

Even if the Court were to determine that IB's state law claim is not preempted by the Copyright Act, the Court should nevertheless dismiss the claim. There is no independent basis for jurisdiction over IB's state law claim, and jurisdiction over that claim arises from 28 U.S.C. § 1367. Pursuant to that statute, if a court dismisses all claims over which it has original jurisdiction, the court has the discretion to refuse to exercise supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Harrell v. Purcell*, 236 F. Supp. 2d 526, 535 (M.D.N.C. 2002). Since IB's copyright claim and any Lanham Act claim are fatally defective, there is no basis for federal court jurisdiction, and any remaining state law claim should be dismissed.

## Conclusion

IB has now had two bites at this rotten apple. For the foregoing reasons, IB's First Amended Complaint should be dismissed with prejudice for lack of subject matter jurisdiction and for otherwise failing to state a claim for which relief can be granted.

Respectfully submitted, this the _/0ᵗʰ_ day of July, 2003.

 

 

Jennifer K. Van Zant
N.C. State Bar No. 21280

BROOKS, PIERCE, MCLENDON,
  HUMPHREY & LEONARD, L.L.P.
Post Office Box 26000
Greensboro, North Carolina 27420-6000
Telephone:    (336) 373-8850
Facsimile:    (336) 378-1001

 

 

David Kushner _(by JKV)_
David Kushner
N.C. State Bar No. 23233

BROOKS, PIERCE, MCLENDON,
  HUMPHREY & LEONARD, L.L.P.
Post Office Box 1800
Raleigh, North Carolina 27602-1800
Telephone:    (919) 839-0300
Facsimile:    (919) 839-0304

_Counsel for America Online, Inc._

**Exhibit 1**

▷

Robinson
v.
The Princeton Review Inc.

U.S. District Court Southern District of New York

No. 96 Civ. 4859 (LAK)

Decided November 14, 1996

United States Patents Quarterly Headnotes

## COPYRIGHTS
[1] Infringement pleading and practice --
Jurisdiction (Section 217.05)

### JUDICIAL PRACTICE AND PROCEDURE
Jurisdiction -- Subject matter jurisdiction --
Federal question (Section 405.0702)

Copyright infringement claim is merely incidental to contract dispute, and therefore not within grant of copyright jurisdiction, if it necessarily would be resolved by determination of contract issues; additional factors to be considered are whether plaintiff asserts separate claim for breach of contract, whether resolving plaintiff's claim will not require court to construe any aspect of Copyright Act or to apply distinctly federal principles, and whether plaintiff has failed to terminate license or tender back benefits received under license, since such failure suggests that crux of suit is for enforcement of license provisions rather than for copyright infringement.

## COPYRIGHTS
[2] Infringement pleading and practice --
Jurisdiction (Section 217.05)

### JUDICIAL PRACTICE AND PROCEDURE
Jurisdiction -- Subject matter jurisdiction --
Federal question (Section 405.0702)

Plaintiff's copyright infringement claim is merely incidental to contract dispute between parties, since essence of claim is that defendants have exploited certain allegedly copyrighted materials without complying with terms of license agreement, since there is no suggestion that plaintiff has given notice of termination of agreements or that he has tendered

back any consideration that he has received thereunder, since injunction plaintiff seeks would not preclude defendants from exploiting works at issue if they complied with terms of contract, and since plaintiff therefore seeks specific performance of agreement rather than recapture of any rights licensed to defendants thereunder.

## COPYRIGHTS
[3] Infringement pleading and practice --
Jurisdiction (Section 217.05)

### JUDICIAL PRACTICE AND PROCEDURE
Jurisdiction -- Subject matter jurisdiction --
Federal question (Section 405.0702)

Plaintiff's infringement claim would not state claim arising under copyright act even if it were not merely incidental to contract dispute between parties, since plaintiff does not seek rescission of agreement in question, and does not allege that he tendered to defendants whatever consideration he already received under agreement, which is essential element of rescission claim.

## COPYRIGHTS
[4] Rights in copyright; infringement -- Right to
reproduction -- In general (Section 213.0501)
Infringement pleading and practice -- Jurisdiction
(Section 217.05)

Allegation that defendants are selling disputed works without acknowledging plaintiff's alleged copyright interests in them does not assert claims of copyright infringement grounded outside contracts between parties, since author who sells or licenses work does not have inherent right to be credited as author of work, since it does not infringe author's copyright for party who is licensed to reproduce work to omit author's name, since 17 USC 401 does not require that defendants acknowledge plaintiff's claimed interest in works at issue, and since even if statute so required, it is doubtful that failure to do so would constitute infringement.

## COPYRIGHTS
[5] Infringement pleading and practice --
Jurisdiction (Section 217.05)

Plaintiff's contention that he owns copyrights not licensed or assigned to defendants, that at least some of accused works infringe those copyrights, and that allegedly infringing works are not derivative of works licensed or assigned fails to establish federal jurisdiction for copyright infringement claim, since

COPR. © 2003 The Bureau of National Affairs, Inc.

complaint contradicts assertion that allegedly infringing works are outside agreement between parties and therefore are not protected by agreement's conveyance of rights, and since plaintiff has not alleged which specific original works are subject of copyright claim.


## COPYRIGHTS
### [6] Infringement pleading and practice — Jurisdiction (Section 217.05)

Plaintiff's claim for rescission of copyright licensing agreement, on ground that it allegedly was signed under duress, does not state claim arising under Copyright Act, and therefore does not give rise to federal subject matter judrisdiction, since even if it is assumed that rescission of agreement would result in reversion of rights in allegedly infringed works to plaintiff, and that such reversion would result in infringement by defendants, plaintiff has failed to sufficiently allege elements of duress.


## COPYRIGHTS
### [7] Notice, deposit and registration -- Registration -- Effect (Section 207.0702)

Plaintiff's copyright infringement claims must be dismissed, since complaint alleges that plaintiff has applied for registration of allegedly infringed copyrights, but does not suggest that any of those applications have been granted, since plaintiff has therefore failed to show that copyrights at issue have been registered as required by 17 USC 411(a), and since language in 17 USC 410(d) stating that effective date of registration is date on which application, deposit and fee have been received by Copyright Office does not warrant conclusion that registration is not prerequisite to commencement of infringement suit; although Section 411(a) might be construed to permit action for injunction to proceed prior to grant of registration in appropriate circumstances, instant case presents substantial reasons for refusing to permit action to go forward.


*1010 Action by Adam Robinson against The Princeton Review Inc. and John Katzman for copyright infringement, breach of contract, breach of fiduciary duty, and to set aside agreement by reason of duress. On defendants' motion to dismiss or, in alternative, for order compelling arbitration and to stay. Motion to dismiss granted.

Glenn Greenwald, New York, N.Y., for plaintiff.

Kim J. Landsman, of Patterson, Belknap, Webb & Tyler, New York, for defendants.


Kaplan, J.

Adam Robinson, the plaintiff in this case, claims to be the author of very successful test preparation books which, along with other works allegedly based on them, are published by defendant The Princeton Review, Inc. ("Princeton"). Robinson asserts that Princeton is infringing his claimed copyright in certain materials and that it has breached various other legal duties owed to him. Princeton and its president, John Katzman, move to dismiss the complaint on the grounds that (1) the Court lacks subject matter jurisdiction because plaintiff's claims do not arise under the Copyright Act, and (2) plaintiff has not obtained a registration of any of the copyrights sued upon as allegedly required by 17 U.S.C. Section 411(a). In the alternative, defendants move for an order compelling arbitration and staying this action.


*Facts*

As this is a motion addressed to the complaint, the Court takes its well- pleaded factual allegations as true. It considers also the three exhibits incorporated into the complaint: two contracts to which the parties are signatories and a series of applications for registration of copyright. *San Leandro Emergency Medical Plan v. Philip Morris,* 75 F.3d 801,808-09 (2d Cir. 1996).

From 1985 through 1990, Robinson co-authored a series of six highly successful books including *Cracking the System· The SAT, Word Smart, Guide to College Admissions,* and test preparation books for the LSAT, the CRE and the GMAT (collectively, the "Initial Works"). (Cpt Para. 10; *id.* Ex. A, Para. 2) Although the complaint does not explicitly say so, it seems clear that these Initial Works were published by Princeton.

In 1989, Katzman sought to induce Robinson to transfer his copyright and other interests in the formation and development of the business to Princeton. The two agreed that they would form a three-person mediation panel to determine the amount of compensation to be paid by Princeton to

COPR. © 2003 The Bureau of National Affairs, Inc.

Robinson as compensation for Princeton's past exploitation of Robinson's work. (Cpt Para. 27)

*The 1990 Agreement*

In 1990, Robinson was in financial difficulty, allegedly because Princeton did not pay him a share of its profits and otherwise deprived him of economic benefits to which he was entitled. (*Id.* Para. 28) Under this financial pressure, Robinson entered into an agreement with Katzman and Princeton, dated July 24, 1990 (the "1990 Agreement"), pursuant to which Robinson acknowledged that his contributions to the works theretofore published by Princeton had been made as an employee for hire, assigned any interest he may have had in the literary property, and gave Princeton a release, all in exchange for $200,000. Princeton promised to acknowledge and credit Robinson as the creator of various techniques and ideas in its products. *(Id.* Para. 33 & Ex. B)

*The Random House Agreement*

In 1990, Robinson entered into a publishing agreement with Random House, Inc. *1011 ("Random House"), Princeton and David Owen for the publication of six additional education-related works. (Cpt 10) This in turn led Princeton to adopt a business plan pursuant to which it would create an array of educational products that would trade on the success of the Initial Works. (*Id.* Para. 11) According to plaintiff the success of the Initial Works has spawned "a vast array of highly profitable education-related products which have been, and continue to be, marketed and sold by" Princeton and many of which "are directly derived from" or "centrally based upon the ideas contained in" the Initial Works (collectively known as the "Derivative Works"). (*Id.* Para. 12)

*The 1991 Agreement*

On or about September 26, 1991, Robinson, Princeton Katzman and others entered into a second agreement (the "1991 Agreement"). *(Id.* Para. 14 & Ex. A) The 1991 Agreement recited that (i) Katzman, Robinson, Owen and another had entered into an agreement with a division of Random House to publish trade paperback editions of the Initial Works, and (ii) Katzman, with the consent of Robinson and others, had entered into an agreement with Random House for the publication of six additional works in the series (the "Subsequent Works"). (*Id.* Ex. a, at 2) It provided for payments by Princeton to Robinson and Owen and the distribution of royalties on the Initial and Subsequent Works among Princeton,

Robinson, Owen and another. (*Id.* Paragraphs 1(a), 3) The Agreement acknowledged that all of the books in the series would require periodic revision and provided that "every attempt" would be made no have the original writers make the necessary revisions to the Initial Works. (*Id.* Para. 2) Should the original writers fail to make the revisions, the other parties had the right to make them, subject to the reasonable approval of Robinson, Owen and Princeton. (*Id.*)

The 1991 Agreement dealt also with future exploitation of the Initial and Subsequent Works. It provided that the parties appointed Princeton:

"as the sole party with the right to authorize the exploitation of all such works or any elements thereof and that without the written consent of [Princeton], no other party shall authorize or license any publication or use of such works or any derivations thereof for any purpose, provided that Owen and Robinson shall have a right of approval with respect to any such exploitation of the [Initial Works] and/or Word/Smart II [one of the Subsequent Works], such approval not to be unreasonably withheld." (*Id.* Para. 4(a))

Owen and Robinson confirmed also that (i) they had transferred to Princeton all rights, if any, they had in and to all books in the series except the Initial Works and Word Smart II, and (ii) any contributions they might make to the series, with the exception of the Initial Works, "derivative works based thereon," and any future books of which they might be the authors, would be as employees for hire with the intention that copyright would vest irrevocably in Princeton. (*Id.* Para. 4(b))

*The Complaint*

The complaint contains four counts. (Cpt Paragraphs 40-68)

The first count, which purports to allege copyright infringement, asserts that Princeton Review has been (a) "marketing, advertising, promoting, using, infringing upon, selling, publicly distributing, and profiting" from Robinson's copyrighted materials, (b) "using and exploiting Robinson's copyrighted products, books, and other materials without his consent and/or authorization," and (c) "copying or substantially copying portions of Robinson's copyrighted products, books, and other materials without compensating Robinson and without acknowledging his copyright interests therein." It alleges also that Princeton used and exploited

COPR. © 2003 The Bureau of National Affairs, Inc.

Robinson's works without "compensating him or furnishing him with his share of the profits generated by said use and exploitation." (*Id.* Para. 44)

The second count is for breach of contract. It alleges that defendants have breached the 1991 Agreement by, among other things, failing to pay Robinson amounts due under the 1991 Agreement, to credit him on subsequent works based on works of which Robinson allegedly was the author, and using Robinson's works without his approval. (*Id.* Para. 50)

The third and fourth counts allege, respectively, claims for breach of alleged fiduciary duties and to set aside the 1990 Agreement on the ground of duress. (*Id.* Paragraphs 60-68

The complaint seeks at least $20 million in compensatory damages, at least $50 million in punitive damages, an accounting, a declaration that the 1990 Agreement is null and void, and an injunction restraining the defendants from publishing products based upon or derived from Robinson's copyrighted works without properly crediting Robinson and obtaining his approval.

### *1012 Discussion

For Robinson to have this claim heard in federal court, he must establish both that the Court has jurisdiction over the subject matter and that the procedural requirements for bringing suit under 17 U.S.C. Section 411(a) have been met.

*Subject Matter Jurisdiction*

*The Standard*

There is subject matter jurisdiction in this case only if plaintiff has stated a claim arising under the Copyright Act. [FN1] However, " [i]t is well-settled that not every case involving federal copyright laws .arises under' those laws such that federal jurisdiction is proper pursuant to Section 1338(a)."*Schoenberg v. Shapolsky Publishers, Inc., 971 F.2d 926, 931 [ 23 USPQ2d 1831 ] (2d Cir. 1992).*

The long history of the federal courts' efforts to define the contours of federal jurisdiction in cases involving copyrights was summarized in *T.B. Harms Co. v. Eliscu, 339 F.2d 823,828 [ 144 USPQ 46 ] (2d Cir. 1964),* cert. denied, *381 U.S. 915 [ 145 USPQ 743 ] (1965).* That case, however, did not resolve the question whether there is federal question jurisdiction

"when a defendant licensed to use a copyright or patent on certain terms is alleged to have forfeited the grant. . ."*Schoenberg, 971 F.2d at 931.* The Circuit turned to that issue in *Schoenberg,* where it set out a three-prong test for determining when federal jurisdiction exists in a case claiming copyright infringement by virtue of a breach by a licensee of the terms of the license:

"*Schoenberg* asks a Court first to determine whether the claim of copyright infringement is only .incidental' to plaintiff's claim seeking a determination of contractual rights. If the copyright infringement claim is merely incidental, no jurisdiction exists and the analysis ends. If the infringement claim is more than incidental, the court should determine whether the claim alleges a breach of a condition. If the complaint alleges a breach of condition, the court has subject matter jurisdiction. If not, the court must examine whether a breach of covenant is alleged. If a breach of covenant is asserted, the court has jurisdiction if the alleged breach is so material as to create a right of rescission."*Schoenberg v. Shapolsky, 916 F.Supp. 333, 334-35 [ 38 USPQ2d 1856 ] (S.D.N.Y. 1996)* (citing *Schoenberg, 971 F.2d at 932)* (footnote omitted).

[1] While the meaning of the second and third prongs of the test is clear, *infra,* the standard for determining whether an alleged infringement is merely incidental to a contract dispute is less so. Nonetheless, the *Schoenberg* panel cited with approval *Berger v. Simon & Schuster, 631 F.Supp. 915 (S.D.N.Y. 1986), 971 F.2d at 932,* where Judge Sand looked to the plaintiff's real motive in bringing the suit -- specifically, whether the substance of the claim was to vindicate his rights as copyright proprietor or, as was found to be true in that case, merely to free himself of his contractual obligations in order to publish with another publisher on more attractive terms. *631 F.Supp. at 918-19.* More recently, Judge Sand held in *Living Music Records, Inc. v. Moss Music Group, Inc., 827 F.Supp. 974 [ 28 USPQ2d 1217 ](S.D.N.Y. 1993),* that an infringement claim is incidental if it necessarily would be resolved by determination of the contract issues and that the assertion of a separate claim for breach of contract also is relevant. [FN2] *Id.* at 980; accord, *Schoenberg, 916 F.Supp. at 335.* This Court, on remand in *Schoenberg,* identified additional factors that aid in determining whether infringement claims are merely incidental to contract disputes and therefore not within the grant of copyright jurisdiction. A

COPR. © 2003 The Bureau of National Affairs, Inc.

claim is incidental if "resolving plaintiff's claim will not require the Court to construe any aspect of the Copyright Act or to apply distinctly federal principles." *Schoenberg*, 916 F.Supp. at 335. The lack of any effort by the plaintiff to terminate the license also is relevant to determining the essential nature of the claim. *Id.* In much the same vein, the failure of a plaintiff with a claim of this nature to tender back the benefits received under the license suggests that the crux of the suit is for breach of contract -- that is, for enforcement of the provisions of the license -- rather than for copyright infringement. *See* 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright Section 10.15 [A], at 10-127 (1996) (hereinafter Nimmer).

*Plaintiff's Infringement Claim* **\*1013** *The Infringement Claim Is Incidental*

[2] Stripped of verbiage, plaintiff's infringement claim is that the defendants have exploited certain of the allegedly copyrighted materials without complying with the terms of the 1991 Agreement providing for (a) plaintiff's compensation, (b) the crediting of plaintiff's contributions, and (c) obtaining plaintiff's approval. [FN3] (Cpt Para. 44) Resolution of the claims of alleged breaches of contract necessarily will resolve the infringement claims. Moreover, there is no suggestion that plaintiff has given notice of termination of the agreements or that he has tendered back any consideration that he has received thereunder. Indeed, the injunction plaintiff seeks would not preclude the defendants from exploiting the works. It would preclude exploitation only if plaintiff were not properly credited, his approval not obtained, or the compensation "to which he is entitled" not paid. (Cpt at 28-29) In other words, plaintiff in substance seeks specific performance, not to recapture any rights that he licensed to Princeton thereunder. Plaintiff's claim of copyright infringement therefore is incidental to his contract claims.

[3] Even if the infringement claim were not merely incidental to the contract dispute, the complaint would not pass muster under the second and third prongs of the *Schoenberg* test. The *Schoenberg* court adopted the analysis previously employed by the District of Columbia Circuit in *Costello Publishing Co. v. Rotelle*, 670 F.2d 1035 [ 212 USPQ 811 ] (D.C. Cir. 1981). *Costello* makes clear that the proper focus of the inquiry is on whether the plaintiff, if successful, would recapture any rights previously granted to the licensee, either for failure of a condition prerequisite to or qualifying

the grant or by rescission for material breach. 670 F.2d at 1045.

The plaintiff, as noted, does not here seek to recapture any rights granted by the 1991 Agreement. He does not seek rescission, and he does not allege that he tendered to the defendants whatever consideration he already has received under the 1991 Agreement, an essential element of a rescission claim. *See Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1035 (2d Cir. 1980).

Plaintiff does argue that he asserts claims of copyright infringement that are not grounded in the contract. His contentions, however, are singularly unpersuasive.

[4] First, plaintiff points to his allegation that Princeton is selling the disputed works without acknowledging plaintiff's copyright interests in them and argues that "these acts of infringement" are "grounded exclusively in Section 401 of the Copyright Act." (Pl. Mem. 12-13) But "an author who sells or licenses her work does not have an inherent right to be credited as author of the work" and "it has been held not to infringe an author's copyright for one who is licensed to reproduce the work to omit the author's name." 2 Nimmer Section 8D.03[A] [1], at 8D-32. Section 401, moreover, merely permits a copyright owner to place a notice of copyright on publicly distributed copies of a work and provides for the form, position and evidentiary weight of the notice. It did not require that Princeton acknowledge plaintiff's claimed interest in the allegedly infringing works. Even if it did, it is doubtful that Princeton's failure to do so would constitute infringement, which is defined by Section 501 of the Act in relevant part as violation of any of the exclusive rights of the copyright owner as provided by Sections 106 through 118. Hence, plaintiff's claim of infringement based on the alleged failure to attribute his contribution rests exclusively on the contracts. [FN4] *Id.*

Second, plaintiff argues that many of the works of which he claims infringement are not included in the 1991 Agreement. The 1991 Agreement, he says, applies only to the Initial Works, the Subsequent Works, and derivative works based on the foregoing. (Pl. Mem. 10) He asserts in his brief that " [s]cores of other products . . . are the copyrighted works of Robinson, with respect to **\*1014** which [he] alleges infringement." (*Id.*) He then goes on to say, however, that most of the allegedly infringed works "are not works of which he is the original author at all, but

COPR. © 2003 The Bureau of National Affairs, Inc.

rather, are derivative works or works based upon [his] original works . . ." (*Id.* 11; *see also* Tr., July 22, 1996, 16-20) While the argument is far from clear, the thrust seems to be that (a) plaintiff owns copyrights that were not licensed or assigned to Princeton, (b) at least some of the works complained of infringe those copyrights, and (c) the allegedly infringing works are not derivative of the Initial and Subsequent Works, so they are not protected from infringement liability by the conveyance of rights pursuant to the 1991 Agreement.

[5] Assuming this to be the plaintiff's argument, it would not establish federal jurisdiction here. To begin with, the complaint contradicts the assertion that the allegedly infringed works are outside the 1991 Agreement. It alleges that the "vast array" of products sold by Princeton was "spawned" by the Initial Works. (Cpt Paragraphs 12-13) The works upon which plaintiff premises his infringement claim are "products, books, and other materials being marketed and sold by Katzman and the Review" for which plaintiff has "filed applications for registration of his copyrights," copies of which are attached to the complaint and all of which appear to be covered by the 1991 Agreement. (Cpt Paragraphs 41-43 & Ex. C) Hence, the complaint simply does not permit plaintiff's belated contention that the allegedly infringed works are not covered by the 1991 Agreement. [FN5]

Even if the complaint were not inconsistent with the argument advanced on the motion, it would be insufficient to the extent it seeks to assert infringement on the basis of works supposedly outside the 1991 Agreement. In order to state a claim for copyright infringement, the plaintiff must allege, *inter alia*, "which specific original works are the subject of the copyright claim."*Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd mem.,* 23 F.3d 398 (2d Cir.), *cert. denied,* 115 S.Ct. 365 (1994). This plaintiff assuredly has not done.

[6] Plaintiff's final argument is that his claim for rescission of the 1990 Agreement on the ground that it allegedly was signed under duress independently gives rise to subject matter jurisdiction. (Pl. Mem. 18 n.*) Even assuming that rescission of the 1990 Agreement would result in the reversion of rights in some of the allegedly infringed works to plaintiff [FN6] and, in consequence, in infringement by the defendants, Robinson would be mistaken because his duress claim fails to state a claim upon which relief may be granted.

The elements of duress essential to state a claim for cancellation of an instrument are: "(1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms (4) because the circumstances permitted no other alternative."*Kamerman v. Steinberg,* 891 F.2d 424 (2d Cir. 1989) (citing *Gulf & Western Corp. v. Craftique Products. , Inc.,* 523 F.Supp. 603, 610 (S.D.N.Y. 1981)); *accord, e.g., First National Bank of Cincinnati v. Pepper,* 454 F.2d 626, 633-34 & nn. 8-9 (2d Cir. 1972); *Industrial Recycling Systems, Inc. v. Ahneman Associates, P.C.,* 892 F.Supp. 547, 549 (S.D.N.Y. 1995). This complaint sufficiently alleges the first two elements, possibly the third, but not the fourth. Plaintiff's assertions that he was in a "vulnerable state" and "lacked the financial resources to vindicate his unambiguous rights" (Cpt Paragraphs 27-31) fail to allege the necessary lack of alternative. As plaintiff does not state a legally sufficient claim for rescission of the 1990 Agreement, there is no claim arising under the Copyright Act and therefore no subject matter jurisdiction.

*Lack of Copyright Registration*

[7] This action must be dismissed for an entirely independent reason. The complaint alleges that plaintiff applied for registration of the allegedly infringed copyrights and attached copies of the applications. There is no suggestion that any of the applications *1015 had been granted or refused by the Copyright Office. In consequence, plaintiff has not satisfied Section 411(a) of the Copyright Act. [FN7]

Section 411(a) provides in relevant part that:

"no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement . . . ."

Section 410(a) provides further:

"When, after examination, the Register of Copyrights determines that . . . the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met, the Register shall register the claim . . . ."

COPR. © 2003 The Bureau of National Affairs, Inc.

Moreover, Section 410(a)'s requirement of "examination" would be meaningless if filing and registration were synonymous. The statute thus clearly distinguishes between "registration" and "application," requiring the former as a prerequisite to the commencement of an infringement action. Accordingly, as most of the cases in this Circuit to have considered the issue have held, registration is a prerequisite to commencement of an action for copyright infringement. E.g., Kregos v. Associated Press, 795 F.Supp 1325, 1331 [ 23 USPQ2d 1368 ] (S.D.N.Y. 1992); Novak v. National Broadcasting Co., 716 F.Supp. 745, 750 [ 12 USPQ2d 1259 ] (S.D.N.Y. 1989); Wales Industry Inc. v. Hasbro Bradley, Inc., 612 F.Supp. 510, 515 [ 226 USPQ 584 ] (S.D.N.Y. 1985); Conan Properties, Inc. v. Mattel, Inc., 601 F.Supp. 1179, 1182 [ 226 USPQ 265 ] (S.D.N.Y. 1984); Techniques Inc. v. Rohn, 592 F.Supp. 1195, 1197 [ 225 USPQ 741 ](S.D.N.Y. 1984). Plaintiff nevertheless contends that his applications suffice in this case, arguing in substance that Kregos and similar cases are wrongly decided and that Section 410(d) of the Act warrants a different result.

The language in Section 410(d) upon which plaintiff relies states that "the effective date of a copyright registration is the day on which an application, deposit, and fee which are later determined . . . to be acceptable for registration, have all been received in the Copyright Office." The fact that registration occurs nunc pro tunc as of the date of the application, he suggests, is tantamount to legislative equation of an application with registration. The obvious flaw in this argument, of course, is that the relation back of registration to the filing date says nothing about what constitutes registration. Indeed, this argument lends cogent support to defendants' emphasis on the distinction between application and registration, as there would be no need to relate the date of registration back to the date of application if the two were synonymous.

Putting aside the argument based on Section 410(d), plaintiff points to a handful of cases that have held that registration is not a prerequisite to an infringement suit, most notably Apple Barrel Production, Inc. v. R.D. Beard, 730 F.2d 384 [ 222 USPQ 956 ] (5th Cir. 1984), and Havens v. Time Warner, 896 F.Supp 141 [ 37 USPQ2d 1218 ] (S.D.N.Y. 1995). Apple Barrel stated, without discussion or analysis, that " [i]n order to bring suit for copyright infringement, it is not necessary to prove possession of a registration certificate." 730 F.2d at 386. It cited only the then-current edition of

Nimmer in support of this assertion, yet that authoritative text now quite clearly indicates that registration is a precondition to the commencement of an infringement action except in certain limited circumstances that do not pertain to this case. 2 Nimmer Section 7.16 [B]. Havens merely cited Apple Barrel for the proposition that possession of a registration certifcate is unnecessary, not that suit may be brought before registration is granted. 896 F.Supp. at 142-43. Hence, the cases upon which plaintiff relies are unpersuasive.

There is, to be sure, something to be said for the proposition that an applicant for registration perhaps ought not be prevented from seeking injunctive relief against alleged infringement where the threat of irreparable injury is clear and the registration requirement has not been satisfied through no fault of the applicant as, for example, where the Register of Copyrights simply has not acted on an application. See Olan Mills v. Linn Photo, 23 F.3d 1345 [ 30 USPQ2d 1798 ](8th Cir. 1994); Pacific and Southern Co v. Duncan, 744 F.2d 1490 [ 224 USPQ 131 ](11th Cir. 1984); cf. Monster Communications, Inc. v. Turner Broadcasting System, Inc., 935 F.Supp. 490, 493 [ 40 USPQ2d 1259 ] (S.D.N.Y. 199); but see 2 Nimmer Sections 7.6[B] [1], at 7- 159, 716[C] [3], at 7-177 to 7-178. But there are substantial reasons for the Court to decline *1016 to permit this action to go forward without registration.

First, the proposed Copyright Reform at of 1993, among other things would have repealed section 411(a) and thus would have permitted copyright infringement suits upon application. H.R. 897, 103d Cong., 1st Sess. Section 6 (1993). Yet Congress did not enact the bill. See Alan J. Hartnick, GATT Copyright Restoration, N.Y.L.J., Feb 3, 1995, at 5. While such action is not conclusive of the construction properly to be placed on Section 411(a), it nevertheless serves as a reminder that the Court should not lightly disregard what arguably is a congressional determination that no exception is to be made for injunction actions.

Second, even if the Court, in appropriate circumstances, properly might construe Section 411(a) to permit an action for an injunction prior to the grant or refusal of registration, this case would not present a situation in which that would be called for. As the discussion above indicates, the gravamen of this case is plaintiff's claim that the defendants are not living up to the terms of contracts pursuant to which he conveyed his alleged rights or acknowledged that the rights belonged to Princeton in

COPR. © 2003 The Bureau of National Affairs, Inc.

the first place. If he prevails, he will be made whole, or substantially so, by damages and perhaps other relief. His situation his radically different from that of an author who finds another about to exploit the author's intellectual product without any color of authority.

## Conclusion

Accordingly, the Court holds that plaintiff has failed to state a claim arising under the Copyright Act. The motion to dismiss for lack of subject matter jurisdiction is granted. Even if the jurisdictional issue were resolved in plaintiff's favor, the Court would dismiss the complaint for failure to state a claim upon which relief may be granted because plaintiff may not bring this action for infringement in the absence of registration of the copyrights upon which he relies.

SO ORDERED.

FN1 The complaint alleges jurisdiction under 28 U.S.C. Sections 1331 and 1338(a). As there is no claim alleged under any federal statute other than the Copyright Act, those sections are coextensive for purposes of this case.

FN2 See also Kamakazi Music Corp. v. Robbins Music Corp., 684 F.2d 228, 230 (2d Cir. 1982) (lack of contract claim considered in determining that complaint stated claim under Copyright Act).

FN3 Indeed, plaintiff has acknowledged that he makes no claim that Princeton's publication of the Initial Works and the Subsequent Works is infringing because plaintiff "agreed to permit the Princeton Review to publish them . . ." (Tr., July 22, 1996, 15-16) He complains only of the derivative works prepared from them. (Id.) This is a most unusual argument, as it is difficult to see how the derivative works could infringe if defendants' publication of the Initial and Subsequent Works does not. (See id. at 17-18) The point here, however, is that plaintiff does not contend that any of defendants' actions should be held to have resulted in the reversion to the plaintiff of any rights granted by him to Princeton, save

his contention that he entered into the 1990 Agreement under duress. Infra.

FN4 The 1991 Agreement provides only that it contains nothing that "in any way limits [plaintiff's] right to claim and receive due credit for [his] contributions." (Cpt Ex. A, Para. 6(b)) The 1990 Agreement obligated defendants "to provide appropriate recognition, acknowledgment and attribution to Robinson for the contributions made by Robinson to the Intellectual Property. . ." (Id. Ex. B, Para. I.B.)

FN5 Many other allegations of the complaint support this conclusion. Paragraph 13 suggests that the 1991 Agreement permitted exploitation of all of plaintiff's works. Paragraph 18 complains of sales of products included in the 1991 Agreement. Paragraph 21 complains of products based upon or derived from the Initial Works. Paragraph 25 complains of copying of the Initial Works. Paragraph 26 alleges infringement of copyright in "these works," clearly a reference to the Initial Works.

FN6 This assumption, moreover, is unduly favorable to the plaintiff. The 1991 Agreement explicitly confirmed that plaintiff had transferred to Princeton any rights he had, including copyright, in and to all books in the series except the Initial Works and Word Smart II, gave Princeton the sole right to add new and further works to the series, and granted to Princeton the sole right to authorize the exploitation of all of the works. (Cpt Ex. A, Paragraphs 4(a), 4(b), 4(e)) There is no claim of duress with respect to the 1991 Agreement. Hence, rescission of the 1990 Agreement would not prevent Princeton from publishing the allegedly infringing works.

FN7 Of course, insofar as plaintiff is correctly construed as claiming infringement of other copyrights, he has not even alleged that he has applied for, let alone obtained, registration.

COPR. © 2003 The Bureau of National Affairs, Inc.

S.D.N.Y.

41 U.S.P.Q.2d 1008

END OF DOCUMENT

COPR. © 2003 The Bureau of National Affairs, Inc.

**Exhibit 2**

C

Westport Historical Society
v.
Lee

U.S. District Court District of Kansas

No. 97-2130-GTV

Decided July 11, 1997

United States Patents Quarterly Headnotes

## COPYRIGHTS

**[1] Infringement pleading and practice — Jurisdiction (Section 217.05)**

**JUDICIAL PRACTICE AND PROCEDURE**
**Jurisdiction -- Subject matter jurisdiction -- In general (Section 405.0701)**
Counterclaim seeking declaratory judgment of copyright infringement is dismissed for lack of jurisdiction, since registration of copyright is jurisdictional prerequisite to infringement suit, and since counter-plaintiff has not alleged that he owns registered copyright in allegedly infringed material; counter-plaintiff's motion to amend his complaint is denied, since proposed amendment alleges that counter-plaintiff has filed copyright registration but does not indicate whether his application has been approved or denied, and since proposed amendment thus does not cure jurisdictional defect.

**\*1859** Action by Westport Historical Society against Fred L. Lee, and Joanne C. Eakin and Carolyn N. Bartels d/b/a Two Trails Genealogy Shop, for copyright infringement, in which Defendant Fred L. Lee counterclaims for declaratory judgment that he is owner of copyright and for copyright infringement. On plaintiff's motion to dismiss counterclaim pursuant to Fed.R.Civ.P. 12(b)(1), and on defendant/counter-plaintiff's motion to amend his complaint. Plaintiff's motion granted; defendant's motion denied.

Constance M. Jordan, J. David Wharton, and Basil Trent Webb, of Shook, Hardy & Bacon, Kansas City, Mo., for plaintiff.

Richard P. Stitt, Overland Park, Kan., for defendants.

Van Bebber, C.J.

Plaintiff Westport Historical Society commenced this action pursuant to the Copyright Act of 1976, as amended, 17 U.S.C. Section 101 *et seq.*, alleging that defendants are infringing two of its copyrights. Defendant Fred Lee has filed a counterclaim seeking a declaratory judgment that he is the owner of one of the copyrights and an injunction prohibiting plaintiff from continuing to infringe his alleged copyright. The case is before the court on Westport's motion to dismiss count II of Lee's counterclaim (Doc. 9), as well as Lee's motion for leave to file an amended counterclaim (Doc. 14). For the reasons set forth below, Westport's motion to dismiss is granted and Lee's motion for leave to file an amended counterclaim is denied.

*Background*

The Westport Historical Society is a non- profit organization that operates for the sole purpose of preserving and promoting the historical significance of the Westport area of Kansas city, Missouri. In December 1976, Westport published a booklet entitled *The Battle of Westport.* In September 1996, Westport published a derivative booklet under the same title. Fred Lee, a Civil War historian, assembled and edited many of the materials for the 1976 publication, a number (or all) of which were included in the 1996 publication as well.

The parties dispute the extent of Lee's contribution. Westport contends that Lee served as little more than an editor. Lee insists that he conceived of the idea and furnished all materials for the 1976 version of *The Battle of Westport,* making him the "owner" of the work. [FN1] Although the 1976 edition of that publication bears a copyright notice stating " Copyr. 1976 by Westport Historical Society," Westport did not apply for a copyright registration with the United States Copyright Office until July 1996.

In 1996, Lee published a book entitled *Gettysburg of the West* with the assistance of Joanne Eakin and Carolyn Bartels, both of whom operate the Two Trails Genealogy Shop. Westport, contending that

COPR. © 2003 The Bureau of National Affairs, Inc.

*Gettysburg of the West* appropriates significant portions of *The Battle of Westport* without attribution or permission, responded by commencing this copyright infringement action in March 1997. Lee then filed a counterclaim seeking (1) a declaratory judgment that he is the rightful owner of the copyright to the 1976 version of *The Battle of Westport* (Count I); and (2) an injunction prohibiting Westport from infringing his alleged copyright (Count II).

In the motion to dismiss before the court, Westport argues that the court has no jurisdiction over count II of Lee's counterclaim. The court now turns to that motion.

*Discussion*

I. *Standards*

Federal courts are tribunals of limited jurisdiction and may entertain disputes only if specifically authorized to do so. *Castaneda v. INS,* 23 F.3d 1576, 1580 (10th Cir. 1994). The limited nature of a federal court's jurisdiction lends itself to a presumption against jurisdiction, and the party seeking to invoke federal jurisdiction has the burden of overcoming that presumption. *Scheidman v. Shawnee County Bd. of County Comm'rs,* 895 F.Supp. 279, 280 (D. Kan. 1995) (citing *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974)). If, at any point in the litigation, the court determines that it lacks ‚urisdiction over the subject matter, the *1860 court must dismiss the case. *Tuck v. United Servs. Auto. Ass'n,* 859 F.2d 842, 844 (10th Cir. 1988) (citing Fed. R. Civ. P. 12(h)(3)).

Challenges to the court's jurisdiction under Fed. R. Civ. P. 12(b)(1) generally take two forms: facial attacks on the sufficiency of jurisdictional allegations and factual attacks on the accuracy of those allegations. *Holt v. United States,* 46 F.3d 1000, 1002-03 (10th Cir. 1995). In the instant action, Westport limits its motion to a facial challenge of the sufficiency of Lee's counterclaim. In reviewing this facial challenge, the court must accept the allegations in Lee's counterclaim as true. *Id.* The court also must draw all reasonable inferences in favor of Lee. *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir. 1984).

II. *Merits*

[1] Westport contends that the court has no jurisdiction over count II of Lee's counterclaim

because there is no allegation that the Register of Copyrights has approved or denied Lee's copyright registration application. The court agrees. Section 411(a) of the Copyright Act of 1976 provides:

[N]o action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

17 U.S.C. Section 411(a). Pursuant to this statute, registration of a copyright is a jurisdictional prerequisite to an infringement suit. *Data Gen. Corp. v. Grumman Sys. Support Corp.,* 36 F.3d 1147, 1160 [ 32 USPQ2d 1385 ] (1st Cir. 1994); *M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486, 1488 & n.4 [ 15 USPQ2d 1282 ] (11th Cir. 1990). A complaint that fails to plead compliance with section 411(a) is defective and subject to dismissal. *Brown v. Armstrong,* 957 F. Supp. 1293, 1306 (D. Mass. 1997); *Quincy Cablesystems, Inc. v. Sully's Bar, Inc.,* 650 F. Supp. 838, 850-51 [ 1 USPQ2d 1722 ] (D. Mass. 1986); *Techniques, Inc. v. Rohn,* 592 F. Supp. 1195, 1197 [ 225 USPQ 741 ] (S.D.N.Y. 1984).

Lee, conceding that his counterclaim is procedurally defective, requests that the court grant him leave to file an amended counterclaim. In his proposed amendment, Lee adds an allegation that he filed a copyright registration application for the 1976 edition of the *Battle of Westport* with the United States Copyright Office on May 2, 1997. Leave to amend normally is granted freely. *See* Fed. R. Civ. P. 15(a). A court may deny such leave, however, if amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182 (1962).

Lee's proposed amendment fails to cure his pleading deficiencies. Although the amendment alleges that Lee has filed a copyright registration *application,* it does not indicate that the Register of Copyrights has approved or denied the application. The mere fact that an individual has applied for a copyright is insufficient to invoke the court's jurisdiction. *Marshall & Swift v. BS & A Software,* 871 F. Supp. 952, 957-58 (W.D. Mich. 1994). Until Lee receives a response from the Register of Copyrights, this court has no jurisdiction over his infringement counterclaim. [FN2]

COPR. © 2003 The Bureau of National Affairs, Inc.

IT IS, THEREFORE, BY THE COURT ORDERED that Westport Historical Society's motion to dismiss count II of Fred Lee's counterclaim (Doc. 9) is granted. Count II is dismissed without prejudice.

IT IS FURTHER ORDERED that Fred Lee's motion for leave to file an amended counterclaim (Doc. 14) is denied.

Copies of this order shall be mailed to counsel of record for the parties.

IT IS SO ORDERED.

> FN1 Although Lee denies, in his answer, that Westport is the rightful owner of both the 1976 and 1996 editions of *The Battle of Westport,* his counterclaim alleges that he is the true owner of only the 1976 edition. The court, therefore, will confine its analysis to the 1976 edition.

> FN2 Although none of the parties have raised the issue, the same jurisdictional infirmity appears to apply to Westport's infringement claim for its 1996 derivative publication of *The Battle of Westport.* In Para. 13 of its complaint, Westport cites a copyright registration number for the 1996 work yet claims that it has received no response from the Register of Copyrights on its application. The court expects that the parties will brief this matter before the case proceeds much further.

D.Kan.

43 U.S.P.Q.2d 1858

END OF DOCUMENT

COPR. © 2003 The Bureau of National Affairs, Inc.

**Exhibit 3**

▷

Noble
v.
Town Sports International Inc.

U.S. District Court Southern District of New York

No. 96 Civ. 4257 (JFK)

Decided February 2, 1998

United States Patents Quarterly Headnotes

## COPYRIGHTS
[1] Infringement pleading and practice — Jurisdiction (Section 217.05)

## JUDICIAL PRACTICE AND PROCEDURE
Jurisdiction -- Subject matter jurisdiction -- In general (Section 405.0701)
   Plaintiffs' copyright infringement and remaining state law claims are dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, since federal copyright registration is prerequisite to bringing infringement suit and plaintiffs have applied for, but have not yet been granted, registration of copyright for photographs at issue, and since court declines to exercise supplemental jurisdiction over remaining state law claims.

   *1383 Action by Richard Noble, Richard Noble as agent for William J. Cook and Kim L. Waltrip, Jeffrey Robert Bate, Craig D. Branham, Steve Lyon, Sharon K. Lloyd-Dunbar, and Christine N. Seibert against Town Sports International Inc. and TSI/New York Sports Club Inc. for copyright infringement. On defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Granted.

   Stephen A. Weingrad, of Weingrad & Weingrad, New York, N.Y., for plaintiffs.

   Saul B. Shapiro, of Patterson, Belknap, Webb & Tyler, New York, for defendants.

Keenan, J.

   Before the Court is Defendants' motion to dismiss this action, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of federal subject matter jurisdiction or, in the alternative, dismissing Plaintiffs' claim for statutory damages and attorney's fees under the Copyright Act. For the reasons stated below, the Court grants Defendants' motion to dismiss for lack of federal subject matter jurisdiction.

### BACKGROUND

   Plaintiff Richard Noble is a professional photographer who took photographs of the other Plaintiffs in this action, who are models. Defendants Town Sports International, Inc. and TSI/New York Sports Club, Inc. are affiliates that operate health clubs in New York, Massachusetts, Washington, D.C. and other places. By a written license agreement, Defendants allegedly purchased from Noble a limited right to use his photographs in connection with a specific advertising campaign. The agreement allegedly provided that Defendants could use the photographs for one year, in a limited geographic area, for a specific advertising campaign. Plaintiffs contend that Defendants breached the terms of the license agreement by using the photographs for more than one year, without Plaintiffs' consent, in unauthorized advertisements and in unauthorized geographic areas. Plaintiffs filed the instant lawsuit, stating a federal claim for copyright infringement and state law claims for breach of contract, unfair competition, unjust enrichment and invasion of privacy under Sections 50- 51 of the New York Civil Rights Law.

   Defendants move to dismiss the federal copyright infringement claim on the ground that the photographs at issue are not registered with the U.S. Copyright Office, which is a prerequisite to instituting a copyright infringement suit. Alternatively, Defendants move to dismiss the claim for statutory damages and attorney's fees for failure to comply with 17 U.S.C. Sections 411(a) and 412 of the Copyright Act.

### DISCUSSION
A. *The Copyright Infringement Claim*

   Under the Copyright Act, " [N]o action for

COPR. © 2003 The Bureau of National Affairs, Inc.

infringement of the copyright of any work shall be instituted until registration of the copyright claim has been made in accordance with this title." 17 U.S.C. Section 411(a). "The registration requirement is a jurisdictional prerequisite to an infringement suit."*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488 & n.4 [ 15 USPQ2d 1282 ] (11th Cir. 1990); *see Whimsicality, Inc. v. Rubie's Costume Co., Inc.*, 891 F.2d 452, 453 [ 13 USPQ2d 1296 ] (2d Cir. 1989) ("proper registration is a prerequisite to an action for infringement"); *Demetriades v. Kaufman*, 680 F. Supp. 658, 661 [ 6 USPQ2d 1737 ] (S.D.N.Y. 1988) ("Receipt of an actual certificate of registration or denial of same is a jurisdictional requirement, and this court cannot prejudge the determination to be made by the Copyright Office.").

[1] Plaintiff Richard Noble has only applied for copyright registration of the photographs *1384 at issue in this case; a certificate of registration has not yet been issued by the Copyright Office. Nonetheless, Plaintiffs' counsel contends that " [t]he application for registration is sufficient to maintain an infringement action." Pls. Mem. in Opp. at 6. The Court disagrees. The issuance of a registration certificate is a "prerequisite to the commencement of the infringement action" and an application for registration does not suffice.*Robinson v. Princeton Review*, No. 96 Civ. 4859 (LAK), 1996 WL 663880, at *7-8 [ 41 USPQ2d 1008 ] (S.D.N.Y. Nov. 15, 1996); *see National Ass'n of Freelance Photographers v. Associated Press*, No. 97 Civ. 2267 (DLC), 1997 WL 759456, at * 12 [ 45 USPQ2d 1321 ] (S.D.N.Y. Dec. 10, 1997) ("an action for copyright infringement cannot be asserted unless a certificate of registration has been issued; the mere filing of an application is simply insufficient to support such a claim"). Because Plaintiff Noble has only filed an application for registration, and no certificate of registration has yet been issued for the photographs underlying the infringement claim, the federal copyright infringement claim cannot stand. Upon dismissal of this federalclaim, which is the only basis for original federal jurisdiction, only state law claims remain and the Court declines to exercise supplemental jurisdiction over those claims.

*CONCLUSION*

For the reasons discussed above, the Court grants Defendants' motion to dismiss the federal copyright infringement claim for lack of federal subject matter jurisdiction. Absent any other federal claim, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. The Court orders this case closed and directs that it be removed from the Court's docket.

SO ORDERED.

S.D.N.Y.

46 U.S.P.Q.2d 1382

END OF DOCUMENT

COPR. © 2003 The Bureau of National Affairs, Inc.

**Exhibit 4**

**c**

United States District Court, S.D. New York.

NATIONAL ASSOCIATION OF FREELANCE
PHOTOGRAPHERS, Kevin J. Larkin, Joseph M.
Tabacca, and Paul Hurschmann, Plaintiffs,
v.
ASSOCIATED PRESS, Defendant.

**No. 97 Civ. 2267(DLC).**

Dec. 10, 1997.

Joel L. Hecker, Laurence Desind, Charles D.
Donohue, Russo & Burke, New York City, for
plaintiffs.

Robert Penchina, Margaret B. Soyster, Hilary Lane,
Rogers & Wells, New York City, for defendant.

OPINION and ORDER

COTE, J.

*1 This action was commenced in March 1997 by
three professional freelance photographers, Kevin J.
Larkin, Joseph M. Tabacca, and Paul Hurschmann
(collectively "the individual plaintiffs"), and the non-
profit association with which they are affiliated,
[FN1] the National Association of Freelance
Photographers ("NAFP"), against the Associated
Press ("AP"), a non-profit corporation that gathers
and disseminates news and information, and,
according to the plaintiffs, also engages in the sale of
photographs of newsworthy events. The plaintiffs
filed an Amended Complaint on May 7, 1997, in
response to a motion for sanctions that AP had served
on the plaintiffs on April 24, 1997, but not filed, in
compliance with Rule 11(c)(1)(A), Fed.R.Civ.P. That
motion, and an accompanying cover letter, notified
the plaintiffs that their original complaint contained
some false statements (regarding procurement of
copyright registrations), and advised that if the
plaintiffs did not withdraw three of the complaints'
six counts, which were asserted to have no legal
basis, then AP would file the sanctions motion. In
filing their mended Complaint, the plaintiffs removed
the allegedly false statements, but made no other
curative changes in their pleadings. The Amended
Complaint asserts antitrust and copyright
infringement claims and seeks declaratory and
injunctive relief largely on the basis of AP's practice
of requiring photographers who are on assignment for
AP, and from whom it buys photographs, to assign
their copyrights in those photographs to AP as a
condition of sale.

> FN1. The Amended Complaint states that
> Larkin is NAFP's president, Hurschmann is
> NAFP's executive vice president, and
> Tabacca is a member of the organization.

On May 29, 1997, AP filed an answer with
counterclaims and also noticed the two motions that
are the subject of this opinion. First, AP has moved
pursuant to Rule 12(c), Fed.R.Civ.P., for a judgment
on the pleadings as to all but one of the counts of the
Amended Complaint (hereinafter "Complaint"),
arguing that both NAFP and the individual plaintiffs
lack standing to assert their claims and that, in any
event, none of the claims states a viable cause of
action. Second, as forewarned, AP has filed a
motion for sanctions under Rule 11, Fed.R.Civ.P.,
asserting that the plaintiffs and their counsel filed the
Complaint for improper motive and without a
reasonable basis in law. As to the latter, the
plaintiffs have cross-moved pursuant to Rule
11(c)(1), Fed.R.Civ.P., for expenses and attorney's
fees incurred in opposing AP's motion for sanctions.
For the reasons set forth below, the motion under
Rule 12(c) is granted and the Complaint is dismissed
with prejudice as to all the counts at issue; the cross-
motions for sanctions are denied.

**STANDARD OF REVIEW**

In deciding a motion under Rule 12(c), this Court
"appl[ies] the same standard as that applicable to a
motion under Rule 12(b)(6)," that is, the Court "must
accept the allegations contained in the complaint as
true, and draw all reasonable inferences in favor of
the nonmovant." Sheppard v. Beerman, 18 F.3d 147,
150 (2d Cir.1994). Moreover, the Court may
dismiss an action pursuant to a motion under either
Rule only if "it appears beyond doubt that the
plaintiff can prove no set of facts in support of his
claim which would entitle him to relief." Cohen v.
Koenig, 25 F.3d 1168, 1172 (2d Cir.1994) (quoting
Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2
L.Ed.2d 80 (1957)); accord Sheppard, 18 F.3d at
150. In other words, the Court can dismiss the
plaintiffs' complaint here only if, assuming all facts
as true, they still have failed to plead the basic
elements of their causes of action.

**BACKGROUND**

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*2 The Complaint alleges that AP is a cooperative association of publications and other communications related entities referenced as "Members") whose business, at least in part, is he collection, assembly, and distribution of information to the public. This information is acquired by AP from its own employees, from the employees of Members, and from other "independent originators of such materials," including the photographers who make up NAFP. In regard to the latter point, although the Complaint speaks in terms of "Freelance Photographers," the practice of AP that is attacked in the Complaint pertains to AP's purchase of photographs from photographers who attend and photograph events at AP's request, and on its behalf, and not to AP's purchase of photographs from those who are called freelance photographers in the conventional sense.

According to the plaintiffs, AP is "the chief single source of information for the American press," such that the "inability to sell photographs to AP or any of its multitude of Members could have a decimating effect upon the business of any Freelance Photographer." The Complaint purports to document the "power and domination of AP" through allegations of specific instances in which AP improperly demanded, disseminated, retained, or otherwise used without furnishing satisfactory compensation (if any), certain photographs taken by the three individual plaintiffs.

Count One of the Complaint seeks declaratory relief. It alleges that Freelance Photographers routinely "cover" events for AP by providing what is labeled as "Professional Services," which involves "the presence of the Freelance Photographer at an event with the intent, but not the absolute requirement, of creating photographic images of the event for submission to the AP or a Member." AP pays Freelance Photographers for Professional Services at a rate that is unrelated to the subject matter or content of the images, or whether any images are in fact created or submitted to AP, or accepted, used, or returned by AP. Payment for such services is accomplished by check, and each check that AP issues for such services bears on its face a legend stating:
> In consideration of the transfer of any and all copyrighted ownership in the news materials described above. Endorsement signifies consent. [FN2]

FN2. AP indicates that it began printing the

legend on its checks after the decision in *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). The plaintiffs assert that the reference in the legend to "news materials described above" is to "a payment stub which does not describe the photographs submitted."

The central focus of this action concerns the parties' differing interpretations of this legend, that is, AP's position that it owns the copyright in all images for which a check bearing this legend was endorsed by a freelance photographer, and he plaintiffs' contention that the legend is ineffective to transfer copyright to AP. In support of the latter view, the complaint alleges that checks bearing the legend were:
> Endorsed by Freelance Photographers on the back without noticing and therefore not reading, the Legend on the front; ... Endorsed by Freelance Photographers on the back not understanding the significance or intended meaning of the Legend on the front, or ... Endorsed by Freelance Photographers after crossing out or altering the language of the Legend.

*3 On the basis of these allegations Count One seeks a declaration that
> each Freelance Photographer is the copyright owner of the Photographs created by such Freelance Photographer and submitted to AP; and that endorsement of Payment Checks issued as compensation for Professional Services and bearing the Legend on their face did not and/or do [sic] not transfer copyright ownership in the Contested Images from Freelance Photographers to AP.

In Count Two the Complaint requests injunctive relief to prevent AP's continued misuse of photographs, taken by Freelance photographers, that AP maintains in a "photo library." The plaintiffs allege that AP uses these photographs without the authorization or consent of the Freelance Photographers who created them, without attributing copyright credit to them, and without payment for each use. The specific relief requested includes an injunction against future unauthorized "commercial exploitation" of the photos by AP, and an order directing that AP: (i) give full copyright credit "to each Freelance photographer owning a photographic image used by AP" for any unauthorized purpose; (ii) account to "each Freelance photographer" for "each use made by AP" of his or her images and the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

revenues received therefrom, and pay over "to each Freelance photographer owning photographic images used by AP" any revenue derived by any unauthorized use thereof; and (iii) return "to each Freelance Photographer all images presently held by AP without the express authorization of each such Freelance photographer."

Counts Three and Four assert claims for restraint of trade, monopoly, and unfair trade practices under (respectively) federal and state antitrust laws. The Complaint alleges that "AP dominates and controls the market for gathering and disseminating information through print media in the form of photographic images," and that due to this "dominant position in the marketplace, Freelance Photographers are compelled to submit images of noteworthy events to AP if such Photographers desire to remain active in such marketplace ." More particularly, the complaint asserts that AP, "directly and through and/or in combination with its constituent Members": (i) uses its dominance to require as a condition of payment for Professional Services that Freelance Photographers "transfer to AP all copyright ownership and interest in images used by AP," and allow AP to make continued use of the images without credit and/or additional compensation; and (ii) "refuse[s] to do business with and/or threaten[s] not to do business with those Freelance Photographers who object to the conduct of AP."

According to the plaintiffs, AP's conduct "restrain[s] trade and commerce by interfering with the ability of Freelance Photographers to compete in the commercial exploitation of images concerning events and people," in violation of Sections 1 and/or 2 of the Sherman Act, 15 U.S.C. § § 1, 2, which causes Freelance Photographers to "lose substantial revenue and threaten[s] their economic survival." The plaintiffs demand treble damages for these infractions, as well as an injunction (i) barring AP from requiring as a condition of payment that Freelance Photographers transfer copyrights to AP, (ii) halting AP's use of photos without permission of the copyright owners, and (iii) precluding AP from refusing to do business, threatening not to do business, or taking other reprisals in retaliation for objections by Freelance Photographers to AP's actions or their refusal to comply with AP's demands.

*4 Count Five asserts a copyright infringement claim on behalf of plaintiff Larkin only. The Complaint alleges that he created certain images and then, prior to the commencement of this action, "complied in all respects" with governing federal copyright laws by

filing a Registration Application together with deposit copies of the [subject images] with the United States Copyright Office, along with payment of the requisite fees, which submission and payment were received by the Copyright Office prior to the commencement of this action.

AP's use of Larkin's images is thus alleged to have infringed on his "exclusive rights in the copyright" of the images, in violation of Sections 106(2) and 106(5) of the Copyright Act of 1976, 17 U.S.C. § § 106(2), (5). [FN3]

> FN3. Count Six asserts a nearly identical infringement claim on behalf of plaintiff Hurschmann, but as noted, AP has not made a motion as to that claim. Although AP speaks of moving to dismiss "Counts One through Four, and part of Count Five," Count Five is not readily divisible. The Court therefore construes AP's motion to be directed at all of the first five counts of the Complaint and not at Count Six.

### DISCUSSION

AP raises numerous grounds for dismissal as to each of the plaintiffs' claims, including one ground that applies equally to all, standing. Because standing is a prerequisite to maintaining suit, the Court will address that issue first.

A. *Standing*

AP argues that both NAFP and the individual plaintiffs lack standing here because the Complaint purports to assert claims generally on behalf of "professional Freelance Photographers" who "have been 'covering' events pursuant to a specific assignment or some other agreement with the AP or a Member." As for the individual plaintiffs, they plainly lack standing to assert the present claims on behalf of any persons other than themselves. *See, e.g., Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 955, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) ("plaintiff generally must assert is own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties") quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). The Court finds that the individual plaintiffs do have standing to assert the claims in the Complaint as to themselves; AP's arguments to the contrary go more toward the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

sufficiency of the individual plaintiffs' pleadings (or lack thereof) than to their capacity constitutionally to assert the present claims.

With respect to NAFP, AP contends that this organization--which seeks redress in the present action only for injuries allegedly suffered by its members, and not for any injury to itself--fails to satisfy the test for "associational" standing set forth in _Warth v. Seldin_, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), and reiterated in _Hunt v. Washington State Apple Advertising Comm'n_, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977):

> an association has standing to bring suit on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

_Hunt, 432 U.S. at 343._ It is undisputed that NAFP satisfies the first two elements of this test; the only question is whether it satisfies the third element as well, that is, whether the claims asserted in the Complaint _or_ the relief requested therein require the participation of individual members of NAFP.

*5 The Court essentially agrees with AP that NAFP lacks standing here under the _Warth/Hunt_ standard. Any judicial determination on the claims in this lawsuit requires proof regarding individual claimants, for example, whether given payment checks were effective to transfer copyright to AP in light of all the circumstances under which the checks were endorsed by Freelance Photographers. Because this conclusion rests on slightly different considerations as to each of the plaintiffs' claims, the Court will further address the issue of NAFP's standing in the sections below that correspond to those claims.

Generally speaking, however, the plaintiffs are not challenging the enforceability of the check legend on its face or standing alone. Rather, they are challenging AP's business practice concerning the endorsement of checks and the transfer of copyright in purchased photographs, a practice that (at least potentially) affects each plaintiff endorser/seller differently, depending on their prior understandings or course of dealing with AP, specific side-agreements that may govern a given transaction, or particular instances of misperception, miscommunication, or fraud by either party. In this situation, the merits of the plaintiffs' claims simply cannot be determined without the participation of individual claimants and the presentation of evidence as to the discrete circumstances substantiating their claims. [FN4] _See, e.g., Rent Stabilization Ass'n v. Dinkins_, 5 F.3d 591, 596-97 (2d Cir.1993) (denying standing to association challenging city rent schemes as a "taking" because "it is impossible to discern the identity of the aggrieved parties without delving into individual circumstances" and "whether a taking has occurred depends ... on a variety of financial and other information unique to each landlord"); _C.A.U.T.I.O.N., Ltd. v. City of New York_, 893 F.Supp. 1065, 1069-70 (S.D.N.Y.1995) (denying associational standing where plaintiffs alleged that city officials had policy or practice that violated Fourteenth Amendment and "[p]roof of the existence of a policy or practice require[d] ... individual members of CAUTION ... to show individual instances of misconduct"). For this reason, NAFP has no standing to assert most of the claims in the Complaint.

FN4. The plaintiffs do not--and in any event could not--dispute that it is appropriate to deny associational standing where the _claims_ at issue require individual participation, even if the relief requested, as is often the case with declaratory or injunctive relief, does not so require. _See Rent Stabilization Ass'n v. Dinkins_, 5 F.3d 591, 596 (2d Cir.1993) ( "[T]he relief requested is only half of the story. The _Hunt_ test is not satisfied unless 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' ") (quoting _Hunt, 432 U.S. at 343_) (emphasis in _Dinkins_ ).

B. _Declaratory Judgment_

As noted, the plaintiffs seek a declaration that each freelance photographer owns the copyright in his or her photographs, and that AP's policy of requiring the transfer of copyright through "endorsement of Payment Checks issued as compensation for Professional Services" was not effective to "transfer copyright ownership in the Contested Images from Freelance Photographers to AP ." Initially, the plaintiffs concede, as they must, that the use of "a legend on a check" and the required endorsement thereof--as was AP's practice here--"_may_ be effective to transfer copyright under the proper circumstances." (Emphasis in original.)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*6 Section 204(a) of the Copyright Act of 1976 provides:

A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.

17 U.S.C. § 204(a). The Second Circuit in *Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 564 (2d Cir.1995), indicated that the use of a legend on a check may satisfy the writing requirement of Section 204(a), at least in certain circumstances. The district court in *Playboy* had found the legend in that case [FN5] ineffective to transfer copyright, given the ambiguity of the legend and the absence of evidence of the parties' intent. The legend was ambiguous because, *inter alia,* it made no mention of "copyright"; the assignment of "all right, title, and interest" was in the "items" as opposed to rights; the language described not a present transfer of rights but confirmation of one past; and thus there was "no clear way to tell what the parties intended by their agreement." *Playboy Enters., Inc. v. Dumas*, 831 F.Supp. 295, 308-309 (S.D.N.Y.1993). [FN6] The Second Circuit affirmed the finding that the legend was ambiguous, and thus ineffective to transfer copyright in the circumstances of that case. *See Playboy*, 53 F.3d at 564 (emphasizing that the legend at issue "does not expressly mention copyright" and that "the evidence is conflicting as to whether the parties intended a one- time transfer of reproduction rights or a transfer that included copyright").

FN5. The legend at issue read in pertinent part:
By endorsement of this check, payee acknowledges payment in full for the assignment to Playboy Enterprises, Inc. of all right, title, and interest in and to the following items: [a description followed] *Playboy Enters., Inc. v. Dumas*, 831 F.Supp. 295, 300 n. 1 (S.D.N.Y.1993) (alteration in original).

FN6. The district court repeatedly stressed this theme of clarity, concluding, for example, that the Ninth Circuit's view that "a one-line pro forma statement will do" to transfer copyright had to be "predicated on the fact that the terms of the to forma statement are clear," *Playboy*, 831 F.Supp.

at 308 citing *Effects Assocs. ., Inc. v. Cohen,* 908 F.2d 555 (9th Cir.1990)), and that the import of two Southern District cases was that "unless there is evidence of an intention to transfer copyright, a writing merely reciting transfer of an object will not transfer copyright," *id.* at 309 (citing *Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc.,* 690 F.Supp. 298 (S.D.N.Y.1988); and *Kenbrooke Fabrics, Inc. v. Soho Fashions, Inc.,* 13 U.S.P.Q.2d 1472 (S.D.N.Y.1989)).

The plaintiffs argue in opposing this motion that "*this Legend* under *these* circumstances, does not transfer copyright to AP." (Emphasis in original.) To begin with, that very statement of the issue demonstrates again why NAFP has no standing here; there is no way to determine whether "*this Legend* under *these* circumstances" was effective to transfer copyright without examining "*these* circumstances," that is, the particular circumstances in which individual Freelance Photographers endorsed their checks. That conclusion is reaffirmed by the Complaint's allegations as to why the endorsements were ineffective in this regard, *i.e.,* because Freelance Photographers endorsed the checks "without noticing and therefore not reading, the Legend[,] ... [while] not understanding the significance or intended meaning of the Legend[,] ... [or] after crossing out or altering the language of the Legend." Such fact-intensive inquiries plainly require the participation of the individual photographers offering the specific explanations.

Although the individual plaintiffs have standing to seek a declaration as to the effect of AP's check endorsement procedure on them, the Court finds that this claim, as pleaded in the Complaint, fails as a matter of law to state a viable cause of action. Specifically, the Complaint alleges no facts on behalf of the individual plaintiffs that would permit this Court to find that the legend at issue did *not,* in the particular circumstances of this case, transfer *their* copyright interests to AP. Instead, in apparent recognition of the clarity of the language in the legend, the Complaint attacks the legend by identifying circumstances in which it might *not* be effective, *e.g.,* where individual endorsers failed to see it or understand it, crossed it out, or had prior understandings or dealings with AP that would unambiguously render the legend moot. The critical fact, however, is that no such alternative circumstances are adduced in the Complaint *as to the individual plaintiffs.* To the contrary, the Complaint

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

contains potentially mitigating allegations only as to "Freelance Photographers" generally, which, for the reasons stated above, are wholly ineffectual in this action given NAFP's lack of standing. Notwithstanding the plaintiffs' misplaced protestations (in opposing this motion) about what "[t]he evidence in this case *will show*," (emphasis added), the Complaint contains no allegations particular to any of the three individual plaintiffs that would render the legend ineffective as to them and thereby entitle them to relief. The claim for a declaratory judgment must therefore be dismissed.

### C. Injunction

**\*7** The plaintiffs' claim for injunctive relief is deficient largely for the reasons set forth above. First, NAFP lacks standing to seek an injunction on behalf of Freelance Photographers in general. The grounds proffered for the injunction, essentially that AP engaged in unauthorized use of Freelance Photographers' copyrighted materials and failed to compensate or credit Freelance Photographers for those uses, all depend at root on proof of copyright ownership in the subject materials--especially in light of the plaintiffs' concession that "AP has the right to *use* the photographs" themselves "in connection with the story for which such photograph[s] w[ere] created" by the plaintiffs. (Emphasis added.) As noted above, proof of copyright ownership cannot be adduced without the participation of individual photographers, who would have to establish that their endorsement of payment checks from AP was ineffective to transfer copyright, or that they had other individual arrangements or dealings with AP that negated the effect of the transfer. Once again, NAFP cannot satisfy the test for associational standing.

The individual plaintiffs do have standing to assert their own claims for unauthorized use and failure to provide compensation or credit for copyrighted materials. But these plaintiffs nevertheless still cannot maintain their claim for injunctive relief because the Complaint fails to allege facts that would permit the finding of liability requisite to such relief. Although the Complaint describes a photograph taken by each of the individual plaintiffs and used by AP, the Complaint does not, as explained above, identify the theory by which the transfer of copyrights in these three photographs might be deemed ineffective. That is, when read as a whole, the Complaint appears to allege that these three photographs were taken while the individual plaintiffs worked on behalf of AP as "Freelance

Photographers," as that term is used in the Complaint, [FN7] and that each plaintiff thereafter received payment through endorsement of a check bearing the legend described above. What the Complaint quite clearly fails to allege, however, is that the circumstances claimed to have rendered ineffective the copyright transfers of Freelance Photographers *generally --i.e.,* that checks were endorsed without the photographers noticing or understanding the legend, or after crossing it out--apply to any of the three individual plaintiffs, or occurred with respect to any of the three specifically referenced photographs.

> FN7. The Complaint explicitly states that two of the three individual plaintiffs were working as Freelance Photographers for AP when they took the photographs at issue, but does not make such an allegation as to plaintiff Tabacca.

In short, the Complaint alleges no facts that would permit a finding that the individual plaintiffs retained ownership of copyrights in the subject photographs (or that would permit a finding of copyright infringement, as explained below); and therefore those plaintiffs cannot maintain a claim for unauthorized use or failure to compensate or credit for copyrighted materials. Accordingly, the plaintiffs have no entitlement to injunctive relief with respect to these issues, and their claim to that effect must be dismissed.

### D. Antitrust

**\*8** The Complaint asserts antitrust claims under both Sections 1 and 2 of the Sherman Act, 15 U.S.C. § § 1, 2, [FN8] and seeks both treble damages and an injunction against (i) AP's policy of requiring Freelance Photographers to transfer their copyright ownership in photographs to AP as a condition of sale, (ii) AP's unauthorized use of Freelance Photographers' photographs, and (iii) AP's "refusing to do business" with, or taking other retaliatory actions against, Freelance Photographers who object to AP's policies. As above, the individual plaintiffs have standing to assert these claims in regard to themselves, but unlike the prior claims, whether NAFP also has standing is a closer question.

> FN8. AP correctly notes that, because the provisions of New York's antitrust laws are to be construed in keeping with federal

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

antitrust law, the plaintiffs' antitrust and unfair business claims under state law will rise or fall along with their federal antitrust claims. Because the Court concludes that the federal claims are deficient as a matter of law, the state claims will not be discussed.

The plaintiffs concede that NAFP, as an association, cannot pursue a claim for money damages on behalf of its members under the antitrust statutes, but they maintain that it may seek injunctive relief for such individuals under those laws. In support of this argument the plaintiffs rely on *Barr v. Dramatist's Guild, Inc.,* 573 F.Supp. 555, 561-62 (S.D.N.Y.1983), where the court held that an association was not precluded *by any principle of antitrust law* [FN9] from obtaining injunctive relief for its members, and therefore analyzed the standing of the association in that case under the familiar *Warth/Hunt* standard. Although this Court has concluded that NAFP cannot satisfy the third element of that test with respect to the claims for declaratory or injunctive relief--because those claims necessitated the participation of individual plaintiffs--the antitrust injunction claim presents different considerations. In its most important aspect, the claim seeks to bar AP from requiring as a condition of purchasing photographs from Freelance Photographers that those Freelance Photographers transfer their copyrights in the subject photographs to AP. Giving the plaintiffs the benefit of the doubt on this motion to dismiss, the Court concludes that substantiation of this claim (at least) will not necessarily require the participation of individual claimants. [FN10] The Court therefore finds that NAFP as well as the individual plaintiffs have standing to assert the antitrust claims in the Complaint.

FN9. The *Barr* court based this conclusion on the difference between Section 4 of the Clayton Act, 15 U.S.C. § 15, which prohibits associations from suing for treble damages where the only injury alleged is to its members, *see Hawaii v. Standard Oil Co.,* 405 U.S. 251, 262-65, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972), and Section 16 of the Clayton Act, 15 U.S.C. § 26, which permits "[a]ny person, firm, corporation, or association ... to sue for and have injunctive relief." *See Barr,* 573 F.Supp. at 561-62.

FN10. Unlike the declaratory judgment

claim, for example, the claim here does not require proof that transfers of copyright were or were not effective in individual cases; rather, the claim seeks to bar the practice in the first instance on the ground that it restrains trade. Proving an adverse effect on competition in the marketplace as a result of that practice (regardless of its effectiveness to transfer copyright) would not necessarily require the participation of each individual photographer.

Although the plaintiffs have standing, the Court concludes that the Complaint contains insufficient factual allegations to permit a finding that AP has violated either Section 1 or 2 of the Sherman Act. At the very least, the plaintiffs have failed adequately to allege the following essential elements of such claims: that they were the victims of "antitrust injury" or "concerted action," or that AP exercised "monopoly power" in the relevant market. For these reasons, Counts Three and Four of the Complaint must be dismissed.

*1. Restraint of Trade*

Section 1 of the Sherman Act provides:
   Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

*9 15 U.S.C. § 1. In order to state a claim under Section 1, plaintiffs must allege "(1) a contract, combination, or conspiracy; (2) in restraint of trade; (3) affecting interstate commerce." *Maric v. Saint Agnes Hosp. Corp.,* 65 F.3d 310, 313 (2d Cir.1995) (citing *Capital Imaging Assocs. v. Mohawk Valley Medical Assocs., Inc.,* 996 F.2d 537, 542 (2d Cir.1993), *cert. denied,* 116 S.Ct. 917 (1996)). In addition, plaintiffs must demonstrate that they have "antitrust standing" and have suffered "antitrust injury." The former requirement involves a showing that the antitrust claimant is a "proper plaintiff," *i.e.,* that based on factors such as the directness and identifiability of his injuries, the plaintiff will be "an efficient enforcer of the antitrust laws." *Balaklaw v. Lovell,* 14 F.3d 793, 798 n. 9 (2d Cir.1994). The latter requirement demands inquiry into "whether the plaintiff suffered antitrust injury," *id.,* that is,
   injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

violation or of anticompetitive acts made possible by the violation.

*Id.* at 797 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)). This definition underscores the fundamental tenet that '[t]he antitrust laws ... were enacted for "the protection of *competition*, not *competitors.* " ' " *Id.* quoting *Brunswick*, 429 U.S. at 488 (quoting *Brown Shoe v. United States*, 870 U.S. 294, 320 (1962))). In light of these standards, the plaintiffs' claims are deficient in numerous respects.

First, the plaintiffs have failed to allege sufficient facts to satisfy the first fundamental element of a Section 1 claim, the existence of "a combination or some form of concerted action between at least two legally distinct economic entities." *Capital Imaging, 996 F.2d at 542.* The Complaint states that AP acted improperly "directly and through and/or in combination with its constituent Members," and "directly and by way of and/or in combination with its constituent Members." This bare assertion is an inadequate allegation of concerted action because, for one, it fails to make clear whether AP is legally distinct from its "Members," *both* of which are included within a single cryptic definition in the Complaint as "a cooperative association of publications and other communications related entities." *See id.* (agreement between parent corporation and wholly owned subsidiary agents is not concerted action for purposes of Sherman Act).

In any event, the plaintiffs have apparently abandoned this theory of concerted action in opposing the present motion. They now allege instead that it is "the presence of 'agreements' here between AP and Freelance Photographers ... that bring AP's practices within the each of the [concerted action] requirement of Section 1." Under the facts as alleged by the plaintiffs, however, the photographers are not willing participants in these agreements and can hardly be said to have engaged in the kind of joint action forbidden by Section 1. Indeed, the only case cited in support of the plaintiffs' revised theory is *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665 (7th Cir.1985), a case that describes the narrow exception whereby *franchisees* alleging an illegal "tying" arrangement can satisfy the joint action requirement by charging a "conspiracy"--really "unwilling compliance"-- between themselves and a franchisor. *Id.* at 669-70 (citing *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968)). Because this case does not (and could not) involve allegations of a

franchisor-franchisee situation, and because, as explained below, the plaintiffs cannot establish a "tying" arrangement, this theory of concerted action fails as a matter of law. On the basis of this conclusion alone, the plaintiffs cannot maintain a Section 1 claim.

*10 In addition, however, the plaintiffs also have failed to allege "antitrust injury." Even assuming that they are the "proper plaintiffs" here--such that they satisfy the "antitrust standing" requirement--the plaintiffs have set forth insufficient facts to enable them to show, as they must, "that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market." *Capital Imaging*, 996 F.2d at 543 (emphasis in original). *See also Clorox v. Sterling Winthrop, Inc.*, 117 F.3d 50, 56 (2d Cir.1997) (discussing actual adverse effects requirement). To the contrary, the only allusions to anticompetitive effect in the Complaint are the allegations that AP's copyright transfer policy and "refusal to deal" with Freelance Photographers who object to that policy: (i) has "restrain[ed] trade and commerce by interfering with the ability of Freelance Photographers to compete in the commercial exploitation of images concerning events and people," and (ii) "is causing and will continue to cause Freelance Photographers to lose substantial revenue and threaten their economic survival." These allegations not only are wholly conclusory, but more importantly fail to demonstrate he requisite effect on "*competition*, not *competitors.*" *Balaklaw*, 14 F.3d at 797; *accord Clorox*, 117 F.3d at 57.

To begin with, the plaintiffs simply make *no* factual allegations that would permit a finding that either of the proffered effects has actually occurred, is occurring, or is threatened to occur. Absent allegations suggesting how Freelance Photographers' "ability to compete" has been hampered, or facts documenting such hindrances and the revenue photographers have lost or will continue to lose thereby, the plaintiffs' antitrust claims resemble only a rote inventory of key words and phrases from an antitrust hornbook. *See Sage Realty Corp. v. ISS Cleaning Servs. Group, Inc.*, 936 F.Supp. 130, 135 (S.D.N.Y.1996) ("[A]n antitrust Complaint is insufficient if it simply contains conclusory allegations which merely recite the litany of antitrust.") (internal quotations and citations omitted). Such terminology may be necessary to state an antitrust claim, but it is not alone sufficient.

Moreover, the Complaint sets forth no factual

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

connection between the alleged market effects and the substantive allegations concerning, for example, AP's check endorsement policies with respect to Freelance Photographers generally. Similarly, the allegations regarding the individual plaintiffs show at most that they personally were harmed by AP's actions toward them, and *not* that others in the market were thereby harmed, thus rendering those allegations deficient as well. *See Capital Imaging, 996 F.2d at 543* ("to prove [plaintiff] has been harmed as an individual competitor will not suffice"). In short, at no point does the Complaint adduce facts to show that *competition in the market* --even as generously defined by the plaintiffs in their brief opposing this motion as the "commercial" market for photographs by Freelance Photographers--was harmed by AP's copyright transfer policies or its "refusal to deal with Freelance Photographers." To the contrary, the Complaint merely sets forth a situation in which a purchaser of goods dictates the terms of its purchases. There is no allegation, however, that the copyright transfer requirement prevents those Freelance Photographers who do *not* "object to AP's conduct" from competing in the market, and there are no facts alleged-- including those concerning the individual plaintiffs--to support the claim that Freelance Photographers are compelled to submit images to *AP* and no other entity to remain competitive. Without any of these sorts of allegations, the plaintiffs' claim simply cannot survive.

*11 Finally, the plaintiffs' substantive theory of antitrust violation under Section 1 is flawed as well. Although nowhere asserted in the Complaint, the plaintiffs contend in opposing this motion that their pleadings adequately allege restraint of trade in the form of either a "reciprocal dealing" arrangement or a "tying" arrangement. The former claim fails because, as the plaintiffs concede, the "essence" of a reciprocal dealing arrangement is "the willingness of each [of two companies] to buy from the other, conditioned upon the expectation that the other company will make reciprocal purchases," (quoting *United States v. General Dynamics Corp., 258 F.Supp. 36, 58 (S.D.N.Y.1966)*); in this case, however, there has never been the slightest suggestion (either in the Complaint or in the papers addressed to this motion) that the plaintiffs have made any relevant purchases from AP.

The tying claim is equally invalid. A tying arrangement is defined as:

an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.

*Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 461, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992)* (quoting *Northern Pac. R. Co. v. United States, 356 U.S. 1, 5-6, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958)*). Implicit in this definition is the "fundamental principle of antitrust law that an illegal tying arrangement requires that *at least two products* and/or services be purchased by the same individual." *DeJesus v. Sears, Roebuck & Co., 87 F.3d 65, 71 (2d Cir.)* (citation omitted) (emphasis added), *cert. denied, 519 U.S. 1007, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996)*. There simply is no way that the plaintiffs can make out a tying claim in this case as presently configured, given that the only purchaser at issue is AP, the alleged antitrust violator, and that AP is purchasing only *one product,* the photographs that are the subject of the plaintiffs' present copyright claims. The plaintiffs' dubious attempt to distinguish different *markets* for the subject photographs--one ostensibly involving news agencies such as AP and the other involving the "commercial" photograph-buying public--cannot circumvent the determinative circumstance in their pleadings, *i.e.,* that only a *single* product is being bought.

In sum, the plaintiffs have pleaded insufficient facts to establish that they suffered antitrust injury under the *per se* "tying" theory, and they likewise have stated no claim for the requisite injury under the "rule of reason" because, as noted above, they have plead no facts that, if proven, would show that AP's actions "had an *actual* adverse effect on competition as a whole in the relevant market." *Capital Imaging, 996 F.2d at 543* (emphasis in original). Their Section 1 claim must therefore be dismissed.

2. *Monopolization*

Although the plaintiffs failed to plead a separate claim for monopoly, the Court will consider the viability of such a claim because the Complaint, by citing Section 2 of the Sherman Act, seems at least to attempt to make allegations thereunder. Section 2 penalizes "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire ... to monopolize ... trade or commerce." 15 U.S.C. § 2. Under that statute, "[t]he offense of monopoly ... has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power...." *Eastman Kodak, 504 U.S. at 481* (citation omitted); *accord Clorox,*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

117 F.3d at 61. A claim of attempted monopoly requires the plaintiff to prove: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993). The allegations here are insufficient to sustain either variation of the claim.

*12 First and foremost, while the Complaint makes the flatly conclusory assertion that "AP dominates and controls the market for gathering and disseminating information through print media in the form of photographic images," the plaintiffs' pleadings fail altogether to allege facts that would substantiate such a claim. Specifically, the Complaint contains not a single factual allegation demonstrating that AP has *any* market power, or the extent thereof, let alone that AP's market share makes it dominant. Absent any description of the relevant market structure, or any statement concerning the percentage of the market that is controlled by AP, the plaintiffs cannot establish that AP either possesses monopoly power or has a "dangerous probability" of achieving it. The plaintiffs' mere assertion of AP's dominance is insufficient to make it so.

In addition, as indicated above, the Complaint contains no facts to support that AP's policies have had any adverse effect on *competition,* as opposed to individual Freelance Photographers. And finally, there is no allegation from which it could be found that AP wilfully acquired monopoly power or intends to acquire it in the future. For these reasons, the plaintiffs have failed to state a claim under Section 2.

E. *Copyright Infringement*

The claim for copyright infringement is easily dismissed. he allegation in the Complaint that plaintiff Larkin "fil[ed] a Registration Application" as well as other materials and fees with the United States Copyright Office ... prior to the commencement of this action," bares the fatal defect. As AP correctly notes, an action for copyright infringement cannot be asserted unless a certificate of registration has been *issued;* the mere filing of an application is simply insufficient to support such a claim. See, e.g., *Fonar Corp. v. Domenick,* 105 F.3d 99, 103 (2d Cir.) ("There are only two elements of an infringement claim: ownership of a valid copyright and the copying of constituent elements of the work that are original."), *cert. denied,* 522 U.S. 908, 118 S.Ct. 265, 139 L.Ed.2d 191 (1997); *Whimsicality,*

*Inc. v. Rubie's Costume Co.,* 891 F.2d 452, 455 (2d Cir.1989) (same); *Robinson v. The Princeton Review Inc.,* 41 U.S.P.Q.2d 1008, 1015 (S.D.N.Y.1996) ("[A]s most of the cases in this Circuit to have considered the issue have held, registration is a prerequisite to commencement of an action for copyright infringement.") (citing cases). Because it is undisputed that neither Larkin nor any of the other plaintiffs has received a certificate of registration in any of the subject photographs from the Copyright Office, this claim must be dismissed. [FN11]

FN11. The plaintiffs' sole citation from this Circuit in support of their claim is to a single footnote in *Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* 886 F.Supp. 1120 (S.D.N.Y.1995), which in turn cited a Fifth Circuit opinion in dicta for the proposition that receipt by the Copyright Office of a registration application (along with the required materials and fees) is sufficient to assert an infringement claim. *Id.* at 1125 n. 7 (citing *Apple Barrel Prods., Inc. v. Beard,* 730 F.2d 384, 386-87 (5th Cir.1984)). Even aside from the limited persuasiveness in any event of so attenuated a reference, the Fifth Circuit opinion appears to offer minimal precedential value, especially today. First, it is evident that the court in *Itar-Tass* found the registration requirement unnecessary only because the works for which the plaintiffs sought copyright protection in that case were "Berne Convention works under 17 U.S.C. § 101," 886 F.Supp. at 1126, works that are expressly exempted from the registration prerequisite under Section 411 of the Copyright Act, 17 U.S.C. § 411. Moreover, as Judge Kaplan of this Court has pointed out, the statement in *Apple Barrel* regarding the necessity of actual registration was based solely on "the then-current edition of *Nimmer* [,] ... yet that authoritative text now quite clearly indicates that registration is a precondition to the commencement of an infringement action except in limited circumstances that do not pertain to this case." *Robinson v. The Princeton Review Inc.,* 41 U.S.P.Q.2d 1008, 1015 (S.D.N.Y.1996) (citing 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B] (1996)). In short, the plaintiffs have offered no persuasive authority to sustain their claim.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

F. *Sanctions*

AP's motion for sanctions under Rule 11, Fed.R.Civ.P., is based on the following conduct of the plaintiffs: (i) their erroneous assertion in the original complaint that the individual plaintiffs had obtained actual registration with the Copyright Office for the photographs that they are the subject of their infringement claims against AP; and (ii) their contention that the legend on the checks at issue cannot transfer a copyright. On the latter point, AP argues that the law is settled that a copyright may be transferred by such a legend unless factual circumstances surrounding the transfer indicate otherwise.

**\*13** As noted, the plaintiffs amended their pleadings to remove any assertion of actual copyright registration, and they have made clear in opposing AP's motion for judgment on the pleadings that their legal theory regarding the check legends is that the legend in this case was ineffective to create a transfer of copyright because of the circumstances attendant to individual transfers. Indeed, in light of the amendment of their pleadings and subsequent arguments, the plaintiffs now contend that AP's Rule 11 motion was filed in bad faith, and they have accordingly cross-moved for Rule 11 sanctions against AP. Applying the safe harbor provision of Rule 11, I decline to impose sanctions pursuant to either motion.

## CONCLUSION

For the reasons set for above, AP's motion for judgment on the pleadings is granted and Counts One through Five of the Complaint are dismissed in their entirety. The cross-motions for sanctions are denied.

SO ORDERED.

1997 WL 759456, 1997 WL 759456 (S.D.N.Y.), 45 U.S.P.Q.2d 1321, 26 Media L. Rep. 1481

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

**Exhibit 5**

▷

United States District Court, S.D. New York.

John C. ("Jack") BOYLE, Plaintiff,
v.
STEPHENS, INC., Wells Fargo Bank, N.A., and
Wells Fargo Nikko Investment
Advisors, Defendants.

No. 97Civ.1351 (SAS).

Aug. 26, 1997.

Raymond J. Dowd, New York, N.Y., for Plaintiff.

Michael B. Carlinsky, Lara M. Krieger, Orrick,
Herrington & Sutcliffe, LLP, New York, N.Y., for
Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

*1 On May 27, 1997, plaintiff filed an Amended
Complaint alleging claims for violation of the
Copyright Act, 17 U.S.C. § § 106(1), 106(2) and
106(4), misappropriation of trade secrets, unjust
enrichment [FN1], breach of contract and fraudulent
concealment. On July 29, defendants moved to
dismiss these claims pursuant to Rule 12(b)(6) of the
Federal Rules of Civil Procedure. Plaintiff moved
for the award of costs and attorney's fees in his
Memorandum of Law in Opposition to Defendants'
Motion to Dismiss ("Plaintiff's Memo"). For the
reasons set forth below, defendants' motion is
partially granted and plaintiff's motion is denied.

> FN1. Although plaintiff's Fourth Cause of
> Action appears to state claims for both
> misappropriation of trade secrets and unjust
> enrichment, the parties' memoranda of law
> only discuss the former.

## I. Applicable Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, a
court must accept as true material facts alleged in the
complaint and draw all reasonable inferences in the
nonmovant's favor. See Kaluczky v. City of White
Plains, 57 F.3d 202, 206 (2d Cir.1995). Such a
motion cannot be granted simply because recovery
appears remote or unlikely on the face of a

complaint, because "[t]he issue is not whether a
plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the
claims." Bernheim v. Litt, 79 F.3d 318, 321 (2d
Cir.1996) (quoting Villager Pond, Inc. v. Town of
Darien, 56 F.3d 375, 378 (2d Cir.1995) (quoting
Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683,
40 L.Ed.2d 90 (1974))). Rather, dismissal can only be
granted if "it appears beyond doubt that the plaintiff
can prove no set of facts in support of his claim
which would entitle him to relief." Scheuer, 416 U.S.
at 236. In ruling on a motion to dismiss for failure to
state a claim, a court may consider documents and
exhibits upon which the complaint relies and which
are integral to the complaint without converting the
motion to one for summary judgment. See
International Audiotext Network, Inc. v. American
Tel. and Tel. Co., 62 F.3d 69, 71 (2d Cir.1995).

## II. Factual Background and Nature of Plaintiff's
Claims

The following factual allegations are drawn from the
Amended Complaint. Plaintiff is a financial
developer who resides in Edison, New Jersey.
Defendant Stephens, Inc. is an Arkansas investment
bank that underwrites, distributes and deals in mutual
funds throughout the United States. Defendant
Wells Fargo Bank, N.A., is a California bank that
similarly distributes mutual funds throughout the
United States. Defendant Wells Fargo Nikko
Investment Advisors is a California partnership. See
Amended Complaint ("Compl.") at ¶¶ 3, 5-7.

Plaintiff holds a copyright in an original work of
authorship describing in novel terms the architecture
and attributes of several new kinds of mutual funds.
See id. at ¶¶ 13-14. [FN2] Specifically, plaintiff's
copyrighted material describes the novel concept of
structuring a mutual fund by breaking down a large
pool of investments into different risk allocations,
thereby allowing the fund to be marketed to clients
based on their individual investment needs. In
describing this new idea, plaintiff imported the term
"series" (commonly used in the field of bonds but not
in the field of mutual funds) to denote a weighting
system within the fund's investment pool that would
provide a different risk allocation depending on each
client's investment needs. See id. at ¶¶ 17-27.
Plaintiff labeled his new concept as the "Moneyfor"
mutual fund.

> FN2. The Certificate of Copyright
> Registration was issued on May 8, 1989.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*See id.* at ¶ 13 and Ex. A. It is important to note that this registration certificate pertains only to the material attached to plaintiff's Amended Complaint at Exhibit C (the "Mailing"), and not to the materials attached to plaintiff's Amended Complaint at Exhibit E (the "Executive Summary").

**\*2** After an unsuccessful attempt to develop Moneyfor in connection with credit unions in April, 1989, plaintiff sent a letter in January, 1990, to money managers around the United States soliciting interest in his "Executive Summary" of Moneyfor. *See id.* at ¶ 34, and Ex. C (the "Mailing"). In response to this letter, a number of executives requested a copy of the Executive Summary. *See id.,* Ex. E (the "Executive Summary"). Plaintiff kept a list of those to whom he mailed a copy of the Executive Summary. *See id.* at ¶ 36-37 and Ex. D (contemporaneous list of persons responding to Mailing).

The first page of the Executive Summary bore the inscription "All rights reserved (R)1989, by Jack Boyle", and a copy of it was deposited with the Register of Copyrights. The Executive Summary was sent along with a cover letter that stated in pertinent part:

> MONEYFOR PLANS can be offered to a client on the basis of his needs/objectives, with a definitive maturity date, and no assistance to select product. The approach is to sell a mutual fund that will meet a need (retirement, education, house, vacation, return), expire on a given maturity date, and leave [sic.] the money manager select the product sector....
>
> Enclosed is a summary presentation for MONEYFOR RETIREMENT PLAN.... Since this is a proprietary presentation, it would be appreciated if you would return the plan if there is no current interest.

*See id.* at ¶ 39 and Ex. F.

On January 5, 1990, plaintiff sent a copy of the Executive Summary (along with the cover letter) to Warren A. Stephens, president of Stephens, Inc., who had received the Mailing and expressed interest in receiving additional materials regarding the Moneyfor fund. On January 11, 1990, plaintiff called Stephens, Inc. and spoke to R. Greg Feltus ("Feltus"), who identified himself as a Senior Vice President. Feltus indicated that he had read and "liked" the Executive Summary, and requested that plaintiff explain the Moneyfor concept in greater detail. Plaintiff did so, and also explained why the Moneyfor concept was wholly original in concept, structure, marketing techniques and terminology. *Id.* at ¶ ¶ 43, 50-61. *See also id.* at ¶ ¶ 62-69 (describing in greater detail the novel architecture of the Moneyfor mutual fund). During the course of their conversation, Feltus mentioned that he preferred "Lifestyle" to "Moneyfor" as a name for the new mutual fund concept. *See id.* at ¶ 56.

Feltus told plaintiff that he would discuss sponsorship of the Moneyfor fund with Wells Fargo. However, approximately one week later, Feltus informed plaintiff that Stephens, Inc. was not interested in developing the Moneyfor fund. Feltus did not return the copy of the Executive Summary. Despite further efforts, plaintiff was unable to develop and implement the Moneyfor fund concept. *See id.* at ¶ ¶ 76-86.

On March 1, 1994, defendants filed a prospectus describing "Stagecoach Lifepath Funds" (the "Lifepath Prospectus") with the Securities Exchange Commission ("SEC") and distributed it to the public. Feltus was listed as the Trustee, Chairman and President of the Stagecoach Lifepath mutual fund. Plaintiff now claims that defendants' Lifepath Prospectus constitutes a knowing and unlawful copying and publishing of plaintiff's expression of an asset allocation mutual fund tied to an investor's retirement goals that was set forth in the Executive Summary. *See id.* at ¶ ¶ 95-97. Plaintiff also claims defendants unlawfully misappropriated the structure of the Lifepath fund from his copyrighted materials, and failed to credit plaintiff with having developed that structure as an original work of authorship. *See id.* at ¶ 104-107.

**III. Discussion**

**A. Copyright Act Claims**

**1. Registration of Copyright Claim as Jurisdictional Prerequisite**

**\*3** District courts are without subject matter jurisdiction to hear claims for federal copyright infringement unless a plaintiff asserts in his pleadings that he has received an actual certificate of registration or its denial from the Copyright Office. *See Whimsicality, Inc. v. Rubie's Costume Co., Inc.,* 891 F.2d 452, 453 (2d Cir.1989); *Geritrex Corp. v. Dermarite Indus., LLC,* 910 F.Supp. 955, 966 (S.D.N.Y.1996); 17 U.S.C. § 411(a) (1992) (stating

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

in pertinent part "no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance of this title").

Plaintiff's Amended Complaint does not allege that the Executive Summary has been registered with the Copyright Office, and in fact plaintiff concedes in his memorandum of law that registration of those materials is still pending. See Plaintiff's Memo at 7 ("Plaintiff's materials in Exhibit E [the Executive Summary] ... have been deposited with the Register of Copyrights and registration is pending"). See also Compl. ¶ 38 (stating "The Executive Summary has been deposited with the Register of Copyrights"). Because plaintiff does not allege that he has received a certificate of registration for the Executive Summary or a denial of such a certificate, he has no viable copyright infringement claims with regard to those materials.

2. Failure to Allege Substantial Similarity

Plaintiff rests his copyright infringement claims almost entirely on the materials contained in the Executive Summary. See Compl. at ¶ ¶ 88, 91-92. 96- 97, 99. However, plaintiff also appears to claim that defendants have unlawfully copied the Mailing, for which the Register of Copyrights issued a copyright registration certificate on May 8, 1989. See Compl. at ¶ ¶ 13, 108- 116. I will therefore address the question of whether plaintiff's claims for copyright infringement of the Mailing [FN3] must be dismissed pursuant to Rule 12(b)(6).

> FN3. The Amended Complaint does not consistently indicate whether defendants' materials are alleged to infringe the Mailing or the Executive Summary. For the sake of analytic simplicity, I will address plaintiff's claims for copyright infringement as if both the Mailing and the Executive Summary had been registered with the Copyright Office.

To plead a viable claim for copyright infringement, a plaintiff must allege that (1) he owns a valid copyright, and (2) the defendant copied the original elements of the protected work. See Feist Publications, Inc. v. Rural Telephone Services Co., 499 U.S. 340, 360, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); Softel, Inc. v. Dragon Medical and Scientific Communications, Inc., 118 F.3d 955, 43 U.S.P.Q.2d 1385, 1997 WL 374511, at *6 (2d Cir. Jul.9, 1997).

The plaintiff may prove the second element either by direct evidence, or by demonstrating that defendant had access to the plaintiff's work and that the two works are "substantially similar" to the plaintiff's copyrighted material. See Softel, Inc., 118 F.3d 955, 1997 WL 374511, at *6; Twin Peaks Prods., Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1372 (2d Cir.1993). See generally 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright ("Nimmer ") § 13.01 (1997) (describing required elements in an infringement action). "A court may dismiss a copyright infringement claim [pursuant to Rule 12(b)(6)] if it concludes that no reasonable jury could find that the two works are substantially similar, or if it concludes that the similarities between the two works pertain only to unprotected elements of the plaintiff's work." Buckman v. Citicorp, No. 95 Civ. 0773, 1996 WL 34158 (S.D.N.Y. Jan.30, 1996) (citing Warner Bros., Inc. v. American Broadcasting Cos., 720 F.2d 231, 240 (2d Cir.1983)), aff'd without opinion, 101 F.3d 1393 (2d Cir.1996). See also Sweet v. City of Chicago, 953 F.Supp. 225, 229 (N.D.Ill.1996); Parham v. Pepsico, Inc., 927 F.Supp. 177, 179-180 (E.D.N.C.1995), aff'd without opinion, 86 F.3d 1151 (4th Cir.1996).

*4 It is fundamental that a copyright does not protect an idea, but only the original expression of that idea. See Williams v. Crichton, 84 F.3d 581, 587 (2d Cir.1996); 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery"). See generally 4 Nimmer § 13.03[B][2][a] (describing as basic principle of copyright law that ideas are not protected by copyright law). Thus, plaintiff cannot base a copyright infringement claim on the allegation that defendants misappropriated his idea for a new kind of mutual fund. Rather, he must allege that defendants copied his original manner of expressing that idea.

The Amended Complaint contains no such allegation. For the most part, plaintiff appears to claim that defendant "[p]lagiarized" the terms "Series", "Years", and the novel concept of "Investment Goals Based on Age of Retirement and All Other Distinctive Attributes of Moneyfor". See Compl. at ¶ 86. Plaintiff also alleges that defendant "plagiarized" the "Asset Allocation Mix/Combined With Increasingly Conservative Investor Goals From Plaintiff's Executive Summary", the "formula, structure and other attributes of Plaintiff's mutual fund", the " 'Series' Structure", and the Moneyfor "structure, strategy and attributes". See id. at ¶ ¶ 89,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

99, 103, 107.

As the case law cited above makes clear, plaintiff's allegation that defendants' materials plagiarized his novel Moneyfor concept does not provide a basis for a copyright infringement claim. Nor may plaintiff's claim rest on the allegation that defendants copied the structure or "architecture", attributes or strategy of the Moneyfor fund, for the copyright laws do not prevent defendants from appropriating plaintiff's ideas and using them for their own gain. Additionally, plaintiff cannot rest his claims on the mere duplication of individual words and short phrases such as "series", "years", or "life style", as such commonly-used terms cannot in themselves exhibit the minimal originality required for copyright protection. *See Arica Institute, Inc. v. Palmer, 970 F.2d 1067, 1072 (2d Cir.1992)* (citing *Salinger v. Random House, Inc., 811 F.2d 90, 98 (2d Cir.1987)*). *See also 37 C.F.R. § 202.1(a)* (prohibiting registration of "[w]ords and short phrases such as names, titles and slogans" for copyright protection). Because the Amended Complaint only alleges similarities between those elements of plaintiff's Mailing and Executive Summary and defendants' materials that are not protected by plaintiff's copyright, plaintiff has failed to state a viable claim for copyright infringement. Accordingly, defendants' motion to dismiss those claims pursuant to Rule 12(b)(6) is granted.

B. Misappropriation of Trade Secret Claim

To recover under New York law for the misappropriation of a trade secret, a plaintiff must show (1) that he possessed a trade secret, and (2) that the defendant used that trade secret in breach of an agreement, confidential relationship, or as a result of discovery by some improper means. *See Hudson Hotels Corp. v. Choice Hotels International, 995 F.2d 1173, 1176 (2d Cir.1993)*. It is well established that "the commonly accepted common law definition of a trade secret 'does not include a marketing concept or new product idea' submitted by one party to another'. *Id.* (citing 2 R. Milgrim, *Milgrim on Trade Secrets* § 8.03, at 8-31 (1992 & Supp.1992) (quoting *Richter v. Westab, Inc., 529 F.2d 896, 900 (6th Cir.1976)*). Furthermore, "a trade secret must first of all be used". *Ashland Management Inc. v. Janien, 82 N.Y.2d 395, 604 N.Y.S.2d 912, 918, 624 N.E.2d 1007 (1993); Hudson Hotels Corp., 995 F.2d at 1177* ("a trade secret must be used secretly and continuously in commerce").

*5 Plaintiff's Moneyfor concept was unquestionably either a new marketing technique or a new product concept. Indeed, plaintiff's Executive Summary describes Moneyfor as a "new product". *See Compl., Ex. E at 3.* As such, it cannot be considered a trade secret under New York law. Furthermore, having distributed an in-depth description of the Moneyfor concept throughout the United States, plaintiff can hardly argue that it has been kept "secret". For these reasons, plaintiff's claim for misappropriation of a trade secret must be dismissed pursuant to Rule 12(b)(6).

C. Breach of Contract Claim

Plaintiff's Fifth Cause of Action alleged that the Executive Summary was "offered" to defendants in exchange for the terms of compensation contained therein, that Feltus accepted plaintiff's offer on behalf of defendants, and that a binding contract was thereby formed between the parties. *See Compl. ¶ ¶ 124-125.* This claim fails for several reasons. First, plaintiff neglects to specifically allege what language in the Mailing constituted an offer to form a binding contract. The Amended Complaint does indicate that the Executive Summary "had provisions whereby Plaintiff would receive compensation upon creation of the Moneyfor fund", and that "Plaintiff would receive $500,000 to set up the Moneyfor company". *See Compl. at ¶ ¶ 47-48* (citing Executive Summary at 21). Yet plaintiff alleges that he fully performed his contractual obligations by delivering the Executive Summary to Feltus, and it therefore follows that that document cannot be the source of plaintiff's offer. *See id. at ¶ 126.*

Plaintiff's breach of contract claims faces additional difficulties. For example, the Amended Complaint does not indicate in any way how Feltus "accepted" that alleged offer. Additionally, it is impossible to infer from plaintiff's allegations how Feltus could have "accepted" that offer on the behalf of defendants other than his employer (Stephens, Inc.). Because plaintiff has alleged no facts that support his claim that a binding contract was formed between plaintiff and defendants, his claim for breach of contract must be dismissed pursuant to Rule 12(b)(6).

D. Fraudulent Concealment Claim

Under New York law, "nondisclosure is tantamount to an affirmative misrepresentation where a party to a transaction is duty-bound to disclose certain pertinent information." *Callahan v. Callahan, 127 A.D.2d 298, 514 N.Y.S.2d 819, 821 (3d Dep't 1987).* To establish a claim for failure to disclose material

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

information, a plaintiff must show (1) plaintiff and defendant were party to a contract; (2) defendant had superior knowledge of material facts; (2) that knowledge was not available to plaintiff; (3) defendant failed to disclose that knowledge to plaintiff; (4) scienter; (5) that plaintiff was justifiably deceived by that failure to disclose; and that (6) plaintiff was damaged as a result of the failure to disclose. *See Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 45-46 (2d Cir.1991); Callahan, 514 N.Y.S.2d at 821; Young v. Keith, 112 A.D.2d 625, 492 N.Y.S.2d 489, 490-91 (3d Dep't 1985).*

*6 Plaintiff's claim for fraudulent concealment rests on the allegations that Feltus deliberately concealed his position as president of a mutual fund, and that but for such concealment "Plaintiff would not have revealed the confidential information contained in the Moneyfor Executive summary". This claim cannot survive for several reasons. As discussed above, plaintiff has failed adequately to allege that he entered into a contract with defendants. Plaintiff has also failed to allege that information regarding Feltus' position as president of another mutual fund was not available to him through normal means of investigation. Plaintiff also concedes that he sent the Executive Summary to Stephens, Inc.--which he claims explained the Moneyfor concept in detail--before speaking with Feltus. *See* Compl. at ¶ 37, 41-43. Finally, plaintiff never alleges that he asked Feltus whether he was affiliated with another mutual fund.

Plaintiff argues that "Feltus, given his conflict of interests with Wells Fargo, the traditions and customs of the financial industry, the higher duties imposed upon Broker Dealers--could not have ethically responded to the invitation extended by Boyle." *See* Plaintiff's Memo at 15 (punctuation in original). That may well be. Yet the law does not prohibit all unethical conduct, and plaintiff has not alleged facts sufficient to establish a prima facie case of fraudulent concealment. This claim must be dismissed pursuant to Rule 12(b)(6).

E. Unjust Enrichment Claim

Plaintiff's Fourth Cause of Action claims that "Feltus and defendants have been unjustly enriched in the amount Defendants have profited from the use of Plaintiff's Executive Summary". This allegation, construed in accordance with the liberal standards of the Federal Rules of Civil Procedure, pleads a claim sounding in quantum meruit or quasi-contract. As

this Court has explained, "[a]n action in quantum meruit is an action to recover for services rendered or goods provided in the absence of a contract." *GSGSB, Inc. v. New York Yankees*, No. 91 Civ. 1803, 1995 WL 507246 (S.D.N.Y.1995). Under New York law, "[r]ecovery under this theory rests on a narrow exception to the rule that a party may not expect compensation for a benefit conferred gratuitously upon another." *Umscheid v. Simnacher*, 106 A.D.2d 380, 482 N.Y.S.2d 295, 298 (2d Dep't 1984) (quotation omitted). *See also Bradkin v. Leverton*, 26 N.Y.2d 192, 309 N.Y.S.2d 192, 195, 257 N.E.2d 643 (1970) ("[A] quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved. The law creates it, regardless of the intention of the parties, to assure a just and equitable result.") (citations omitted).

Defendants appear to have interpreted plaintiff's Fourth Cause of Action as merely setting forth a claim for misappropriation of trade secrets, and have not briefed the issue of whether plaintiff's claim for unjust enrichment (or, as it should properly be titled, quantum meruit or quasi-contract) should be dismissed pursuant to Rule 12(b)(6). As plaintiff's memorandum of law is also silent as to this issue, I will not determine at this juncture whether plaintiff's Amended Complaint sets forth a viable claim for quantum meruit or quasi-contract under New York law.

F. Leave to Amend

*7 Rule 15(a) of the Federal Rules of Civil Procedure provides that the court should grant leave to amend "freely ... when justice so requires." The Second Circuit has noted that "[w]hen a motion to dismiss is granted, 'the usual practice is to grant leave to amend the complaint.' ... Although the decision whether to grant leave to amend is within the discretion of the district court, refusal to grant leave to amend must be based on a valid ground." *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir.1991) (quoting *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir.1990) (quotations omitted)). Where the possibility exists that the defect can be cured, leave to amend at least once should normally be granted unless doing so would prejudice the defendant. *See Oliver Schools, Inc.*, 930 F.2d at 253.

From the allegations set forth in the Amended Complaint, it does not appear likely that plaintiff can plead a viable claim for copyright infringement,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

misappropriation of trade secrets, fraudulent concealment, or breach of contract. However, plaintiff claims that registration of the Executive Summary is pending, *see* Plaintiff's Memo at 7, and it is conceivable that plaintiff can allege that defendants' materials copied protected elements of the Mailing and the Executive Summary. Similarly, it is theoretically possible that plaintiff could allege facts sufficient to plead a viable claim for breach of contract. The copyright claims and the breach of contract claim are therefore dismissed with leave to amend. However, if plaintiff determines that he is unable to plead claims "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law", he should not do so. *See* Fed.R.Civ.P. 11(b). Furthermore, all factual allegations set forth in plaintiff's pleadings must have evidentiary support or be likely to have such after "a reasonable opportunity for further investigation or discovery". *Id.*

Because plaintiff has conceded facts in the Amended Complaint that are fatal to his claims for misappropriation of trade secrets and fraudulent concealment, it is beyond argument that those claims cannot be cured by an amendment of the pleadings. For example, plaintiff cannot now allege that the Executive Summary was kept "secret", that the Mailing or Executive Summary describe something other than a new product or marketing concept, or that the Executive Summary was sent to Feltus *after* plaintiff spoke with him. These claims are therefore dismissed with prejudice.

In any event, plaintiff should submit a Second Amended Complaint that more specifically pleads a claim sounding in quantum meruit or quasi-contract if indeed that was his intention. Furthermore, if plaintiff does not plead any claims that raise a federal question, he must plead facts sufficient to establish diversity jurisdiction.

### IV. Plaintiff's Motion for Sanctions

*8 Plaintiff, stridently contending that defendants' motion to dismiss is "utterly" frivolous and that defendants' counsel has submitted "bloated briefs based on falsehoods", moves for the award of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See* Plaintiff's Memo at 4, 16. As an initial matter, I note that the 1993 amendment to Rule 11 provides that a motion for sanctions must be made separately from other motions and served on the opposing party, and shall not be filed with the court "unless within 21 days after service of the motion, the challenged paper, claim, defense, contention, allegation or denial is not withdrawn or appropriately corrected." Fed.R.Civ.P. 11(c)(A)(1). *See also Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1327-28 (2d Cir.1995). As plaintiff has failed to meet these procedural requirements, his motion for sanctions cannot be granted.

Furthermore, I reject plaintiff's arguments to the extent that they contend that defendants have misrepresented the underlying facts of this case. First, as explained in Part I of this Opinion and Order, I have assumed that each of plaintiff's factual contentions set forth in the Amended Complaint represent the truth for purposes of deciding defendants' motion to dismiss. Accordingly, the version of the facts argued in defendants' legal memoranda is irrelevant to my decision of their motion, and should not be the subject of controversy at this stage. Additionally, to the extent that plaintiff's motion for sanctions rests on the premise that defendants' legal arguments are so frivolous as to warrant sanctions, it must be denied. Defendants' legal position has demonstrated itself to be entirely sound. For each of these reasons, plaintiff's motion for sanctions is denied with prejudice.

### V. Conclusion

For the reasons set forth above, plaintiff's claims for copyright infringement and breach of contract, are dismissed with leave to amend. Plaintiff's claims for misappropriation of trade secrets and fraudulent concealment are dismissed with prejudice. As plaintiff's claim for unjust enrichment (more properly titled a claim for quantum meruit or quasi-contract) was not addressed by the parties, I decline to reach the issue of whether it must be dismissed pursuant to Rule 12(b)(6) at this time. Plaintiff's motion for sanctions is denied with prejudice.

Plaintiff's Second Amended Complaint must be submitted by September 25, 1997. Any motions or responsive pleading must be served by October 24, 1997.

SO ORDERED.

1997 WL 529006, 1997 WL 529006 (S.D.N.Y.), 1998 Copr.L.Dec. P 27,762, 44 U.S.P.Q.2d 1138

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

**Exhibit 6**

▷

United States District Court, N.D. California.

BRUSH CREEK MEDIA, INC., Plaintiff,
v.
Jack BOUJAKLIAN, et al., Defendants.

No. C-02-3491 EDL.

Aug. 19, 2002.

Proprietor brought state action against competitor alleging interference with prospective economic advantage, conversion, injunctive relief, accounting, and false designation of origin, unfair competition, and misappropriation. Competitor removed action to federal court. On copyright holder's motion to remand, the District Court, Laporte, United States Magistrate Judge, held that: (1) plain language of statute governing registration and infringement actions precluded institution of copyright infringement action while copyright application was merely pending, and (2) district court did not have jurisdiction over lawsuit.

Motion granted.

West Headnotes

[1] Copyrights and Intellectual Property ☞75.5
99k75.5 Most Cited Cases

Plain language of statute governing registration and infringement actions precluded institution of copyright infringement action while copyright application was merely pending, even though that result was inefficient, since application for copyright registration did not constitute registration. 17 U.S.C.A. § 411(a).

[2] Removal of Cases ☞25(1)
334k25(1) Most Cited Cases

[2] States ☞18.15
360k18.15 Most Cited Cases

[2] States ☞18.84
360k18.84 Most Cited Cases

[2] Torts ☞10(3)
379k10(3) Most Cited Cases

[2] Trade Regulation ☞864
382k864 Most Cited Cases

[2] Trover and Conversion ☞13
389k13 Most Cited Cases

District court did not have jurisdiction over removed lawsuit claiming interference with prospective economic advantage, conversion, injunctive relief, accounting, and false designation of origin, unfair competition, and misappropriation under California law, even though competitor anticipated using copyright defenses; proprietor's claims were not preempted since each claim required extra element in place of, or in addition to, claims under Copyright Act which focused on reproduction of work. 17 U.S.C.A. § 411(a).

ORDER REMANDING CASE

LAPORTE, Magistrate J.

INTRODUCTION

*1 Plaintiff Brush Creek Media commenced this action in San Francisco Superior Court on June 28, 2002, alleging five state law claims: (1) interference with prospective economic advantage; (2) conversion; (3) injunctive relief; (4) accounting and (5) false designation of origin, unfair competition and misappropriation. Plaintiff's fifth state law claim, including an allegation of interference with intellectual property rights by copying, appeared to sound in copyright, which would have conferred jurisdiction on this Court. On July 22, 2002, Defendants removed the action. On July 26, 2002, Plaintiff moved to enforce a preliminary injunction issued by the state court and Defendants moved to vacate or modify the injunction.

On August 1, 2002, the Court held a hearing on the parties' motions. In addition to argument by counsel, the Court heard testimony from three witnesses. The main focus of the hearing was this Court's jurisdiction. Plaintiff informed the Court that he intended to file a First Amended Complaint eliminating the state law claim sounding in copyright. He did so on August 2, 2002. On August 5, 2002, without leave of court or stipulation of the parties, Plaintiff submitted a Second Amended Complaint. The parties submitted further briefing as ordered by the Court on August 7 and August 9, 2002. The Court held a second hearing on August 13, 2002, which also focused on the Court's jurisdiction. Upon consideration of the parties' oral arguments and their

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

submissions, good cause appearing, and for the reasons set forth below, the Court remands this case for lack of subject matter jurisdiction.

BACKGROUND FACTS

Plaintiff is a California corporation in the business of selling adult gay pornographic movies and magazines. Plaintiff's president and sole owner is Bear Dog Hoffman. Defendant Jack Boujaklian is Hoffman's former domestic partner and former business partner, who now operates Defendant Panther Entertainment. Defendant Pacific Sun Entertainment is also a California corporation that manufactures and distributes adult gay pornographic films.

On April 22, 2002, Hoffman and Boujaklian entered into an agreement under which Boujaklian would be the Chief Operating Officer and Hoffman would be the Chief Executive Officer of Brush Creek Media. Subsequently, Boujaklian allegedly stole over 300 master video tapes from Plaintiff's office. Plaintiff owned the master tapes and videos made from those tapes. Declaration of Bear Dog Hoffman in Support of Motion to Enforce Preliminary Injunction ¶¶ 4-5.

Boujaklian entered into licensing agreements for the videos with Defendant Pacific Sun on May 2-3, 2002. Declaration of Motti Green in Support of Motion to Vacate or Modify Preliminary Injunction ¶¶ 3, 6, 9; Exs. A, B, C. In each of the agreements, it appears that Boujaklian purported to act on behalf of several entities, including Plaintiff. Pacific Sun had conducted business with Hoffman, Boujaklian and Brush Creek for approximately seven years and believed, at the time it executed the licensing agreements, that Boujaklian had authority to enter into contracts for Brush Creek. *Id.* ¶ 2. Payments under these licensing agreements were made primarily to Boujaklian individually, however, rather than to Brush Creek Media. At the hearing on August 1, 2002, Boujaklian admitted that he used at least some of the money to make payments on a house. On May 8, 2002, Hoffman terminated Boujaklian's employment.

*2 Brush Creek obtained a Temporary Restraining Order in state court on June 28, 2002 that prohibited Defendants from "producing, manufacturing, selling marketing or transferring the master tapes or the rights to those tapes to any party." Declaration of Robert Crowe in Support of Defendant Pacific Sun's Motion to Vacate or Modify Preliminary Injunction Ex. A. Later, on July 19, 2002, Plaintiff secured a

preliminary injunction during a state court hearing. The preliminary injunction restrained Defendants Boujaklian and Pacific Sun from "manufacturing, selling or marketing the master tapes or from marketing or selling DVDs that are copies of the master tapes." Transcript of July 19, 2002 Hearing at 8:15-18. Defendants were also required to return the master tapes to Plaintiff. *Id.* at 8:19.

On August 2, 2002, Plaintiff sent copyright registration materials for certain master tapes to the Copyright Office. According to Plaintiff, the Copyright Office received those materials on August 5, 2002. Based on the filing of copyright registration materials, Plaintiff included a claim for copyright infringement in his First Amended Complaint.

DISCUSSION

Pursuant to 17 U.S.C. § 411(a), "no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title." The question of whether a plaintiff can bring a copyright infringement claim under 17 U.S.C. § 411(a) after the Copyright Office receives an application for copyright registration, but before it issues a certificate of registration, is unsettled.

Several courts, as well as the authors of the leading treatise on copyright, have concluded that a pending registration application is sufficient to confer federal jurisdiction over a copyright infringement claim. *See Apple Barrel Prods., Inc. v. R.D. Beard, 730 F.2d 384 (5th Cir.1984)* (finding that to bring a copyright infringement suit, a plaintiff need not prove possession of a certificate, but need only prove payment of the fee, deposit of the work in question and receipt by the Copyright Office of the application); *see also Geoscan, Inc. of Texas v. Geotrace Techs., Inc., 226 F.3d 387, 393 (5th Cir.2000); Sefton v. Jew, 201 F.Supp.2d 730, 747, n. 13 (W.D.Tex.2001); Sefton v. Webbworld, Inc., 2001 WL 896933, *2, n. 2 (N.D.Tex.); Gable- Leigh, Inc. v. North Am. Miss, 2001 WL 521695, *4 (C.D.Cal.2001); Lennon v. Seaman, 84 F.Supp.2d 522, 523 (S.D.N.Y.2000); Dielsi v. Falk, 916 F.Supp. 985, 994, n. 6 (C.D.Cal.1996); Tang v. Hwang, 799 F.Supp. 499, 502-03 (E.D.Pa.1992); Secure Servs. Tech., Inc. v. Time & Space Processing, Inc., 722 F.Supp. 1354, 1364 (E.D.Va.1989);* 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright,* § 7.16[B][1][a] at 7-155 (citing *Apple Barrel Prods., Inc. v. R.D. Beard, 730 F.2d 384 (5th Cir.1984); International Kitchen Exhaust Cleaning Ass'n v.*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*Power Washers of North Am.*, 81 F.Supp.2d 70, 72 & n. 17 (D.D.C.2000); *Sebastian Int'l, Inc. v. Consumer Contact Ltd.*, 664 F.Supp. 909, 912 (D.N.J.1987); *Wilson v. Mr. Tee's*, 855 F.Supp. 679, 682-83 (D.N.J.1994)). Other courts have concluded instead that a certificate of copyright registration from the Copyright Office is a prerequisite to bringing a copyright infringement claim. *See Oyster Software, Inc. v. Forms Processing, Inc.*, 2001 WL 1736382, *10-11 (N.D.Cal.); *Goebel v. Manis*, 39 F.Supp.2d 1318, 1319 (D.Kan.1999) (preferring the *Apple Barrel* approach, but holding that a certificate is required based on the plain language of the statute); *Ryan v. Carl Corp.*, 1998 WL 320817, *2-3 (N.D.Cal.).

*3 In *Ryan v. Carl Corp.*, 1998 WL 320817, *2 (N.D.Cal.), Judge Fern Smith, recognizing the absence of controlling or consistent case law on this issue, examined the language of the Copyright Act. *Ryan* held that the plain language of the Act compelled the conclusion that a plaintiff cannot maintain an infringement action until the Copyright Office issues a certificate of registration. *See also Oyster Software, Inc. v. Forms Processing, Inc.*, 2001 WL 1736382, *10-11 (N.D.Cal.) (following *Ryan* and finding a lack of subject matter jurisdiction where the plaintiff did not allege in its complaint that it possessed a certificate of copyright registration). Judge Smith specifically found that *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106 (9th Cir.1970) did not control the issue, because *Roth* construed the 1909 Copyright Act and did not govern interpretation of the current Copyright Act. *See Roth*, 429 F.2d at 1108-09 (interpreting the language of the 1909 Copyright Act, which differed from the current Act by providing that no infringement action "shall be maintained" until the applicant has "complied with" the requirements to deposit copies of the work and registration materials, to find that the plaintiff could maintain a copyright action where the plaintiff had deposited the requisite forms and fees in the mail on the same day as it filed the complaint, and where the registration date related back to earlier materials sent to the Copyright Office prior to filing the complaint.)

Section 410(a) of the Copyright Act states that the Register of Copyrights shall register a claim and issue a certificate "when, *after examination,* [the Register of Copyrights] determines that ... the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met." 17 U.S.C. § 410(a) (emphasis added). Judge Smith found that this

section cut against automatic registration because it indicated that the Copyright Office, not the copyright applicant, must register the copyright after examination. *Ryan*, 1998 WL 320817, *2. Further, although the Copyright Act states that the "effective date of a copyright registration is the day on which an application, deposit, and fee, which are determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received" (17 U.S.C. § 410(d)), Judge Smith interpreted this provision to mean not that an application is considered registered while it is being examined by the Copyright Office, but instead that once an application has been considered and accepted by the Copyright Office, the registration is backdated to the time the application is received. *Ryan*, 1998 WL 320817, * 2. Finally, Judge Smith determined that 17 U.S.C. § 408(a), which states that an applicant can obtain registration by delivering the application materials to the Copyright Office, did not supersede the requirement from 17 U.S.C. § 410(a) that examination is a prerequisite to registration. *Id.*

*4 In concluding that the plain language of the Copyright Act precluded an infringement action while a copyright application is pending, Judge Smith recognized that "construing the statute this way leads to an inefficient and peculiar result." *Ryan*, 1998 WL 320817 at *2. Even so, where Congress' intent is clear, as in the case of the Copyright Act, the court did not feel free "to redraft statutes to make them more sensible or just." *Id.*

[1] Here, the Court reluctantly agrees with *Ryan* that the plain language of the statute precludes institution of an infringement action while a copyright application is merely pending, even though the Court shares *Ryan'* s view that this result is inefficient. Under the plain language of the Act, application for copyright registration does not constitute registration. Indeed, examination of the Copyright Act reveals further support for the view that the Copyright Office's examination of the material sought to be copyrighted and determination whether to issue a certificate of registration is a prerequisite to bringing an infringement action. In 1976, Congress amended the Act to provide that:
[i]n any case, however, where the deposit, application and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

17 U.S.C. § 411(a). If "registration" is complete upon receipt of the application materials by the Copyright Office, then an application that would later be rejected by the Copyright Office could support an infringement action prior to receiving a certificate or denial thereof and without satisfying the condition that Congress included for bringing actions upon rejection, that is, to give notice to the Copyright Office. Interpreting the Act to require a certificate prior to bringing an infringement action gives effect to the requirements for bringing a claim upon rejection of the copyright application contained in 17 U.S.C. § 411(a).

Although the *Apple Barrel* line of cases is more appealing from an efficiency standpoint, the plain language of the statute forecloses copyright suits while a copyright application is pending and before a certificate of registration issues (or is denied). Therefore, Plaintiff here cannot maintain his copyright infringement claim at this time because Plaintiff does not yet have a certificate of registration of copyright. As granting leave to file Plaintiff's proposed Second Amended Complaint would be futile until the Copyright Office acts on the application and issue or denies registration, the Court cannot allow filing of the Second Amended Complaint.

[2] The question remains whether the Court has jurisdiction over Plaintiff's state law claims based on preemption under the Copyright Act. An action arises under the Copyright Act "if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for statutory royalties for record reproduction ... or asserts a claim requiring construction of the Act, ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim." *Topolos v. Caldewey,* 698 F.2d 991, 993 (9th Cir.1983) (quoting *T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 828 (2d Cir.1964) *cert. denied* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965)). Specifically,

*5 If that claim involves copyright infringement or other matter directly related to the interpretation and enforcement of the Copyright Act, jurisdiction has been upheld. On the other hand, where it has been determined that the claim is essentially for some common law or state-created right, most generally for a naked declaration of ownership or contractual rights, jurisdiction has been declined, even though the claim might incidentally involve a copyright or the Copyright Act.

*Topolos,* 698 F.2d at 993 (quoting *Royalty Control Corp. v. Sanco, Inc.,* 175 U.S.P.Q. 641, 642 (N.D.Cal.1972)); *see also Vestron, Inc. v. Home Box Office Inc.,* 839 F.2d 1380 (9th Cir.1988); *Firoozye v. Earthlink Network,* 153 F.Supp.2d 1115, 1125 (N.D.Cal.2001). The plaintiff's complaint is dispositive of the issue; anticipated defenses such as the plaintiff's lack of copyright ownership do not defeat jurisdiction. *Vestron,* 839 F.2d at 1381.

In *Firoozye,* a case of first impression in this Circuit, Judge Charles Breyer followed *Rosciszewski v. Arete Assocs., Inc.,* 1 F.3d 225 (4th Cir.1993) to hold that state law claims that are equivalent to federal copyright claims are completely preempted by the Copyright Act. He stated,

Accordingly, if any of the plaintiff's claims are preempted under the Copyright Act, those preempted claims must be viewed as involving federal questions for the purpose of the well-pleaded complaint rule. This Court would then possess subject matter jurisdiction over the entire complaint, thereby requiring the Court to deny the plaintiff's motion to remand. On the other hand, if none of the plaintiff's claims is preempted, the face of the plaintiff's well-pleaded complaint would not arise under federal law and this Court would not have jurisdiction, compelling remand to state court. *Firoozye,* 153 F.Supp.2d at 1123. A plaintiff's state law cause of action is preempted under the Copyright Act if. "(1) the work involved falls within the general subject matter of the Copyright Act ...; and (2) the rights that the plaintiff asserts under state law are equivalent to those protected by the Act...." *Firoozye,* 153 F.Supp.2d at 1123-24. To determine whether the rights asserted are equivalent to those protected by the Act, Judge Breyer enunciated the following extra-element test:

... a court must analyze the elements of the state-law cause of action to see if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights in the Act. Conversely, if there is an 'extra element' that is required in place of or in addition to the acts of reproduction, performance, distribution, or display in order to constitute a state-law cause of action, and the 'extra element' required by state law changes the nature of the action so that it is qualitatively different from a copyright infringement claim, the state-law claim is not preempted.

*6 *Firoozye,* 153 F.Supp.2d at 1125.

Here, Plaintiff alleges state law claims for Receipt of Embezzled Property, Interference with Prospective

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Economic Advantage and Conversion. None of these are preempted under *Vestron* or even under the complete preemption approach of *Firooyze.* Each claim requires an extra element in place of or in addition to claims under the Copyright Act, which focuses on reproduction of a work. Specifically, the first claim requires the extra element of receipt of embezzled property. The second claim requires the extra element of interference, in this case by allegedly improperly licensing the rights to the videos. The third claim, conversion, involves the extra element of alleged theft of a work as to Boujaklian and of falsifying documents as to Pacific Sun. Indeed, in *Firooyze,* Judge Breyer noted that a conversion claim that involves tangible property is probably immune from preemption. Because these claims are not preempted, the Court does not have jurisdiction over them.

Plaintiff's remaining "claims" for injunctive relief and an accounting are not really claims, but types of remedies. These remedies are not per se preempted by the Copyright Act and appear to be potential remedies for the remaining state law claims. For example, the conversion claim could well support an injunction requiring returnofstolen property and accounting of profits from its illicit use while stolen. Defendants raise the legitimate question whether one particular aspect of the state court preliminary injunction--the provision enjoining copying--is a remedy preempted by the Copyright Act. That question, however, is more properly addressed to the state court on remand, since this Court has determined that it lacks jurisdiction over the state claims. This Court declines Defendant's request that it edit the state court injunction.

CONCLUSION

Because Plaintiff cannot maintain a copyright infringement claim at this time and the remaining state law claims are not preempted, the Court lacks jurisdiction. Therefore, this case must be remanded.

The Court is mindful of Pacific Sun's concern about the propriety of the portion of the injunction issued by the state court prohibiting reproduction of the tapes. The issue of the scope of the injunction in light of the amended complaint, however, is more properly directed to the state court.

IT IS SO ORDERED.

2002 WL 1906620 (N.D.Cal.), 2002 Copr.L.Dec. P 28,499

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

**Exhibit 7**

☞
Only the Westlaw citation is currently available.

United States District Court, N.D. California.

Joan RYAN, et al., Plaintiffs,
v.
CARL CORP., et al., Defendants.

No. C 97-3873 FMS.

June 15, 1998.

ORDER GRANTING MOTION TO DISMISS
PLAINTIFF RYAN AND SIMILARLY SITUATED
PUTATIVE
CLASS MEMBERS

SMITH, J.

*1 In 1991, plaintiff Joan Ryan published an original article, "Making Headlines," in the magazine "Women's Sports and Fitness." Alleging that defendant UnCover Corporation had copied and sold the article without prior permission, she and several other named plaintiffs filed this class action lawsuit on October 22, 1997. Ryan did not file a copyright application for the article until the day after she filed the complaint. On March 18, 1998, plaintiffs filed an amended complaint, which reflected that Ryan's application had been filed but that the Copyright Office has neither issued a certificate of registration nor refused registration.

On April 7, 1998, defendants moved to dismiss Ryan on the ground that the lack of a valid copyright certificate deprives the Court of jurisdiction over her claim. The day before the May 15, 1998 hearing, plaintiffs submitted the Copyright Office circular, "Copyright Basics," as additional evidence supporting their position. The Court requested additional briefing on the effect of circular. Before the final brief was submitted, plaintiff Ryan received her certificate registration from the Copyright Office.

Defendants' motion raises a single legal issue: Can a plaintiff bring a copyright suit while her application is pending before the Copyright Office? Section 411 of the Copyright Act states that "no action for infringement shall be instituted" until either the copyright claim has been registered or registration has been refused. 17 U.S.C. § 411(a). The parties dispute whether a work is registered as soon as the

application, fee, and deposit are sent to the Copyright Office, or not until the Copyright Office issues a certificate of registration.

The parties have cited no binding case law resolving this question. The only case from the Ninth Circuit to address a similar issue, _Roth Greeting Cards v. United Card Co., 429 F.2d 1106 (9th Cir.1970)_, does not control the outcome here. In that case, the Ninth Circuit construed the 1909 Copyright Act, which provided that "no action for infringement of copyright 'shall be maintained' until the provisions of Title 17 of the United States Code with respect to the deposit of copies and registration of such work 'shall have been complied with." ' _Id. at 1108_ (quoting former 17 U.S.C. § 13). The court held that the plaintiff could proceed with the lawsuit even though the copyright application had been filed after the original complaint but before an amended pleading. In reaching this holding, the court assumed without deciding that a pending application was sufficient to confer jurisdiction. The 1909 version of the Copyright Act, however, contained different language regarding the registration requirement; specifically, it had no provision analogous to section 410(a) of the Copyright Act of 1976, a section that, as discussed below, indicates that suit may not be brought while an application is pending. _Roth_ therefore does not govern the interpretation of the present Copyright Act.

*2 Courts in this district have split on the issue. In _Ashlar Inc. v. Structural Dynamics Research Corp., 36 U.S.P.Q.2d 1402, 1405 (N.D.Cal.1995)_ (Orrick, J.), the court dismissed the complaint because no copyright application had been filed before the relevant claim was brought. The court went on to state in dictum that copyright lawsuits may not be brought while an application is pending with the Copyright Office. By contrast, in _Tabra Inc. v. Treasures de Paradise Designs Inc., 20 U.S.P.Q.2d 1313 (N.D.Cal.1992)_ (Patel, J.), the court allowed the plaintiff to add a copyright claim while the copyright application was pending before the Copyright Office. _Id. at 1318._ "A registration is obtained when the owner of a copyright delivers to the Copyright Office its application, fee and deposit. Once this has been done, an infringement action may be instituted." _Id._ Neither court explained its reasoning in any detail. Courts from outside the district have likewise reached conflicting results. _See, e.g., Lakedreams v. Taylor, 932 F.2d 1103, 1108 (5th Cir.1991)_ (allowing suit where plaintiff's copyright application pending); _Robinson v. Princeton Review, Inc., 41 U.S.P.Q.2d 1008, 1014-17 (S.D.N.Y.1996)_ (dismissing complaint in part because Copyright Office had not yet acted on

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

applications). In the absence of controlling or consistent case law, the Court turns to the text of the statute.

A close reading of the Act indicates that registration does not occur until after the Copyright Office issues a certificate of registration. The Act states that the Register of Copyrights shall register a claim and issue a certificate "[w]hen, after examination, [she] determines that ... the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met." 17 U.S.C. § 410(a). Because it indicates that the Copyright Office, not the applicant, registers a claim, and that examination is a prerequisite to registration, the section cuts against plaintiffs' position of automatic registration.

The provisions of the Copyright Act cited by plaintiffs do not compel a different reading. Plaintiffs first cite a section of the Act that states the "effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received." 17 U.S.C. § 410(d). Contrary to plaintiffs' contention, this section does not mean that an application is considered registered while the Copyright Office is deciding whether or not to accept it; instead, it means that once an application has been considered and accepted by the Office, the registration is backdated to the time the application was received. This backdating is significant because certain remedies are available to a plaintiff only of the infringement occurred after the effective date of the registration. See 17 U.S.C. § 412.

*3 Plaintiffs also cite a section of the Act that states that an applicant may "obtain registration of the copyright claim by delivering to the Copyright Office" the application, fee, and deposit. 17 U.S.C. § 408(a). In light of the statement in section 410(a) that examination is a prerequisite to registration, however, section 408(a) must be read to mean merely that the delivery of the application is a step the applicant must take, not that delivery is sufficient by itself to obtain a registration. Because the Court believes that the statute unambiguously forecloses copyright suits while a copyright application is pending, it need not consider the circular. See Almaro v. INS, 18 F.3d 757, 763 (9th Cir.1994) (citing Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)) (court should not consider agency interpretation of statute unless it is unable to determine Congressional intent using "traditional

tools of statutory construction").

The Court recognizes that construing the statute this way leads to an inefficient and peculiar result. Plaintiffs argue that it is a traditional principles of statutory interpretation that "[l]egislative enactments should never be construed as establishing statutory schemes that are illogical, unjust, or capricious." Bechtel Const. v. United Bhd. of Carpenters & Joiners of America, 812 F.2d 1220, 1225 (9th Cir.1989). Plaintiffs read this principle too broadly. Even if Congress were to enact an illogical or ill-advised law, where Congress' intent is clear, the Court is not free to redraft statutes to make them more sensible or just.

For these reasons, the Court GRANTS the motion to dismiss with respect to plaintiff Ryan and to similarly situated putative class members whose copyright applications were still pending before the Copyright Office when the amended complaint was filed on March 18, 1998. At the time it hears the motion for class certification, the Court will also hear argument on whether it should permit plaintiffs to file a second amended complaint to include plaintiffs, such as Ryan, whose applications have been approved as of that date. The Court will not allow further amendments for that purpose after that date.

SO ORDERED.

1998 WL 320817, 1998 WL 320817 (N.D.Cal.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

**Exhibit 8**



Please visit our sponsor.

# Dragonflies

**Go to:** <u>Insects</u>

## Contents

<u>Page 01</u>    <u>Page 05</u>
<u>Page 02</u>    <u>Page 06</u>
<u>Page 03</u>    <u>Page 07</u>
<u>Page 04</u>    <u>Page 08</u>

### <u>Conditions of Use</u>

Permission is granted for limited personal use of up to twenty (20) images from *ALL* collections. *ALL* commercial or institutional use requires <u>licensure</u>.

Redistribution of any image found at this web site in any format is strictly prohibited.

In place November 2, 2002

All images <u>copyright</u> © 1994 - 2003 Randy D. Ralph, Christopher E. Ralph.

Visit our online store for great gift ideas!



Case 1:02-cv-01022-NCT    Document 14    Filed 07/10/03    Page 59 of 69



# Dragonflies



**Important: If the link above is flashing, you have been selected as a Winner!  Claim Here**

Please visit our sponsor.

## Dragonflies

Go to:  Insects

### Contents

Page 01    Page 05
Page 02    Page 06
Page 03    Page 07
Page 04    Page 08

### Conditions of Use

Permission is granted for limited personal use of up to twenty (20) images from *ALL* collections.  *ALL* commercial or institutional use requires licensure.

Redistribution of any image found at this web site in any format is strictly prohibited.

In place November 2, 2002

All images copyright © 1994 - 2003 Randy D. Ralph, Christopher E. Ralph.

Visit our online store for great gift ideas!

UP    BACK          NEXT

Light backgrounds     Medium Backgrounds     Dark Backgrounds

drgnfly04_1a.gif      drgnfly04_1b.gif      drgnfly04_1c.gif

drgnfly04_2a.gif      drgnfly04_2b.gif      drgnfly04_2c.gif

drgnfly05_1a.gif      drgnfly05_1b.gif      drgnfly05_1c.gif

drgnfly05_2a.gif      drgnfly05_2b.gif      drgnfly05_2c.gif

drgnfly06_1a.gif      drgnfly06_1b.gif      drgnfly06_1c.gif

drgnfly06_2a.gif      drgnfly06_2b.gif      drgnfly06_2c.gif

UP    BACK          NEXT



# Dragonflies

WINNER

**Important: If the link above is flashing, you have been selected as a Winner!** Claim Here

Please visit our sponsor.



Dragonflies                                    Go to: Insects

### Contents

Page 01   Page 05
Page 02   Page 06
Page 03   Page 07
Page 04   Page 08

### Conditions of Use

Permission is granted for limited personal use of up to twenty (20) images from *ALL* collections. *ALL* commercial or institutional use requires licensure.

Redistribution of any image found at this web site in any format is strictly prohibited.

In place November 2, 2002

All images copyright © 1994 - 2003 Randy D. Ralph, Christopher E. Ralph.

Visit our online store for great gift ideas!

Light Backgrounds   Medium Backgrounds   Dark Backgrounds

drgnfly07_1a.gif   drgnfly07_1b.gif   drgnfly07_1c.gif

drgnfly07_2a.gif   drgnfly07_2b.gif   drgnfly07_2c.gif

drgnfly08_1a.gif   drgnfly08_1b.gif   drgnfly08_1c.gif

drgnfly08_2a.gif   drgnfly08_2b.gif   drgnfly08_2c.gif

drgnfly09_1a.gif   drgnfly09_1b.gif   drgnfly09_1c.gif

drgnfly09_2a.gif   drgnfly09_2b.gif   drgnfly09_2c.gif



# Dragonflies

If there was a **magic button**, ♦
What would <u>YOU</u> get? <u>YOU</u> better pressed it?

Please visit our sponsor.





# Dragonflies

Is the challenge of improving your golf swing and score

Please visit our sponsor.



## Dragonflies

Go to: **Insects**

### Contents

Page 01    Page 05
Page 02    Page 06
Page 03    Page 07
Page 04    Page 08

**Conditions of Use**

Permission is granted for limited personal use of up to twenty (20) images from *ALL* collections. *ALL* commercial or institutional use requires licensure.

Redistribution of any image found at this web site in any format is strictly prohibited.

In place November 2, 2002

All images copyright © 1994 - 2003 Randy D. Ralph, Christopher E. Ralph.

Visit our online store for great gift ideas!

UP    BACK    NEXT

Light Backgrounds    Medium Backgrounds    Dark Backgrounds

drgnfly13_1a.gif    drgnfly13_1b.gif    drgnfly13_1c.gif

drgnfly13_2a.gif    drgnfly13_2b.gif    drgnfly13_2c.gif

drgnfly14_1a.gif    drgnfly14_1b.gif    drgnfly14_1c.gif

drgnfly14_2a.gif    drgnfly14_2b.gif    drgnfly14_2c.gif

drgnfly15_1a.gif    drgnfly15_1b.gif    drgnfly15_1c.gif

drgnfly15_2a.gif    drgnfly15_2b.gif    drgnfly15_2c.gif

UP    BACK    NEXT



# IconBAZAAR    Dragonflies

Is the challenge of improving your golf swing and score

Please visit our sponsor.



**Dragonflies**      Go to: **Insects**

### Contents

| | |
|---|---|
| **Page 01** | **Page 05** |
| **Page 02** | **Page 06** |
| **Page 03** | **Page 07** |
| **Page 04** | **Page 08** |

#### Conditions of Use

Permission is granted for limited personal use of up to twenty (20) images from *ALL* collections. *ALL* commercial or institutional use requires licensure.

Redistribution of any image found at this web site in any format is strictly prohibited.

In place November 2, 2002

All images copyright © 1994 - 2003 Randy D. Ralph, Christopher E .Ralph.

Visit our online store for great gift ideas!

UP   BACK     NEXT

Light Backgrounds    Medium Backgrounds    Dark Backgrounds

drgnfly16_1a.gif    drgnfly16_1b.gif    drgnfly16_1c.gif

drgnfly16_2a.gif    drgnfly16_2b.gif    drgnfly16_2c.gif

drgnfly17_1a.gif    drgnfly17_1b.gif    drgnfly17_1c.gif

drgnfly17_2a.gif    drgnfly17_2b.gif    drgnfly17_2c.gif

drgnfly18_1a.gif    drgnfly18_1b.gif    drgnfly18_1c.gif

drgnfly18_2a.gif    drgnfly18_2b.gif    drgnfly18_2c.gif

5/1/2003 4:27 PM

UP    BACK                 NEXT

# IconBAZAAR — Dragonflies


Interest Rates won't stay this **low** forever... Refinance Now!
click to apply
Mortgage Select.com

Please visit our sponsor.

## Dragonflies

Go to: Insects

### Contents

Page 01   Page 05
Page 02   Page 06
Page 03   Page 07
Page 04   Page 08

### Conditions of Use

Permission is granted for limited personal use of up to twenty (20) images from *ALL* collections. *ALL* commercial or institutional use requires licensure.

Redistribution of any image found at this web site in any format is strictly prohibited.

In place November 2, 2002

All images copyright © 1994 - 2003 Randy D. Ralph, Christopher E. Ralph.

Visit our online store for great gift ideas!



UP   BACK   NEXT

Light Backgrounds   Medium Backgrounds   Dark Backgrounds

drgnfly19_1a.gif   drgnfly19_1b.gif   drgnfly19_1c.gif

drgnfly19_2a.gif   drgnfly19_2b.gif   drgnfly19_2c.gif

drgnfly20_1a.gif   drgnfly20_1b.gif   drgnfly20_1c.gif

drgnfly20_2a.gif   drgnfly20_2b.gif   drgnfly20_2c.gif

drgnfly21_1a.gif   drgnfly21_1b.gif   drgnfly21_1c.gif

drgnfly21_2a.gif   drgnfly21_2b.gif   drgnfly21_2c.gif





<h1 align="center">Certificate of Service</h1>

The undersigned, of the law firm Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., hereby certifies that s/he has caused a copy of the foregoing **AOL's Brief in Support of Motion to Dismiss First Amended Complaint** to be placed in the U.S. Mail, first-class postage prepaid, addressed as follows:

> Scott K. Tippett
> House & Tippett, PLLC
> 3325 Healy Drive
> Winston-Salem, North Carolina 27103

This the _10th_ day of July, 2003.

Jennifer K. Van Zant