16.

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
No. 1:02CV01022



2003 AUG -6 P 4: 55

FILED
U.S. DISTRICT COURT
GREENSBORO, NC

| | | |
|---|---|---|
| ICONBAZAAR, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **PLAINTIFF'S BRIEF IN OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTION TO DISMISS** |
| AMERICA ONLINE, INC., | ) | **PLAINTIFF'S FIRST AMENDED** |
| | ) | **COMPLAINT** |
| Defendant, | ) | |

COMES NOW the Plaintiff, Iconbazaar, LLC ("IB"), by and through its undersigned counsel,

and hereby submits this brief in opposition to the Defendant's Motion to Dismiss Plaintiff's First

Amended Complaint..

## Background

Iconbazaar, LLC ("IB") is a small North Carolina limited liability company that is engaged

in the business of creating and licensing computer graphic images known as icons. One of

Iconbazaar's principals, Christopher Ralph, creates the majority of the icons used by Iconbazaar.

Mr. Ralph assigned the exclusive right to use and license the images to IB. He also assigned the

right to bring any claim for infringement to IB. A true and correct copy of the assignment is attached

hereto as Exhibit A. America Online, Inc. ("AOL") is one of the world's largest internet service

providers ("ISP"). Beginning in late 1999, AOL began using one of IB's images created by Mr.

Ralph without IB's or Mr. Ralph's permission. A copy of the dragonfly image is attached hereto as

Exhibit B.

## Argument

Although neither IB nor Mr. Ralph have received the registration certificate back from the Copyright Office, the work has been registered. On November 21, 2002, prior to the commencement of this suit, Mr. Ralph registered the image DRGFLY02.GIF with the Registrar of Copyrights, Library of Congress. Due to security issues that have arisen following the events of September 11, 2001 and the transmission of anthrax through the United States Postal Service, the Registrar of Copyrights has adopted certain security precautions regarding the handling of incoming mail, including copyright applications. Since the fall of 2001, all copyright applications are received off-site for security purposes. Once the articles are cleared for security purposes, the applications are transmitted to the Registrar of Copyright for processing.

These heightened security precautions have created substantial delays in the processing of copyright applications, including the entry of the copyright information into the Registrar of Copyrights internet accessible database referred to in the Defendant's Motion. For the Court's convenience, a copy of the notice from the Registrar of Copyright's website is attached hereto as Exhibit C. As seen in the letter from Mr. Sylvester Simpkins, Copyright Area Specialist, Registrar of Copyrights, a copy of which is attached hereto as Exhibit 1 to the affidavit of plaintiff's counsel, which affidavit is attached hereto as Exhibit D, the registration application was received off-site on November 21, 2002, and is currently being processed by the Registrar of Copyrights. According to Mr. Simpkins' letter, the process will not be complete until August 2003, but the registration will be given a registration date of November 21, 2002. The Registrar of Copyrights cashed the check tendered with the application and deposit materials. A true and correct copy of the canceled check is attached as Exhibit 2 to the affidavit of plaintiff's counsel, which is attached hereto as Exhibit D.

There is no dispute that the Registrar of Copyrights received the application, deposit materials, and fee on November 21, 2003. As the letter from Mr. Simpkins, Copyright Area Specialist, shows, but for the processing delays attendant to the heightened security precautions following the transmission of anthrax through the United States mail, the plaintiff would have already received a certificate of registration. Where the Registrar of Copyrights has received a completed application, the deposit materials, and the appropriate filing fee, the claimant has complied with the statutory formalities necessary to maintain an action for infringement. See Lakedreams v. Taylor, 932 F.2d 1103 (5th Cir. 1991). A copy of the Lakedream decision is attached hereto as Exhibit F for the Court's convenience.

Contrary to the Defendant's brief, IB is the proper party to this action. Subsequent to the registration, Mr. Ralph assigned IB the exclusive right to use the image and bring any action regarding any past, present or future infringement of the image, including any claims for infringement that occurred prior to the date of the assignment. IB is a proper and necessary party to this action. See Godinger Silver Art Co., Ltd. v. International Silver Co.; 37 U.S.P.Q.2d 1453 (S.D.N.Y. 1995) assignee proper party even when copyright assignment executed after commencement of suit when assignment included right to sue for past, present, and future infringments (a copy of the Godinger decision is attached hereto as Exhibit E for the Court's convenience); Infodek, Inc. v. Merdith Webb Printing Co., 830 F. Supp. 614 (N.D.Ga. 1993).

While the First Amended Complaint may not be as artfully drawn as some, it does give the Defendant notice of the claim asserted against it. Further, where as here the Plaintiff has complied with the registration requirement prior to filing suit, it would be inequitable to dismiss the Plaintiff's suit because it cannot produce a certificate of registration through no fault of its own.

Turning to the Defendant's motion regarding the state law claim for unfair and deceptive trade practices, the First Amended and Restated Complaint alleges that Defendant, with full knowledge that it had no license or permission to use the dragonfly image, nevertheless distributed millions of copies of the image, which is sufficient to state a claim under N.C.G.S. § 75-1.

## Conclusion

For the foregoing reason, Defendant's Motion to Dismiss should be denied.

Respectfully submitted this the 6th day of August, 2003.

Scott K. Tippett
Counsel for Plaintiff
North Carolina State Bar No.: 22488

Of Counsel:
House & Tippett, PLLC
3325 Healy Drive
Winston-Salem, NC 27103
Ph: (336) 768-2225

## ASSIGNMENT OF COPYRIGHT

For and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Christopher E. Ralph (hereinafter referred to as "Seller") hereby irrevocably sells, grants, conveys, assigns and sets over to Iconbazaar, LLC, a North Carolina limited liability company (hereinafter referred to as "Purchaser"), and its successors and assigns, all of Seller's right, title and interest in and to the computer graphic image known as DRGFLY02.GIF or the dragonfly image. To all of the assets, properties, receivables, contracts and rights thereto, including without limitation, any and all copyrights and any renewals and extensions thereof, now in the United States or any other country or countries, and all actions and causes-of action related to the foregoing and all damages, profits, penalties and other recoveries related thereto, whether for past, present or future infringement.

The undersigned have executed this agreement the 22nd day of November, 2002.

SELLER

Christopher E. Ralph

PURCHASER

Iconbazaar, LLC
By:
Its: GENERAL MANAGER, PARTNER

EXHIBIT

A





EXHIBIT

B



# Delivery of Mail to U.S. Copyright Office

For security reasons, all U.S. Postal Service and private carrier mail is being screened off-site prior to arrival at the Copyright Office. Please be aware that this screening process can add 3 to 5 days to the delivery time for all mail to the Copyright Office.

In addition, please note that U.S. Postal Service mail delivery to the Copyright Office was suspended between October 17, 2001, and March 4, 2002, due to concerns about anthrax. This held mail was delivered in mid-2002 and has now been processed by the Copyright Office. However, as a result of clearing this backlog of held mail, the processing of subsequent mail has been delayed. We are working to process this mail as quickly as possible (Read about interim regulations on mail disruption.)

If you are submitting a Special Handling request, please use the special-handling address listed in Circular 10.

## Submission of Works for Mandatory Deposit

If you received a mandatory notice from the Copyright Acquisitions Division requiring deposit within 90 days of receipt of the notice, please note that delays in the mail will be taken into account in enforcing the 90-day requirement.

Copyright Office Home - Library of Congress Home

Contact Us
02-May-2003





## Interim Regulations on Mail Delivery Disruption

The Copyright Office has adopted <u>interim regulations</u> addressing the effect of the disruption or suspension of postal services to the Copyright Office. The Register of Copyrights has issued a <u>declaration</u> that there has been a disruption of mail beginning on October 18, 2001. When the disruption has ended, the Register will publish another determination to that effect.

The fact that the mail has been disrupted means that the date of receipt of materials in the Office may be later than it ordinarily would have been. The date the Office receives mail is important, because it determines the effective date of registration of claims to copyright, as well as the date of recordation for transfers, assignments, and other documents. Persons who believe they have been adversely affected by the disruption may wish to follow the procedures outlined in the regulation.

Under the regulation, it is possible to submit evidence that will permit the assignment of an earlier date of receipt of mail in the Office than the actual date received, so long as the Office has actually received the material within 1 month after the disruption or suspension has ended.

### When to Make a Request

For **copyright registration materials,** requests must be made no later than 1 year **after** the claimant has received a certificate of registration. Requests should not be made before the certificate is issued. See the <u>regulation</u> for exceptions to this rule.

For **transfers of copyrights or other documents submitted for recordation,** there is no requirement to wait for a certificate of recordation. In fact, the Office encourages persons seeking adjustment of the date of receipt of a document to submit requests as soon as possible. Requests must be made no later than 1 year after the date of receipt of the certificate of recordation.

### What Evidence to Submit

The regulations require that the person making the request must submit a receipt from the U.S. Postal Service or a delivery service such as UPS, Federal Express, Airborne Express, etc. The receipt should indicate when the Postal Service or other service received the material and sufficient information to determine when the Postal Service or delivery service would have delivered the material to the Copyright Office under ordinary circumstances. During this period of postal disruption, persons submitting material to the Office by means of the U.S. Postal Service should consider obtaining a receipt showing the date on which the material addressed to the Office was deposited with the Postal Service.

The Office will accept other documentary evidence that it considers equivalent to such receipts. It also will accept sworn statements from persons with personal knowledge of the facts relating to the attempt to deliver the material to the Office.

For **More Detail** see the <u>regulation</u>.

Case 1:02-cv-01022-NCT   Document 16   Filed 08/06/03   Page 8 of 36

The Library of Congress

12-Dec-2002

[Federal Register: December 4, 2001 (Volume 66, Number 233)]
[Rules and Regulations]
[Page 62942-62945]
-----------------------------------------------------------------------

LIBRARY OF CONGRESS

Copyright Office

37 CFR Part 201

[Docket No. RM2001-7]


Disruption or Suspension of Postal or Other Transportation or
Communications Services


AGENCY: Copyright Office.


ACTION: Interim regulations; Request for comments.

-----------------------------------------------------------------------

SUMMARY: The Copyright Office is adopting interim regulations to
address the effect of a general disruption or suspension of postal or
other transportation or communications services on the Office's receipt
of deposits, applications, fees, or any other materials, and the
assignment of a date of receipt to such materials. When the Register of
Copyrights has published a determination that there has been a general
disruption or suspension of such services, persons who have sent
materials to the Office and believe the Office's receipt of those
materials has been delayed may submit evidence that the materials would
have been received in the Office by a particular date but for the
disruption or suspension. The Office may assign, as the date of
receipt, the date on which the materials would have been received but
for the disruption or suspension.


DATES: The effective date of the interim regulations is December 4,
2001. Comments should be submitted no later than January 3, 2002.


ADDRESSES: An original and 10 copies of comments and reply comments
should be mailed to: Office of the General Counsel, Copyright GC/I&R,
P.O. Box 70400, Southwest Station, Washington, D.C. 20024-0400. If
delivered by hand, copies should be brought to: Office of the Copyright
General Counsel, Room LM-403, James Madison Memorial Building, 101
Independence Avenue, SE., Washington, DC.

FOR FURTHER INFORMATION CONTACT: David O. Carson, General Counsel, or
Patricia Sinn, Senior Attorney, Office of the General Counsel,
Copyright GC/I&R, P.O. Box 70400, Southwest Station, Washington, D.C.
20024-0400. Telephone: (202) 707-8380. Telefax: (202) 707-8366.

SUPPLEMENTARY INFORMATION: Section 709 of title 17, United States Code
provides that:

    In any case in which the Register of Copyrights determines, on

the basis of such evidence as the Register may by regulation
require, that a deposit, application, fee, or any other material to
be delivered to the Copyright Office by a particular date, would
have been received in the Copyright Office in due time except for a
general disruption or suspension of postal or other transportation
or communications services, the actual receipt of such material in
the Copyright Office within one month after the date on which the
Register determines that the disruption or suspension of such
services has terminated, shall be considered timely.

    In cases of disruptions or suspensions of postal, transportation or
communications services, section 709 permits the Register to assign, as
the date of receipt for deposits, applications, fees and other
materials submitted to the Office, the date on which the materials
would have been received but for the disruption or suspension, so long
as the Office has actually received the material within one month after
the disruption or suspension has ended.
    The Office has not promulgated any regulations relating to
determination of the appropriate date of receipt of materials when a
general disruption or suspension of postal or other transportation or
communications services has taken place. Until now, the Office has
perceived no need for such regulations. However, recent events have,
unfortunately, demonstrated that such regulations are necessary.
Concerns about anthrax in United States Postal Service facilities in
the District of Columbia have caused severe disruptions of postal
service to the Office since October 17.
    Today the Register of Copyrights is publishing a separate notice
declaring that commencing on October 18, there has been a general
disruption of postal services to the Library of Congress. The Library
continues to experience disruptions in its postal service. The Register
shall publish another notice when she determines that the disruption of
services has ceased.
    The Office has already received one request to assign a date of
receipt for a copyright registration application that was delayed due
to the disruption of postal services, and it is anticipated that
additional requests will be made. In order expeditiously to permit the
application of section 709 to materials submitted during the current
period of disruption of services, the Office is announcing interim
regulations to govern such requests and the Office's determination of
the date of receipt.
    Assigning a date of receipt based on the date materials would have
been received but for the disruption is important in a number of
contexts. The effective date of registration of a copyright is the date
the application, fees and deposit are received by the Copyright Office.
17 U.S.C. 410(d). That date can affect the copyright owner's rights and
remedies, such as eligibility for statutory damages and attorney's
fees. See 17 U.S.C. 412 (statutory damages and attorney's fees
available only for works with effective date of registration prior to
commencement of infringement or, for published works, within three
months of first publication of the work). The date of recordation of a
document can be crucial in determining priorities among conflicting
transfers. See 17 U.S.C. 205, 37 CFR 201.9(c) (date of recordation is
the date when all elements required for recordation, including the
prescribed fee, have been received in the Copyright

[[Page 62943]]

Office). The date of recordation of a notice of termination of a grant
of a transfer or license can be crucial in determining whether the
termination is effective. See 17 U.S.C. 304(c)(4)(b) (notice of

termination must be recorded in the Copyright Office before the effective date of termination), 37 CFR 201.10({f}(3) (date of recordation of notice of termination is the date when all of the elements required for recordation have been received in the Copyright Office).

Under section 201.8(a) of the interim regulations, when the Register determines that there has been a general disruption or suspension of postal or other transportation or communications services that has delayed the receipt by the Copyright Office of deposits, applications, fees, or any other materials, the Register shall publish an announcement to that effect. When the state of disruption or suspension of such services has ceased, the Register shall publish an announcement to that effect.

Section 201.8(b) provides that persons who have submitted material to the Office, the receipt of which has been delayed due to the suspension or disruption of services, may request that the Register assign, as the date of receipt of the material, the date on which the Register determines the material would have been received but for the disruption or suspension of services. Section 201.8(f) states where such requests should be sent.

Section 201.8(c) sets forth when a request may be submitted. Requests pertaining to applications for copyright registration must be made no later than one year after the claimant has received a certificate of registration. Such requests ordinarily will not be permitted until after the claimant has received a certificate of registration. Exceptions are made for cases in which the Office is communicating with a claimant about the application for other reasons, or other cases in which the Register finds there is good cause to consider a request prior to issuance of the certificate. In general, permitting the submission of requests prior to issuance of the certificate would impose unacceptable burdens on the Office due to difficulties in locating the particular pending applications to which the requests pertain. But when the Office has already communicated with the claimant in connection with an application, and the claimant is responding to the communication from the Office, the claimant may submit the request because there should be no difficulty in locating the application which is the subject of the communication.

Requests relating to transfers of copyright or other documents submitted for recordation must also be made no later than one year after the person seeking recordation has received a certificate of recordation, but there is no requirement to wait until after the certificate has issued. In fact, because it is easier for the Documents Recordation Section of the Cataloging Division to correct the date of recordation prior to recording the document, persons seeking adjustment of the date of receipt of a document submitted for recordation are encouraged to submit requests as soon as possible.

Requests pertaining to any other material submitted to the Copyright Office must be made no later than one year after the date the material is received by the Office.

Section 201.8(d) provides that when a certificate of registration or a certificate of recordation has already been issued, the original certificate must be returned to the Office along with the request. If the request is granted, the Office will issue a new certificate with the revised effective date of registration or date of recordation. If the request is not granted, the original certificate will be returned.

Section 201.8(e) provides that as evidence that the material would have been received on that date, the person making the request must submit a receipt from the United States Postal Service or a delivery service such as, or comparable to, United Parcel Service, Federal Express, or Airborne Express, indicating how and when the material was

Case 1:02-cv-01022-NCT   Document 16   Filed 08/06/03   Page 12 of 36

received by the Postal Service or delivery service, and indicating
sufficient information to determine when the Postal Service or delivery
service would have delivered the material to the Copyright Office but
for the disruption or suspension of services. The Office will also
accept other documentary evidence that it considers equivalent to such
receipts, and it will accept sworn statements from persons with
personal knowledge of the facts relating to the attempt to deliver the
material to the Office.

    Section 201.8(f) provides for certain presumptions as to when
material deposited with the United States Postal Service or a delivery
service would have been received but for the disruption or suspension
of services.

Effective Date

    Because of the unanticipated nature of the recent disruption in
services and the necessity of providing a mechanism that will
immediately permit the Copyright Office to adjust the date of receipt
of materials in appropriate circumstances due to that disruption, the
Register finds that there is good cause for the interim regulations to
take effect immediately.

Request for Comments

    The Office solicits comments from the public on these interim
regulations. Comments are due 30 days from the date these regulations
are published. The Office will consider these comments in preparing
final regulations.

    The Office also solicits comments concerning a related issue. The
Office was closed for business from October 18 through October 24,
2001, because of concerns about possible anthrax contamination in the
Library of Congress. During this period, the Office could not receive
any applications, fees, deposits or other materials, whether by mail,
courier or any other means of delivery. Because the Office's inability
to receive materials during this time period was due to the closure of
the Library of Congress, and not due to a general disruption or
suspension of postal or other transportation or communications
services, it does not appear that section 709 provides any authority
for the Register to assign a date of receipt during that period for any
materials that would have been received by the Office on a day during
that period but for the closure of the Library. Thus, a person who
attempted to deliver an application for copyright registration to the
Office in person on October 22 would not be able to seek an effective
date of registration of October 22, because the Office was not open on
that date.

    Section 410(c) of 17 U.S.C. provides that ``[t]he effective date of
a copyright registration is the day on which an application, deposit,
and fee, which are later determined by the Register of Copyrights or by
a court of competent jurisdiction to be acceptable for registration,
have all been received in the Copyright Office.'' (Emphasis added). The
only exception to the requirement that the effective date of
registration be the date of actual receipt is set forth in section 709,
which does not address the unanticipated closure of the Office.

    Moreover, a person who deposited an application addressed to the
Office with an overnight delivery service on October 17, with an
expected date of receipt in the Office of October 18, would not be able
to seek an effective date of registration on October 18 because section
709 only permits the Register to assign as a date of receipt the date
on which the material ``would have been received in the Copyright
Office in due time except for a general disruption or suspension of

postal or other

[[Page 62944]]

transportation or communications services.'' (Emphasis added.) In this
case, the reason the Office did not receive the application on October
18 was not a general disruption or suspension of postal or other
transportation or communications services; it was the closure of the
building that houses the Office. Thus, the earliest date of receipt
that the Office could assign to the application would be October 25,
the next date on which the Office was open.
    The Office would like to be able to offer relief to persons who
were unable to deliver materials to the Office due to unanticipated
closure of the Office during normal business hours, but we are aware of
no authority that permits us to grant such relief. We welcome any
comments providing citations to and analysis of authority that would
permit the Office to issue regulations governing such a situation
notwithstanding the express language of 17 U.S.C. 410(c).

List of Subjects in 37 CFR Part 201

    Communications, Copyright, Postal service.

Interim Regulations

    In consideration of the foregoing, the Register of Copyrights
amends part 201 of 37 CFR on an interim basis as follows:

PART 201--GENERAL PROVISIONS

    1. The authority citation for part 201 continues to read as
follows:

    Authority: 17 U.S.C. 702.

    2. Section 201.8 is added to read as follows:


Sec. 201.8  Disruption of postal or other transportation or
communication services.

    (a) For purposes of 17 U.S.C. 709, when the Register has determined
that there is or has been a general disruption or suspension of postal
or other transportation or communications services that has delayed the
receipt by the Copyright Office of deposits, applications, fees, or any
other materials, the Register shall publish an announcement of that
determination, stating the date on which the disruption or suspension
commenced. The announcement may, if appropriate, limit the means of
delivery that are subject to relief pursuant to section 709. Following
the cessation of the disruption or suspension of services, the Register
shall publish an announcement stating the date on which the disruption
or suspension has terminated.
    (b) At the request of any person who provides satisfactory evidence
that he or she has attempted to deliver a deposit, application, fee or
other material to the Copyright Office but that receipt by the
Copyright Office was delayed due to a general disruption or suspension
of postal or other transportation or communications services, the
Register shall assign, as the date of receipt of the deposit,
application, fee or other material, the date on which the Register
determines the material would have been received but for the disruption

or suspension of services, if the deposit, application, fee or other
material was actually received in the Copyright Office within one month
after the disruption or suspension of services has terminated.

  (c) Timing. The request shall be made:

  (1) With respect to an application for copyright registration, no
earlier than the date on which the claimant receives the certificate of
registration and no later than one year after the date on which the
claimant receives the certificate of registration; provided, however,
that a request may be made prior to receipt of a certificate of
registration--

  (i) If the Copyright Office has communicated with the claimant
relating to the application and the claimant makes the request as part
of a response to the communication from the Office; or

  (ii) If the Register determines that good cause exists to entertain
a request prior to the issuance of a certificate of registration;

  (2) With respect to a transfer of copyright ownership or other
document submitted for recordation pursuant to 17 U.S.C. 205, no later
than one year after the date on which the person submitting the
transfer or document receives the certificate of recordation;

  (3) With respect to any other material, no later than one year
after the date on which the material was actually received in the
Copyright Office.

  (d) In cases in which a certificate or registration or a
certificate of recordation has already been issued, the original
certificate must be returned to the Copyright Office along with the
request.

  (e) For purposes of paragraph (b) of this section, satisfactory
evidence shall consist of:

  (1) A receipt from the United States Postal Service indicating the
date on which the United States Postal Service received material for
delivery to the Copyright Office by means of first class mail, Priority
Mail or Express Mail;

  (2) A receipt from a delivery service such as, or comparable to,
United Parcel Service, Federal Express, or Airborne Express, indicating
the date on which the delivery service received material for delivery
to the Copyright Office and

  (i) The date on which delivery was to be made to the Copyright
Office, or

  (ii) The period of time (e.g., overnight, or 2 days) from receipt
by the delivery service to the date on which delivery was to be made to
the Copyright Office;

  (3) Other documentary evidence which the Register deems equivalent
to the evidence set forth in paragraphs (e)(1) and (2) of this section;
or

  (4) A sworn statement from a person with actual knowledge of the
facts relating to the attempt to deliver the material to the Copyright
Office, setting forth with particularity facts which satisfy the
Register that in the absence of the general disruption or suspension of
postal or other transportation or communications services, the material
would have been received by the Copyright Office by a particular date.

  (f) For purposes of paragraph (b) of this section, the Register
shall presume that but for the general disruption or suspension of
postal or other transportation or communications services,

  (i) Materials deposited with the United States Postal Service for
delivery by means of first class mail would have been received in the
Copyright Office seven days after deposit with the United States Postal
Service;

  (ii) Materials deposited with the United States Postal Service for
delivery by means of Priority mail would have been received in the
Copyright Office three days after deposit with the United States Postal

Case 1:02-cv-01022-NCT   Document 16   Filed 08/06/03   Page 15 of 36

Service;
    (iii) Materials deposited with the United States Postal Service for
delivery by means of Express mail would have been received in the
Copyright Office one day after deposit with the United States Postal
Service;
    (iv) Materials deposited with a delivery service such as, or
comparable to, United Parcel Service, Federal Express, or Airborne
Express, would have been received in the Copyright Office on the date
indicated on the receipt from the delivery service.
    (g) Requests pursuant to paragraph (b) of this section shall be
addressed to: Chief, Copyright Office Receiving & Processing Division,
Copyright Office, and if delivered by hand they should be brought to
the Copyright Office Public Information Office, Library of Congress,
James Madison Memorial Building, Room 401, First and Independence
Avenue, SE., Washington, DC. If mailed, the request should be addressed
to Chief, Receiving & Processing Division, P.O. Box 71380, Washington,
DC 20024-1380.


[[Page 62945]]


    Dated: November 26, 2001.
Marybeth Peters,
Register of Copyrights.
    Approved by:
James H. Billington,
Librarian of Congress.
[FR Doc. 01-30013 Filed 12-3-01; 8:45 am]
BILLING CODE 1410-30-P

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

ICONBAZAAR, LLC.,　　　　　　　　）
　　　　　　　　　　　　　　　　）
　　　　Plaintiff,　　　　　　　　）
　　　　　　　　　　　　　　　　）　　　Civil Action No. 1:02CV01022
vs.　　　　　　　　　　　　　　　）　　　Affidavit of Scott K. Tippett
　　　　　　　　　　　　　　　　）　　　Counsel for the Plaintiff
AMERICA ONLINE, INC.,　　　　　　）
　　　　　　　　　　　　　　　　）
　　　　Defendant,　　　　　　　　）
　　　　　　　　　　　　　　　　）

Personally appeared before the undersigned officer authorized to administer oaths, Scott K. Tippett, who, after being duly sworn, does depose and state as follows:

1.　　　I, Scott K. Tippett, counsel for the Plaintiff in the above stated action, am an individual over the age of eighteen. I suffer no disabilities that would affect or impair my ability to give this testimony.

2.　　　These statements and testimony contained herein are made from my own firsthand knowledge.

3.　　　Attached hereto as Exhibit 1 is a true and correct copy of a letter from Sylvester Simpkins, Area Specialist, Copyright Office, Library of Congress which I received from Mr. Simpkins regarding the status of the copyright application and the effective date of the copyright registration at issue in this case.

4.　　　Attached hereto as Exhibit 2 is a true and certified copy of the canceled check drawn on my firm's account, showing the check for the copyright application was cashed by the Registrar of Copyrights has cleared the bank upon which such check was drawn.

Further Affiant sayeth not, this the 6th day of August, 2003.

_____
Scott K. Tippett

EXHIBIT
D

-1-

Sworn to and subscribed before me
this the _6th_ day of _August_ , 2003.

_Beth L Hawkins_
Notary Public

My Commission Expires: _3-10-2007_
Notarial Seal:

OFFICIAL SEAL
Notary Public, North Carolina
COUNTY OF FORSYTH
BETH L. HAWKINS
My Commission Expires _____

-2-



June 18, 2003

HOUSE & TIPPETT, PLLC
3325 HEALY DRIVE
WINSTON-SALEM  NC  27103

**Re:  DRGFLY02.GIF**

Dear Mr. Tippett:

     This is in response to your recent inquiry regarding copyright registration for the above work. This claim was submitted by House Law Firm, PLLC on behalf of the claimant Christopher E. Ralph.

     According to our records, the work entitled "DRGFLY02.GIF", was received in Library of Congress postal facilities on November 21, 2002, and it was placed into process on March 8, 2003. Please allow 5-6 months from the date your work was placed into process to receive your copyright certificate. Once processed, the claim will have November 21, 2002 as the effective date of registration. Attached is a copy of the application for registration.

     **Please note:** Following anthrax contamination of postal mail in October 2001, all postal deliveries including special mode mail (i.e., private carriers, express deliveries, etc.) is diverted to screen for contamination. This has caused many of our deliveries to be received out of date order. While we are making every attempt to process deliveries in post mark date order, there are still a number of delays in processing.

     We sincerely regret any inconvenience these delays may cause. We appreciate your patience and understanding during this time.

Sincerely,

Sylvester Simpkins, Area Specialist
Materials Control Section
Receiving & Processing Division

SWS

Enclosures:
Circular SL-4, SL-9

*Some of the copyright were changed effective July 1, 2002. However, the basic registration fee of $30.00 was not affected. Please see enclosed Circular SL-4 for those fees which have been affected. For a more complete update on this and other copyright business, please visit our website at: www.loc.gov/copyright*



4301

**HOUSE LAW FIRM, PLLC**
3325 HEALY DRIVE
WINSTON-SALEM, NC 27103

DATE July 19, 2002

66-577/531

PAY TO THE ORDER OF _Registrar of Copyrights_ 080362253 03-17-03 060 2067 07 | $ 30.00

_Thirty and 00/100_ _____ DOLLARS

**CCB · SALEM GROUP**
Central Carolina Bank    577
Winston-Salem, North Carolina 27113

FOR _C. Ralph_

Don R. House

⑈0000430⑈  ⑉053100465⑉ 57 ⑈041893⑈  ⑈0000003000⑈

17110000    2NDMIX
210370139  0520-0027-8
RIGGS    0370189 03-14-03
05480003B 03/13/2003
4228145904 4424 053100465<
ights LGC 0007303 FOR DEPOSIT ONLY FOR CLEARING
D1 0524-03553-03172003

06010000    0530-0020-6
080362253  0530-0020-6
080362253  03-17-03
080362253  03-17-03 060 2067 07

0012        4558 7

**EXHIBIT**

**2**

ALL-STATE LEGAL®

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Affidavit of Scott K. Tippett upon all parties of record in this action by depositing a copy via the United States mail, with sufficient first class postage to insure delivery upon all parties to this action, addressed as follows:

For the Defendant:

> David Kushner
> BROOKS, PIERCE, McLENDON,
> HUMPHREY & LEONARD, L.L.P.
> P. O. Box 1800
> Raleigh, NC 27602
> Telephone: (919) 839-0300
> Facsimile: (919) 839-0304

This the 6th day of August, 2003.

Scott K. Tippett
Counsel for the Plaintiff
NCSB: 22488

Of Counsel:
House & Tippett, PLLC
3325 Healy Drive
Winston-Salem, NC 27103
Ph: (336) 768-2225

37 U.S.P.Q.2d 1454
1995 WL 702357 (S.D.N.Y.)
(Cite as: 37 U.S.P.Q.2d 1453)

**C**

Godinger Silver Art Co. Ltd.
v.
International Silver Co.

U.S. District Court Southern District of New York

No. 95 Civ. 9199 (LMM)

Decided November 28, 1995

United States Patents Quarterly Headnotes

## COPYRIGHTS
**[1] Elements of copyright -- Statutory elements -- Originality (Section 205.0707)**

Plaintiff's "20th Century Baroque" tableware design includes elements, not found in public domain "Grand Baroque" design, of sufficient originality to support copyright protection for those elements, since comparison of respective designs indicates that elements of plaintiff's design not taken from public domain, though small or modest, are substantial or distinguishable, rather than trivial, variations from earlier design.

## COPYRIGHTS
**[2] Rights in copyright; infringement -- Ownership of copyright -- Transfer and licensing (Section 213.0310)**

## JUDICIAL PRACTICE AND PROCEDURE
**Procedure -- Parties; standing (Section 410.07)**

Assignment to plaintiff by author of whatever right, title or interest author may have had in copyrighted flatware design known as "20th Century Baroque," including right to sue for past, present and future infringements thereof, is sufficient basis for continued maintenance of plaintiff's claim for infringement of that design, even though assignment was executed subsequent to commencement of present action, since accrued causes of action, if expressly included in assignment, can be prosecuted by assignee.

*1454 Action by Godinger Silver Art Co. Ltd. against International Silver Co., for copyright infringement. On plaintiff's motion for preliminary injunction. Granted.

Marvin B. Pavane, Edward M. Weisz, and William A. Alper, of Cohen, Pontani, Lieberman & Pavane, New York, N.Y., for plaintiff.

No attorneys listed for defendant.

McKenna, J.

1.

Plaintiff manufactures and sells a line of silver-plated tableware under the name "20th Century Baroque." Defendant manufactures and sells a line of silver-plated tableware under the name "Grande Antique." Plaintiff, asserting defendant's infringement of plaintiff's registered copyrights in the design of the "20th Century Antique" line, seeks a preliminary injunction. [FN1]

2.

Plaintiff has certainly made a *prima facie* case of infringement. "In order to prove infringement a plaintiff must show ownership of a valid copyright and copying by the defendant." *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 [ 195 USPQ 1 ] (2d Cir. 1977) (citation omitted). Plaintiff's ownership of, and the validity of its copyrights in, the "20th Century Baroque" design are evidenced, *prima facie*, by its registrations. 17 U.S.C. Section 410. *See also Novelty Textile*, 558 F.2d at 1092. And "a plaintiff may prove copying by showing access and 'substantial similarity' of the two works." *Id.* (citations omitted). Comparison of the works shows very substantial similarity, and there can be no doubt that defendant had access to plaintiff's line, on the market since 1992. [FN2]

3.

Defendant argues, however, that plaintiff's "20th

COPR. © 2003 The Bureau of National Affairs, Inc.


EXHIBIT
E
ALL-STATE LEGAL®

Century Baroque" is based upon the public domain "Grand Baroque" design of Wallace International Silversmiths, Inc. ("Wallace") (a company under common ownership with defendant) [FN3] and that "20th Century Baroque" does not contain sufficient original matter not taken from "Grande Baroque" to be protectible under *1455 the Copyright Act. *See generally L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486 [ 189 USPQ 753 ] (2d Cir.), cert. denied, 429 U.S. 857 [ 191 USPQ 588 ] (1976).*

That there are both similarities and differences between "20th Century Baroque" and "Grande Baroque" is clear upon examination. In *Wallace* (*see* n.3 *supra*), the Court of Appeals identified some of them:

Like Wallace's silverware, Godinger's pattern contains typical baroque elements including an indented root, scrolls, curls, and flowers. The arrangement of these elements approximates Wallace's design in many ways, although their dimensions are noticeably different. The most obvious difference between the two designs is that the Godinger pattern extends further down the handle than the Wallace pattern does. The Wallace pattern also tapers from the top of the handle to the stem while the Godinger pattern appears bulkier overall and maintains its bulk throughout the decorated portion of the handle.

916 F.2d at 77. This Court adds that the carved design inside the uppermost curves of "Grand Baroque" appears to be quite different from what appears in the parallel portion of "20th Century Baroque" and that the top of the design that appears immediately above the blade of the knife is circular in "20th Century Baroque" and not so in "Grande Baroque." [FN4] The issue is whether the differences -- whether mentioned above or not -- are copyrightable.

The cases most frequently cited on this issue are, no doubt, *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99 [ 90 USPQ 153 ] (2d Cir. 1951), and *Batlin*. This Court does not read those cases as articulating different standards, [FN5] as the frequent citation of *Catalda* in *Batlin* seems to make clear. In *Batlin*, the Court of Appeals pointed out the constitutional and statutory originality prerequisite to copyright protection, 536 F.2d at 489-90, [FN6] and then considered the meaning of that prerequisite.

Originality is, however, distinguished from novelty; there must be independent creation, but it need not be invention in the sense of striking uniqueness, ingeniousness, or novelty, since the Constitution

differentiates "authors" and their "writings" from "inventors" and their "discoveries." Originality means that the work owes its creation to the author and this in turn means that the work must not consist of actual copying.

The test of originality is concededly one with a low threshold in that " [a]ll that is needed . . . is that the 'author' contributed something more than a 'merely trivial' variation, something recognizably 'his own.' " But as this court said many years ago, " [w]hile a copy of something in the public domain will not, if it be merely a copy, support a copyright, a distinguishable variation will. . . ."

536 F.2d at 490 (quoting *Catalda, 191 F.2d at 103*, and *Gerlach- Barklow Co. v. Morris & Bendien, Inc.*, 23 F.2d 159, 161 (2d Cir. 1927) (other citations omitted)). The Court then found that the originality prerequisite applied to reproductions of works of art as well as to works of art:

The requirement of substantial as opposed to trivial variation and the prohibition of mechanical copying, both of which are inherent in and subsumed by the concept of originality, apply to both statutory categories. There is implicit in that concept a "minimal element of creativity over and above the requirement of independent effort." While the quantum of originality that is required may be modest indeed, we are not inclined to abandon that requirement, even if in the light of the constitutional and statutory bases therefor and our precedents we could do so.

536 F.2d at 490 (quoting 1 M. Nimmer, *The Law of Copyright*, Section 10.2, at 32 (1975) (other citation omitted)).

The originality requirement, of course, has to be applied to a specific work, or, in a case such as this -- involving a work incorporating elements of a pre-existing work -- to a comparison of two specific works. *See Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 35 [ 217 USPQ 201 ] (2d Cir. 1982) ("the factual question here depends *1456 entirely on visual comparison of exhibits"). So too, the facts of the relevant precedents must be examined closely. *See Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 917 [ 208 USPQ 10 ] (2d Cir. 1980); *see also Kuddle Toy, Inc. v. Pussycat-Toy Co.*, 183 U.S.P.Q. 642 (E.D.N.Y. 1974), where Judge Dooling considered *Catalda* as "subdued to its facts." *Id. at 658.*

Looking at the works in question here, "Grande Baroque" and "20th Century Baroque," and at the facts

COPR. © 2003 The Bureau of National Affairs, Inc.

revealed in the case law, this Court adheres to the conclusion reached by it in granting the temporary restraining order, that there are elements in "20th Century Baroque" not found in "Grande Baroque" of sufficient originality under the *Catalda/Batlin* standard to support copyright in those elements. [FN7]

This case must, of course, be seen against its background of "baroque" tableware, marketed by the parties and others, and having generally similar features, discussed in Judge Haight's and Judge Winter's opinions in *Wallace* (*see* n.3, *supra*). In addition to those general similarities, however, there are differences in "baroque" tableware designs. Given the general style -- incorporating "typical baroque elements," *Wallace*, 916 F.2d at 77, -- one could not expect the differences within that style to be so major as to change the style itself. But that hardly means that there cannot be original elements of designs within the style sufficient to support a copyright, even if those original elements are modest and draw on common themes. Otherwise, no "baroque" tableware would be capable of copyright protection, a position neither party espouses and that would, in this Court's view, be incorrect if either did.

[1] Here, visual comparison of the "20th Century Baroque" design with that of "Grande Baroque" indicates that the elements of the former not taken from the latter are not merely trivial, but substantial, or distinguishable, variations. *Batlin*, 536 F.2d at 490. Small or modest though the variations may be, they are subject to protection. Looking at the variations in this case, they appear considerably more akin to the small variations between the Ivor Wood and Eden/Gibson sketches considered in *Eden Toys, 697 F.2d at 34-35* (*cf.* Figures 2 and 3, *id.* at 31, 32) ("variations . . . too minor to entitle the Eden/Gibson work to claim a different aesthetic appeal . . . still original and substantial enough to deserve independent copyright protection" (*id.* at 34-35) ), than to the variations in *Batlin* -- essentially a proportional reduction of height from approximately eleven to approximately nine inches in height, without "elements of difference that amounted to significant alteration or that had any purpose other than the functional one of making a more suitable (and probably less expensive) figure in the plastic medium." 536 F.2d at 489. *Batlin* was, in essence, a case of the transfer of a work to another medium, but without the "level of input" found in *Alva Studios, Inc. v. Winninger, 177 F. Supp. 265, 267 [ 123 USPQ 487 ] (S.D.N.Y. 1959). See Batlin, 536 F.2d at 489.* And in *Catalda*, there was evidence that the mezzotints "were not intended to, and did not, imitate

the paintings they reproduced." *191 F.2d at 104-05.* Despite suggestions to the contrary by defendant, it is clear in the present case that defendant's "Grand Antique" is not merely a translation of the sterling "Grande Baroque" into a silver plate version, with only such variations as different processes of manufacture in silver and in plate might entail: comparison of "Grande Antique" with "Grande Baroque" makes that clear, and defendant has not come forward with evidence that such a mere translation is what happened here. Nor does the fact that defendant could have copied "Grand Baroque" mean that it was entitled to copy "20th Century Baroque," even if the latter incorporates elements of the public domain "Grande Baroque" design.

4.

Defendant also argues that plaintiff is not the author of the "20th Century Baroque" design. [FN8] The works embodying the "20th Century Baroque" design were registered by plaintiff as works made for hire. Defendant, citing *Community for Creative Non-Violence v. Reid,* 490 U.S. 730 [ 10 USPQ2d 1985 ] (1989), and *Aymes v. Bonelli,* 980 F.2d 857 [ 25 USPQ2d 1181 ] (2d Cir. 1992), and plaintiff's description of the facts surrounding the creation of the "20th Century Baroque" design (*see* Declaration of Plaintiff's Merchandising Vice President, Al Schneider, Nov. 2, 1995, Paragraphs 2-7, adopted as accurate by plaintiff's President, Arnold Godinger, *1457 in his Declaration, Nov. 2, 1995, Para. 2; *see also* testimony on cross-examination of Mr. Godinger at preliminary injunction hearing, Nov. 3, 1995, and Def. Ex. 1 [Hong Kong Certificate of Registration of Design of "a cutlery set comprising knife, short fork, long fork, short spoon and long spoon" to Beakie Lee & Co Limited ("Beakie") [FN9] ]), argues that the works in question cannot meet the test for determining that a work was made for hire.

Plaintiff disagrees with defendant's analysis of the facts relating to the question whether the "20th Century Baroque" design was made for hire, and argues that, if it was not, it is a work of joint authorship, [FN10] on the ground that Mr. Godinger and Mr. Schneider of plaintiff, in addition to Mr. Cheung (or Chung) of Chi-Tat Metal Cum Plastic Ind. Ltd. (referred to in some of the declarations and at the preliminary injunction hearing as "Chi-Tat Co.") ("Chi-Tat"), personally participated in the actual fixation of the "20th Century Baroque" design in its "tangible medium of expression," 17 U.S.C. Section 102. (*See* Schneider Declaration, Nov. 2, 1995, Para. 4 ["changes which we

COPR. © 2003 The Bureau of National Affairs, Inc.

wrote directly on the plaster," and "changes on the second models"]; *see also* Transcript, Nov. 3, 1995 [testimony of Mr. Godinger], at 18 ["our rough drawing, what we had done by hand"], 19 ["we designed it and we started the design here in New York, took it to China and put it down and worked with the manufacturer"].)

The record at this time and as a whole is not very well developed for purposes of decision of the authorship issues raised by the parties. It is not necessary to decide them for purposes of deciding this motion, however, for the reasons that follow.

[2] On November 6, 1995, Chi-Tat [FN11] assigned to plaintiff "whatever right, title or interest [it] may have in the flatware design known as 20th Century Baroque, including the right to sue for past, present and future infringements thereof." This assignment, even though subsequent to the commencement of this action, is a sufficient basis for the continued maintenance of plaintiff's claim. *See Infodek, Inc. v. Meredith-Webb Printing Co., 830 F. Supp. 614, 619-21 [ 28 USPQ2d 1669 ] (N.D. Ga. 1993); see also ABKCO Music, Inc. v. Harrisongs Music, Ltd., 944 F.2d 971, 980 (2d Cir. 1991)* ("a copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them," implying that if, as here, accrued causes of action are expressly included in the assignment, then the assignee can prosecute them).

Finally, assuming plaintiff was in error in registering the "20th Century Baroque" line as works made for hire (a question the Court does not decide), that would not, on the evidence before the Court, invalidate plaintiff's copyrights. There has been no showing of "intentional or purposeful concealment of relevant information." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 828 [ 215 USPQ 745 ] (11th Cir. 1982).*

5.

Plaintiff has shown both a likelihood of success on the merits and irreparable harm in the absence of a preliminary injunction. "In a copyright action the existence of irreparable injury is presumed upon a showing of a prima facie case of copyright infringement." *Video Trip Corp. v. Lightning Video, Inc., 866 F.2d 50, 51-52 [ 9 USPQ2d 1670 ] (2d Cir. 1989).* The Court does not concur with defendant's suggestion that the harm to plaintiff is so small in

comparison to the harm that a preliminary injunction will work on defendant that equity should deny the injunction.

6.

Defendant, its officers, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are enjoined, pending determination of this action, from making, using, selling, marketing, advertising, promoting, offering for sale, shipping, *1458 accepting orders for, importing, exporting or otherwise doing business with respect to, the silverplated flatware which defendant has been marketing under the name Grande Antique, or other silverplated products bearing the same design or pattern as the silverplated flatware which defendant has been marketing under the name Grande Antique.

The security heretofore furnished by plaintiff in the sum of $250,000 shall remain as security pursuant to Fed. R. Civ. P. 65(c) in connection with this preliminary injunction.

SO ORDERED.

FN1 On October 27, 1995, the Court, after hearing both sides, granted a temporary restraining order pending an evidentiary hearing on the motion for a preliminary injunction, which hearing was held on November 3, 1995. At the conclusion of the hearing, the Court extended the temporary restraining order pending decision of the motion for a preliminary injunction.

FN2 The designs of "20th Century Baroque" and "Grande Antique," as well as of "Grande Baroque," discussed below, appear most conveniently for comparison in Plaintiff's Exhibit G.

FN3 *See Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co., Inc., 735 F. Supp. 141 [ 15 USPQ2d 1818 ] (S.D.N.Y.), aff'd, 916 F.2d 76 16 USPQ2d 1555 ] (2d Cir. 1990), cert. denied, 499 U.S. 976 (1991),* where Wallace was denied an injunction against the sale of "20th Century Baroque" sought on the basis that the "Grand Baroque"

COPR. © 2003 The Bureau of National Affairs, Inc.

design was protected as trade dress under 15 U.S.C. Section 1125(a).

FN4 Comparison of the elements appearing in "20th Century Baroque" with those of "Grande Antique," however, tends to confirm a finding of copying by defendant.

FN5 *Pace* Judge Posner in *Gracen v. Bradford Exchange*, 698 F.2d 300, 305 (7th Cir. 1983). This Court, does not, however, necessarily include in the applicable standard Judge Frank's *dictum* in *Catalda* that: "A copyist's bad eyesight or defective musculature, or a shock caused by a clap of thunder, may yield sufficiently distinguishable variations. Having hit upon such a variation unintentionally, the 'author' may adopt it as his and copyright it." 191 F.2d at 105.

FN6 *Batlin* was decided under the 1909 Copyright Act. Here, neither side has suggested that, as to the originality requirement, there is any material distinction between the 1909 and 1976 Acts.

FN7 It is axiomatic, of course, that such copyright inheres only in such original elements, and not in what is only taken from the public domain "Grande Baroque."

FN8 This argument was first put forward on the motion for a preliminary injunction, and was not considered on the application for a temporary restraining order.

FN9 Beakie appears to be an exclusive representative of plaintiff. (Transcript, Nov. 3, 1993, at 20.)

FN10 Plaintiff cites, in this connection, *Andrien v. Southern Ocean County Chamber of Commerce*, 927 F.2d 132, 136 [ 18 USPQ2d 1041 ] (3d Cir. 1991).

FN11 Defendant claims that plaintiff's president "testified that the design originated

with either Chi-Tat . . . or Beakie. . . ." (Def. Supp. Brief at 1.) There is no evidence, other than the above-mentioned Hong Kong Certificate of Registration of Design, as to what role, if any Beakie played in designing "20th Century Baroque," and it is not clear what, if anything, that Registration means as to the authorship or ownership of the design. On the evidence so far brought to the Court's attention, Beakie is not a candidate for sole or joint authorship of the "20th Century Baroque" design. Nor has defendant submitted law showing that Beakie is the exclusive proprietor of copyright in that design.

S.D.N.Y.

37 U.S.P.Q.2d 1454

END OF DOCUMENT

COPR. © 2003 The Bureau of National Affairs, Inc.

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** upon all parties of record in this action by depositing a copy of the same in the United States mail, with sufficient first class postage thereon to insure delivery to upon all parties to this action, addressed as follows:

For the Defendant:

> David Kushner
> BROOKS, PIERCE, McLENDON,
> HUMPHREY & LEONARD, L.L.P.
> P. O. Box 1800
> Raleigh, NC 27602
> Telephone: (919) 839-0300
> Facsimile: (919) 839-0304

This the _25th_ day of June, 2003.

Scott K. Tippett
Counsel for the Plaintiff
North Carolina State Bar No.: 22488

Of Counsel:
House & Tippett, PLLC
3325 Healy Drive
Winston-Salem, NC 27103
Ph: (336) 768-2225

**C**

United States Court of Appeals,
Fifth Circuit.

LAKEDREAMS, a Texas partnership, Plaintiff-
Appellee,
v.
Steve TAYLOR, d/b/a California T's, Defendant-
Appellant.

No. 90-1472.

June 11, 1991.

In action for, inter alia, copyright infringement, the United States District Court, Northern District of Texas, Samuel Ray Cummings, J., granted preliminary injunction precluding alleged infringer from distributing shirts containing design and text substantially similar to that appearing in alleged owner's copyright application. Alleged infringer appealed. The Court of Appeals, Johnson, Circuit Judge, held that District Court did not abuse its discretion in issuing preliminary injunction.

Affirmed.

West Headnotes

**[1] Federal Courts** 571
170Bk571 Most Cited Cases

**[1] Federal Courts** 572.1
170Bk572.1 Most Cited Cases
(Formerly 170Bk572)

To be appealable, order must be final, it must fall within specific class of interlocutory orders made appealable by statute, or it must fall within some jurisprudential exception. 28 U.S.C.A. § § 1291, 1292(a).

**[2] Federal Courts** 577
170Bk577 Most Cited Cases

Court of Appeals lacked jurisdiction to review district court's denial of alleged copyright infringer's motion to dismiss, even though motion was made during injunction hearing; there was no indication that district court consolidated preliminary injunction with trial on merits and order granting preliminary injunction made no mention of dismissal motion. 28

U.S.C.A. § 1292(a)(1).

**[3] Injunction** 132
212k132 Most Cited Cases

Preliminary injunction is extraordinary remedy.

**[4] Federal Courts** 815
170Bk815 Most Cited Cases

**[4] Injunction** 135
212k135 Most Cited Cases

Decision to grant or deny preliminary injunction lies within discretion of district court and, accordingly, order granting or denying preliminary injunction will be reversed only upon showing that district court abused its discretion.

**[5] Copyrights and Intellectual Property** 74
99k74 Most Cited Cases

Copyright infringement action requires that plaintiff show "ownership" of material and "copying" by defendant; to establish "ownership," plaintiff must prove that material is original, that it can be copyrighted, and that he has complied with statutory formalities, and to establish "copying," plaintiff generally must show that defendant had access to material and that there is substantial similarity between the two works.

**[6] Copyrights and Intellectual Property** 83(7)
99k83(7) Most Cited Cases

Despite alleged copyright infringer's assertions concerning his contribution, evidence supported finding that design and text appearing on allegedly infringing shirts was developed and therefore owned by partners of alleged copyright owner seeking preliminary injunctive relief.

**[7] Copyrights and Intellectual Property** 4
99k4 Most Cited Cases

**[7] Copyrights and Intellectual Property** 41(1)
99k41(1) Most Cited Cases
(Formerly 99k41)

Copyright protection is available only for works of authorship which are fixed in tangible medium of expression and, thus, copyright's "author," is person

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



who reduces idea to fixed, tangible expression. 17 U.S.C.A. § 102(a).

**[8]** Copyrights and Intellectual Property ☜⟶41(1)
99k41(1) Most Cited Cases
(Formerly 99k41)

Alleged copyright infringer opposing preliminary injunctive relief did not become "author" of design and text by completing silkscreen artwork, which merely transposed written products of design and text from paper to cloth; while final artwork may have been slightly different from text and drawings, changes were directed by copyright applicant's partners. 17 U.S.C.A. § 102(a).

**[9]** Copyrights and Intellectual Property ☜⟶83(1)
99k83(1) Most Cited Cases

While record did not indicate reason that Copyright Office had not issued certificate to applicant seeking preliminary injunctive relief against alleged infringer, receipt of materials sufficient to satisfy statutory formalities could be inferred from testimony that Copyright Office cashed fee check so as to establish ownership.

**[10]** Copyrights and Intellectual Property ☜⟶50.16
99k50.16 Most Cited Cases
(Formerly 99k50.15)

Plaintiff alleging copyright infringement has complied with statutory formalities when Copyright Office receives plaintiff's application for registration, fees and deposit.

**[11]** Copyrights and Intellectual Property ☜⟶83(3.5)
99k83(3.5) Most Cited Cases

Certificate of registration constituting prima facie evidence of copyright validity does not create irrebuttable presumption of originality. 17 U.S.C.A. § 410(c).

**[12]** Federal Courts ☜⟶701.1
170Bk701.1 Most Cited Cases
(Formerly 170Bk701)

Alleged copyright infringer's failure to include exhibits with record on appeal from district court's imposition of preliminary injunctive relief precluded Court of Appeals from finding that district court's determination concerning copying was clearly erroneous. F.R.A.P.Rules 10, 11(a). 28 U.S.C.A.

**[13]** Copyrights and Intellectual Property ☜⟶85
99k85 Most Cited Cases

District court did not abuse its discretion in determining that alleged copyright owner would suffer irreparable injury if preliminary injunction were not issued against alleged infringer whose actions prevented owner from distributing shirts with subject design and text; delay in owner's ability to fully market shirt until after litigation had been settled could substantially reduce marketing potential of shirt and any attempt to calculate damages could be considered too speculative.

**[14]** Copyrights and Intellectual Property ☜⟶85
99k85 Most Cited Cases

District court, in issuing preliminary injunction against alleged copyright infringer, properly determined that balance of hardships weighed in favor of alleged copyright owner; infringer did not contend that inability to produce shirt containing design and text appearing in alleged owner's copyright application would have appreciable effect on infringer's business, and alleged owner was partnership solely dependent upon shirt for its economic existence.

**[15]** Copyrights and Intellectual Property ☜⟶85
99k85 Most Cited Cases

Public interest weighed in favor of granting preliminary injunction in favor of alleged copyright owner against alleged infringer so as to preclude infringer from distributing shirts containing design and text similar to that appearing in owner's copyright application; public had interest in preventing confusion about origin of products it bought and its interest in competition may have been outweighed by its concomitant interest in preserving rights provided by federal copyright law.
**\*1105** Gregory V. Novak, Wendell Coffee and Richard Neal Burt, Coffee-Novack, Lubbock, Tex., for defendant-appellant.

Brian P. Quinn, Robin M. Green and Jack P. Driskill, McWhorter, Cobb & Johnson, Lubbock, Tex., for plaintiff-appellee.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Appeal from the United States District Court for the Northern District of Texas.


Before BROWN, JOHNSON, and WIENER, Circuit Judges.


JOHNSON, Circuit Judge:

Defendant-Appellant Steve Taylor ("Taylor") appeals from the order of the district court granting a preliminary injunction precluding Taylor from distributing shirts and other tangible items containing a design and text substantially similar to the design and text as appears in the copyright application of Plaintiff-Appellee Lakedreams, a Texas partnership. Finding that the district court did not abuse its discretion in issuing the preliminary injunction, this Court affirms.

## I. FACTS AND PROCEDURAL HISTORY

Four couples, while vacationing at Lake Buchanan, Texas, over the 1989 Labor Day weekend, created a mythical family with the surname "Schitt." The Schitt family, whose members had names that evoked one or another inelegant image, initially was nothing more than an inside joke between the couples. Gradually, however, the couples determined that the Schitt family was a marketable concept. They concluded that they could sell a number of printed t-shirts with a silkscreen design of the family tree ("Family Tree") [FN1] on one side and a silkscreen printing of the family genealogy (the "text") on the other side.

> FN1. The final Family Tree design is a drawing of a willow tree with names of family members printed on pieces of board hanging from various limbs of the tree.

To market their product, the couples formed a partnership, known as Lakedreams. [FN2] The partners met periodically to discuss and revise their ideas. They created a number of drafts of the Family Tree design and wrote the text of the family history. One partner, JoAnn Harnar ("Harnar"), took some of these papers and drawings to Taylor. Harnar knew of Taylor's t-shirt business, California T's. Taylor agreed, for a fee, to prepare the silkscreens of Lakedreams' design and text. Taylor completed the

artwork for the silkscreens based on the papers and drawings *1106 that Harnar gave him. Lakedreams' partners thoroughly reviewed Taylor's work and made a number of changes. The partners were satisfied that the final product embodied their original text and design. With Lakedreams' permission, Taylor began to print Family Tree t-shirts. Taylor then requested and received Lakedreams' permission to sell Family Tree t-shirts in his store.

> FN2. Lakedreams' partners include John and Judy Blakey, Timothy and JoAnn Harnar, Jim and Suzanna Lambert, and David and Kathy Montgomery.

While working with Taylor, the partners became concerned that they should attempt to obtain copyright protection of their Family Tree concept. Taylor suggested that they place a "c" within a circle and the name "Lakedreams" on the t-shirts. With the partners assent, Taylor's suggestion was incorporated as a part of the silkscreen artwork for both sides of the t-shirts. After marketing a number of shirts, the partners applied for a copyright. In January 1990, Lakedreams mailed an application for copyright registration to the Copyright Office of the Library of Congress, together with the appropriate fee and deposit. Though the fee check was cashed, Lakedreams apparently has never received a certificate of registration.

The t-shirts initially sold well. Eventually, the partners obtained a sales representative and decided to have another company print their shirts. After transferring to the new printer, Lakedreams discovered that Taylor was continuing to sell the Family Tree t-shirt in his own store. Taylor acquiesced to Lakedreams' demand to discontinue marketing the t-shirt. However, Taylor soon began to market a t-shirt substantially identical to Lakedreams' t-shirt, with the exception that Taylor replaced Lakedreams' copyright emblem with one of his own. Thereafter, Taylor's attorney contacted Lakedreams' new printer and distributor to warn them that the act of printing and selling Lakedreams' Family Tree t-shirt infringed Taylor's copyright. Despite Lakedreams' pending copyright application, Taylor applied for and received a copyright certificate in his own name, with an effective date of April 1990.

Lakedreams filed suit against Taylor, asserting a number of claims. [FN3] Lakedreams then filed a motion for a temporary restraining order and a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

preliminary injunction to enjoin Taylor from infringing Lakedreams' copyright. The district court issued a temporary restraining order and set a hearing on the motion for a preliminary injunction. After the hearing, the district court granted a preliminary injunction to remain in force until trial. [FN4] Taylor filed a timely notice of appeal.

FN3. The complaint includes claims of copyright infringement, misappropriation and unfair competition, tortious interference with contract, slander per se, and seeks estoppel and injunctive relief.

FN4. The preliminary injunction orders the following:
[T]he defendant, Steve Taylor, d/b/a California T's, his employees, agents, servants, attorneys, and those persons in active concert, privity, or participation with the defendant, who receive actual notice of this order by personal service or otherwise, shall immediately cease the printing, manufacturing, marketing, selling, advertising, or in any way distributing shirts and other tangible items containing the "Schitt Family Tree" and its design and text as same appears in Lakedreams' copyright application and all substantially similar designs and texts, as are furthermore shown in Plaintiff's Exhibits I, J, and K and Defendant's Exhibit 2, which were introduced into evidence at the preliminary injunction hearing....
The defendant, Steve Taylor, d/b/a California T's, his agents, servants, employees, attorneys, and those persons in active concert, privity or participation with defendant, who receive actual notice of this order by personal service or otherwise, shall cease all communication with third parties, other than this Court and legal counsel, regarding his or their ownership of or claims to the "Schitt Family Tree" and its design and text as same appears in Lakedreams' copyright application and all substantially similar designs and text, as are further shown in Plaintiff's Exhibits I, J, and K and Defendant's Exhibit 2, introduced into evidence at the preliminary injunction hearing....

## II. DISCUSSION

A. *Jurisdiction*

As an initial matter, we must determine whether appellate jurisdiction exists to review this case. Taylor attempts to appeal both the order granting a preliminary injunction and the denial of his motion to *1107 dismiss Lakedreams' copyright infringement claim.

[1][2] To be appealable, an order must be final, [FN5] it must fall within the specific class of interlocutory orders made appealable by statute, [FN6] or it must fall within some jurisprudential exception. [FN7] An order granting a preliminary injunction comes within the second category, *i.e.*, an interlocutory order made appealable pursuant to 28 U.S.C. § 1292(a)(1). [FN8] An order denying a defendant's motion to dismiss, however, does not qualify under any of the appealability alternatives. *Save the Bay, Inc. v. United States Army*, 639 F.2d 1100, 1103 (5th Cir.1981). The mere fact that Taylor moved to dismiss during the injunction hearing does not provide a basis for review. There is no indication that the district court consolidated the preliminary injunction with a trial on the merits. In addition, the order granting the preliminary injunction makes no mention of the motion to dismiss. Hence, this Court has jurisdiction to review the preliminary injunction order, but we lack jurisdiction to review the district court's denial of Taylor's motion to dismiss. *See generally, EEOC v. Kerrville Bus Co.*, 925 F.2d 129 (5th Cir.1991).

FN5. 28 U.S.C. § 1291 provides that, "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States...."

FN6. *See, e.g.*, 28 U.S.C. § 1292(a).

FN7. *E.g., Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (collateral order); *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848) (hardship-irreparable injury); *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964) (practical finality).

FN8. 28 U.S.C. § 1292(a)(1) provides that

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

the courts of appeals shall have jurisdiction of appeals from "Interlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions...."

B. *Preliminary Injunction*

[3] A preliminary injunction is an extraordinary remedy. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.1985). To obtain a preliminary injunction, the moving party must establish four factors: (1) a substantial likelihood of success on the merits, (2) a substantial threat that failure to grant the injunction will result in irreparable injury, (3) the threatened injury outweighs any damage that the injunction may cause the opposing party, and (4) the injunction will not disserve the public interest. *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 809 (5th Cir.1989).

[4] The decision to grant or deny a preliminary injunction lies within the discretion of the district court. *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir.1984). Accordingly, an order granting or denying a preliminary injunction will be reversed only upon a showing that the district court abused its discretion. *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir.1989). The district court's findings of fact are subject to the clearly erroneous standard of review. Fed.R.Civ.P. 52(a). Any legal determinations are subject to plenary review on appeal. *Griffin v. Box*, 910 F.2d 255, 259 (5th Cir.1990).

The district court in the instant case properly applied the four factor test for determining whether a preliminary injunction is justified. Taylor argues that the district court erred in reaching its conclusions on each of the four factors. We will discuss each factor in turn.

1. *Substantial Likelihood of Success*

Lakedreams' complaint alleges a number of causes of action. The district court found that Lakedreams had shown a substantial likelihood that it would succeed on the merits of two of its claims: copyright infringement and misappropriation of ideas. Since this Court concludes that Lakedreams has shown a substantial likelihood that it would succeed on the copyright infringement claim, we need not address

the merits of the misappropriation claim.

[5] A copyright infringement action requires that the plaintiff show "ownership" of the material and "copying" by the defendant. *Apple Barrel Productions, 730 F.2d at 387.* To establish "ownership," the *1108 plaintiff must prove that the material is original, that it can be copyrighted, and that he has complied with statutory formalities. *Id.* To establish "copying," the plaintiff generally must show that the defendant had access to the material and that there is a substantial similarity between the two works. *Id.* at 387 n. 3.

a. *Ownership*

[6] In asserting that Lakedreams failed to establish any element of the test for ownership in the Family Tree design and text, Taylor advances three arguments. [FN9] First, Taylor contests the district court's finding that the Family Tree was original with Lakedreams. While conceding that Lakedreams conceived of many of the ideas for the Family Tree design and text, Taylor asserts that he and his employees also contributed original ideas. The final product, Taylor contends, was drafted with his own originality. Despite Taylor's assertions concerning his contribution, though, the evidence supports the finding that Lakedreams' partners developed the Family Tree design and text, with only perfunctory assistance from Taylor.

> FN9. Lakedreams concedes that the work for hire doctrine, 17 U.S.C. § 201(b), is inapplicable.

[7][8] Second, Taylor argues that Lakedreams merely had ideas, which are not in and of themselves copyrightable. *See* 17 U.S.C. § 102(b). Copyright protection is available only for works of authorship which are fixed in a tangible medium of expression. 17 U.S.C. § 102(a). The copyright's author, therefore, is the person who reduces an idea to a fixed, tangible expression. *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 2171, 104 L.Ed.2d 811 (1989). Taylor claims that he became the author by completing the silkscreen artwork. However, the evidence shows that, prior to hiring Taylor, Lakedreams had produced written products of the Family Tree design and text. Under Lakedreams' authority and direction, Taylor merely transposed their expression from paper to cloth by means of silkscreening. Authors "are entitled to

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

copyright protection even if they do not perform with their own hands the mechanical tasks of putting the material into the form distributed to the public." *Andrien v. Southern Ocean County Chamber of Commerce,* 927 F.2d 132, 135 (3d Cir.1991). While the final artwork may have been slightly different from the text and drawings initially given to Taylor, Lakedreams' partners explained that they directed the changes themselves.

[9][10][11] Third, Taylor contends that Lakedreams has not complied with statutory formalities because Lakedreams has never received a certificate of registration. Lakedreams mailed a completed copyright application with the appropriate fee and deposit to the Copyright Office. Receipt of the materials can be inferred from the testimony of one of Lakedreams' partners that the Copyright Office cashed the fee check. The record does not indicate the reason that the Copyright Office has not issued a certificate to Lakedreams. Nonetheless, as this Court stated in *Apple Barrel Productions,* a plaintiff has complied with the statutory formalities when the Copyright Office receives the plaintiff's application for registration, fee and deposit. [FN10] 730 F.2d at 386-87; *see also Secure Services Technology, Inc. v. Time and Space Processing, Inc.,* 722 F.Supp. 1354, 1364 (E.D.Va.1989); *Sebastian International, Inc. v. Consumer Contact (PTY) Ltd.,* 664 F.Supp. 909, 912 (D.N.J.1987). Thus, the district court's finding of ownership is not clearly erroneous.

FN10. Taylor emphasizes the fact that he received a certificate of registration before Lakedreams. The certificate constitutes prima facie evidence of the validity of the copyright. 17 U.S.C. § 410(c). Regardless, the certificate does not create an irrebutable presumption of originality. *Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905, 908 (2d Cir.1980). Here, there was sufficient evidence to cast doubt on the validity of Taylor's copyright.

b. Copying

[12] Taylor contends that the district court erred in determining that he copied Lakedreams' material. Taylor does not argue that he did not have access to Lakedreams' *1109 design and text. Rather, he simply asserts that there are significant differences between Lakedreams' original written work and the final artwork that he prepared. Because Taylor has

failed to include the exhibits with the record on appeal, this Court is unable to find that the district court's determination concerning copying was clearly erroneous. *See* Fed.R.App.P. 10 and 11(a).

In sum, the evidence in the record supports a determination that Lakedreams owns the Family Tree design and text, and that Taylor copied them. Thus, this Court cannot conclude that the district court erred in determining that Lakedreams has shown a substantial likelihood of success on the merits. [FN11]

FN11. Our ruling is not to be construed as a final determination on the merits. In a preliminary injunction context, the movant need not prove his case. *H & W Industries, Inc. v. Formosa Plastics Corp.,* 860 F.2d 172, 179 (5th Cir.1988). It is sufficient if the movant shows a substantial likelihood of success. A final determination is possible only after a full evidentiary trial on the merits.

2. *Irreparable Injury*

[13] The district court found that Lakedreams would suffer irreparable injury if a preliminary injunction were not issued. The district court stated that "the defendant's actions will prevent plaintiff from marketing the product in question, which will result in plaintiff having to cease operation." Taylor argues that Lakedreams will not suffer irreparable injury because any harm can be compensated by monetary damages.

The district court did not abuse its discretion. The testimony shows that Lakedreams was formed for the purpose of selling the Family Tree t-shirt. At the time of the preliminary injunction hearing, the Family Tree t-shirt remained Lakedreams' only product. If Taylor was able to continue his actions in preventing Lakedreams from distributing the shirts, then Lakedreams would be left without any business to conduct. Further, it is recognized that public demand for a novelty t-shirt may be fleeting. A delay in Lakedreams' ability to fully market the Family Tree t-shirt until after the litigation has been settled could substantially reduce the marketing potential of the t-shirt.

Taylor's argument that monetary damages would suffice has little merit. Given the lack of a sales

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

history and the difficulty in establishing the extent of damage to Lakedreams' reputation resulting from Taylor's actions, any attempt to calculate damages could be considered too speculative. This Court has recognized that when economic rights are especially difficult to calculate, a finding of irreparable harm may be appropriate. *See Allied Marketing, 878 F.2d at 810 n. 1; Mississippi Power & Light Co., 760 F.2d at 630 n. 12.*

### 3. Balance of Hardship

[14] The district court found that the threatened injury to Lakedreams outweighed any damage that the preliminary injunction would cause Taylor. The district court explained that the t-shirt in issue was Lakedreams' only sales item, whereas Taylor sold numerous t-shirts and other products. Taylor argues that he will suffer more harm than Lakedreams because California T's is his only means of financial support: in contrast, Lakedreams' partners are not economically dependent upon t-shirt sales. Taylor's argument misses the mark. Taylor does not contend that his inability to produce the t-shirt in issue will have any appreciable effect on his business. [FN12] Moreover, Taylor erroneously compares himself to Lakedreams' partners instead of to Lakedreams itself. Under Texas law, a partnership, like Lakedreams, is often considered an entity separate from its partners. *See \*1110Haney v. Fenley, Bate, Deaton & Porter, 618 S.W.2d 541, 542 (Tex.1981).* Lakedreams, the partnership, was clearly suffering substantial harm from the infringement as Lakedreams was solely dependent upon the Family Tree t-shirt for its economic existence at the time of the preliminary injunction hearing. Inasmuch as we have already determined that the likelihood of success lies with Lakedreams, we are more convinced that the balance of harm weighs in Lakedreams' favor. Thus, the district court did not err in determining that the balance of hardship weighs in favor of Lakedreams.

> FN12. In the First Circuit's view, Taylor would not prevail even if he had shown that his business was based exclusively on marketing the Family Tree t-shirt. "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.' " *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 612 (1st Cir.1988)* (citation omitted). The rule applies "even to

> a business which is exclusively based on an infringing activity and which would be virtually destroyed by a preliminary injunction." *Id.*

### 4. Public Interest

[15] The district court concluded, without elaboration, that the preliminary injunction will not disserve the public interest. Taylor argues that the public interest would be better served if the parties were permitted to compete and to "exercise their ingenuity until the dispute can be resolved." Contrary to Taylor's contention, the public's interest in competition may be outweighed by the public's concomitant interest in preserving rights provided by the federal copyright law. *Allied Marketing, 878 F.2d at 810 n. 1.* In addition, the public has an interest in preventing confusion about the origin of the products that it buys. The public interest weighs in favor of granting the preliminary injunction.

### III. CONCLUSION

Lakedreams established each of the factors necessary to obtain a preliminary injunction. The district court's order is therefore affirmed. Having made this ruling, this Court is concerned that this interlocutory appeal has caused a lengthy delay in the resolution of the case. Moreover, the preliminary injunction imposes a restraint on Taylor which may ultimately prove to be unjustified. Accordingly, the district court is urged to expedite the trial on the merits. [FN13]

> FN13. *See Hawkins v. Board of Control, 253 F.2d 752, 753 (5th Cir.1958)* (reversing district court's denial of a preliminary injunction and ordering the district court to conduct a trial on the merits at the earliest practicable date); *Allied Marketing, 878 F.2d at 815* (noting that it is frequently desirable to accelerate the trial on the merits after a preliminary injunction has been granted, especially if the adverse party presents potentially significant defenses); 11 C. Wright & A. Miller, *Federal Practice & Procedure § 2950*, at 484 (1973 & Supp.1990) ("[T]he urgency that is characteristic of cases involving preliminary injunction applications makes a rapid determination of the merits especially important.").

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

AFFIRMED.

932 F.2d 1103, 1991 Copr.L.Dec. P 26,747, 19
U.S.P.Q.2d 1283

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** upon all parties of record in this action by depositing a copy of the same in the United States mail, with sufficient first class postage thereon to insure delivery to upon all parties to this action, addressed as follows:

For the Defendant:

> David Kushner
> BROOKS, PIERCE, McLENDON,
> HUMPHREY & LEONARD, L.L.P.
> P. O. Box 1800
> Raleigh, NC 27602
> Telephone: (919) 839-0300
> Facsimile: (919) 839-0304

This the 6th day of August, 2003.

Scott K. Tippett
Counsel for the Plaintiff
North Carolina State Bar No.: 22488

Of Counsel:
House & Tippett, PLLC
3325 Healy Drive
Winston-Salem, NC 27103
Ph: (336) 768-2225